UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------   X

DR. DAVID S. FIELD

                   Plaintiff,

    vs.

EXPONENTIAL WEALTH INC.,
RYAN MURNANE, RYAN MICHAELS,
KRYSTALYNNE MURNANE, AND NOLAN
BENNETT

                  Defendants.

------------------------------------------------------------   X

Index No.

**VERIFIED COMPLAINT**

Plaintiff, Dr. David S. Field ("Field" or "Plaintiff"), through his attorneys, Mound Cotton Wollan & Greengrass LLP, as and for his Complaint against Defendants Exponential Wealth Inc. ("EWI"), Ryan Murnane, Ryan Michaels, Krystalynne Murnane, and Nolan Bennett ("Bennett") (collectively, "Defendants") alleges upon information and belief:

## NATURE OF ACTION

1.    This action concerns Defendants' wrongful scheme to defraud Plaintiff into investing $1,420,800 for the purchase of rare and valuable coins ("Coins"), that Defendants promised to deliver to Plaintiff shortly after purchase.  The Defendants never delivered any of the rare or valuable Coins to Plaintiff, and it has become apparent that Defendants never intended to deliver nor were ever capable of delivering such Coins.  Even after the coins were allegedly sold on Plaintiff's behalf at various auctions, Defendants failed to remit payment to Plaintiff, and simply stole Plaintiff's money.

2.    Defendants perpetrated this fraud on Plaintiff by, among other things, misrepresenting to Plaintiff who they are and their prior work experience, falsifying business cards and using fake names, falsifying checks that purported to be certified but actually were not,

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as there is complete diversity of citizenship between the parties, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

11.     This Court has personal jurisdiction over Defendants because Defendants reside in New York and regularly conduct business in New York.

12.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this lawsuit took place within this district, and the property which is the subject matter of this litigation is located in this district.

## FACTUAL ALLEGATIONS

13.     Plaintiff is a prominent orthopedic surgeon with a medical practice located in Dubuque, Iowa.

14.     In or around February 2019, Plaintiff met Defendants through a cold business call by Defendant Ryan Murnane, who told Plaintiff that his name was Ryan Michaels, and represented that he was in the business of selling coins for twenty years.

15.     Following the cold business call, Plaintiff received brochures in the mail from Defendants with a business card from Defendant Ryan Michaels, whose title was listed as Senior Account Executive at "Exponential Wealth Inc. Investments®".

16.     There is no "Exponential Wealth Inc. Investments" registered with the United States Patent and Trademark Office.

17.     It appears that Ryan Michaels is an alias for Ryan Murnane. Defendant Ryan Michaels admitted to Plaintiff that his real name is Ryan Murnane, and that he changed his name after being suspended by FINRA in May 2018.

3

18.    Among other things, Defendants represented that EWI "offers the most inexpensive options of purchasing any bullion/precious metal worldwide"; that "EWI only charges 1.25% above the daily spot price on any one of the four main metals"; that EWI "offers a variety of alternative ways of harboring/storing your metal and ensure the safety of all your precious metals"; that "[o]ur insurance policies are always through Lloyds of London the worlds [sic] largest specialty insurer;" and that "EWI contracts with every metal depository nationwide [sic] also two international depositories." (Exhibit 1)

19.    On or about March 11, 2019, Plaintiff executed a new account form with Defendant EWI and made an initial investment.

20.    On March 11, 2019, Plaintiff purchased one (1) "Peace Dollar Ultra Rare 1921-1929 Brilliant Uncirculated limited existence" coin. Plaintiff paid Defendants $6,000 in exchange for one coin.  (Exhibit 2)

21.    According to the invoice generated by Defendants in connection with Plaintiff's purchase of the one (1) "Peace Dollar Ultra Rare 1921-1929 Brilliant Uncirculated limited existence" coin, Invoice Number: 1, dated February 4, 2019, Exponential Wealth Inc. are "Rarities Precious Metals & Fine Art Experts."  Defendant Bennett is listed as the "Commodities Representative" with a title of "Managing Director" and Defendant Krystalynne Murnane is identified as "Director of Operations."  (Exhibit 2)

22.    On March 11, 2019, Plaintiff purchased nine (9) "Peace Dollar Ultra Rare 1921-1929 Brilliant Uncirculated limited existence coins" with a unit price of $6,000 each for a total cost of $54,000.  (Exhibit 3)

23.    According to the invoice generated by Defendants in connection with Plaintiff's purchase of the nine (9) "Peace Dollar Ultra Rare 1921-1929 Brilliant Uncirculated limited

existence" coins, Invoice Number: 2, dated February 4, 2019, Exponential Wealth Inc. are "Rarities Precious Metals & Fine Art Experts."   Defendant Ryan Michaels is listed as the "Commodities Representative" with a title of "Director" and Defendant Krystalynne Murnane is identified as "Director of Operations".  (Exhibit 3)

24.     Thus, on March 11, 2019, Plaintiff made an initial investment with Defendants for $60,000 in connection with the purchase of the ten (10) rare Coins.  The payment was made by personal check number 4263 made payable to Exponential Wealth Inc.  (Exhibit 4)

25.     Defendants issued a receipt to Plaintiff for Plaintiff's $60,000 initial investment (Exhibit 5)

26.      On or about April 27, 2019, Plaintiff sold the ten Coins he had purchased for $84,600 at an auction, and Plaintiff earned a profit of $24,600.  Plaintiff had authorized the Defendants to sell the Coins on his behalf.  (Exhibit 6)

27.     Following the April 27, 2019 sale, Plaintiff had $84,600 in his account with Defendants.

28.     On or about June 13, 2019, Plaintiff purchased additional rare Coins for a total cost of $1,270,400. (Exhibit 7)

29.     On or about June 13, 2019, Plaintiff sent $1,270,400 to Defendants by wire transfer in connection with the purchase of the Coins.  (Exhibit 8)

30.     In August 2019, Defendants sold at an auction, on Plaintiff's behalf, the Coins that Plaintiff had purchased in June 2019.  The Coins were sold at a profit.

31.     In August 2019, Plaintiff's account statement reflected a balance of $1,861,600. (Exhibit 9)

32.     On or about October 3, 2019, Plaintiff purchased three (3) rare U.S. Gold Dollar Coins, with unit prices of $525,000, $690,000, $992,000, respectively, for a total purchase price of $2,207,000.  (Exhibit 10)  Plaintiff had $1,861,600 in assets and credits in his account that were applied against the purchase price.

33.     On or about October 4, 2019, Plaintiff sent Defendants an additional $90,400. (Exhibit 11)

34.     Thereafter, Defendant's account balance increased to $1,952,000, which is the total of the $1,861,600 in assets and credits plus the additional $90,400 investment.

35.     Defendant Ryan Michaels told Plaintiff that Plaintiff only needed to send $90,400 in connection with the purchase because Defendant Ryan Michaels was adding the remaining $255,000 of his own money towards the purchase price of the Coins, and would recoup this money once the Coins were sold.

36.     The understanding between Plaintiff and the Defendants is that Plaintiff's funds would be held in escrow until delivery of the Coins.

37.     Defendants claimed that the Plaintiff's Coins were being held in Defendants' vault.

38.     Shortly after Plaintiff's funds were deposited, Defendants represented to Plaintiff that the coins were insured for up to $5,000,000.

39.     Plaintiff received a one-page document from Defendants entitled "Lloyd's Certificate," purportedly issued by Lloyd's, London, for a "$5,000,000 'five Million dollar' specialty umbrella." ("Lloyd's Certificate") (Exhibit 12)

40.     The Lloyd's Certificate sent to Plaintiff is not valid and is fraudulent.

41.     Among other deficiencies, the Lloyd's Certificate bears no Policy number or any reference to a specific underwriter.

42.     Neither Lloyd's, London nor any of its syndicate members actually insure the Defendants or the Coins.

43.     On October 5, 2019, Defendants sold on Plaintiff's behalf all three (3) Coins that Plaintiff had purchased on October 3, 2019 at an auction at the Jacob Javitz Center in New York, New York for a profit of $717,275.  Defendant Bennett communicated this amount to Plaintiff by telephone.

44.     In November 2019, Plaintiff asked Defendants to send him all of the funds in his account, except for $50,500, which he needed to keep in his account to keep it open for future purchases.

45.     On November 11, 2019, Defendant Ryan Michaels told Plaintiff that Defendants were sending Plaintiff a certified check via Federal Express.

46.     Despite Defendants' representations that Plaintiff's funds would be sent to him, Plaintiff did not receive any monies.

47.     On or about November 22, 2019, Plaintiff paid an appraisal fee of $17,422 for the Coins.  (Exhibit 13)

48.     On or about December 2, 2019, Plaintiff called Defendants and spoke directly with Defendant Bennett.  Plaintiff demanded a full liquidation and an immediate return of all of Plaintiff's funds from Defendants.  Defendant Bennett said there was $2,737,455 in Plaintiff's account and that the funds were being held in escrow account 4976.

49.     On or about December 10, 2019, Plaintiff called Defendants and spoke to Defendant Ryan Murnane on the phone.  Defendant Ryan Murnane advised Plaintiff that he

would return half of Plaintiff's money by December 13, 2019 and the other half no later than December 27, 2019.

50.     In late December 2019, Plaintiff received two personal checks from Defendant EWI in connection with the liquidation of his account, both of which were returned for insufficient funds:

> (1) Check number 1005, dated December 17, 2019, in the amount of $54,000; and
>
> (3) Check number 1008, dated December 19, 2019, in the amount of $7,700.

(Exhibit 14)

51.     EWI's check number 1005 bounced for insufficient funds, and Defendants did not send another check to Plaintiff with sufficient funds for $54,000.  (Exhibit 14)

52.     EWI's check number 1008 bounced for insufficient funds, and Defendants did not send another check to Plaintiff with sufficient funds for $7,700. (Exhibit 14)

53.     Defendant EWI included a cover note to Plaintiff when it sent Plaintiff check number 1005 on December 17, 2019.  In the cover note, Defendant Exponential recognized Plaintiff's request for a liquidation of his account, and agreed that "all available funds will be sent back via check from E.W.I as soon as said funds from your recent trade ins become available in the EWI house account."  Check number 1005 in the amount of $54,000 was for sales that were allegedly procured on December 13, 2019 on Plaintiff's behalf.  (Exhibit 15)

54.     In late December, Plaintiff received check number 1007 from Defendants in the amount of $17,300, which reflects the cost of the appraisal less $122.00.  Plaintiff cashed check number 1007 in connection with the appraisal fees.  (Exhibit 14)

55.     On or about January 2, 2020, Plaintiff's lawyers sent Defendants a letter by certified mail demanding return of all monies sent to Defendants, which Defendants received. (Exhibit 16). Defendants did not respond to this January 2, 2020 letter.

56.     On or about January 8, 2020, Defendants claim to have sold Twenty-Five (25) "Peace Dollar Ultra Rare 1921-1929 Brilliant Uncirculated limited existence" coins on Plaintiff's behalf for $25,000. (Exhibit 17)

57.     On or about January 8, 2020, Defendants sent Plaintiff a check, check number 1009, to Plaintiff for $25,000.  However, the check bounced for insufficient funds. (Exhibit 18) Defendants did not send another check to Plaintiff with sufficient funds for $25,000.

58.     On January 13, 2020, Plaintiff received a wire transfer of $87,000 from EWI. (Exhibit 19)

59.     Because of a delay in payment from a buyer of the Coins, the buyer was assessed a penalty and Plaintiff earned an additional profit bringing Plaintiff's account balance to $2,885,852.

60.     On April 23, 2020, Defendant Ryan Michaels told Plaintiff by phone that there was a certified check in the amount of $2,885,852 from Chase bank, in New York City, Broadway Branch, and that the check would be delivered to Plaintiff at his home address by April 25, 2020.   Defendants advised that the check was being sent by FedEx with a tracking number of 770314474025.  Defendants never provided a copy or proof of a certified check.  The FedEx tracking information reflects that the package is still "in transit" and that delivery is "pending".

61.     On or about April 24, 2020, Plaintiff went to a FedEx office in Dubuque, IA to check the status of the letter from Defendants with the certified check, but FedEx was not able to locate the letter.  FedEx advised in writing that the letter had been lost.  (Exhibit 20)

62.     Plaintiff called JP Morgan Chase bank on multiple occasions to try to track the certified check that Defendants supposedly sent, but Chase was not able to provide any information to Plaintiff without a check number.

63.     Defendant Ryan Michaels told Plaintiff that Defendants hired a lawyer named "Mr. Gold" who supposedly investigated the missing check from Chase.

64.     According to Defendant Ryan Michaels, Mr. Gold apparently told Defendants that the funds could not be recovered for three months because the certified check had been lost by FedEx.

65.     Plaintiff asked Defendants to have Mr. Gold contact Plaintiff's lawyer Michael Koblenz, Esq., but this was never done, nor was any contact information for Mr. Gold provided to Plaintiff.

66.     More than three months have passed and the funds have not been recovered, and a new check was never sent.

67.     On or about August 6, 2020, Plaintiff received a check from Defendant EWI, check number 1045, in the amount of $500.  In the cover note, Defendant EWI admits that this amount is "just a minor portion of the funds you are waiting on. . . The sum in which we are referring to is $347,000."  Defendant Exponential says that Plaintiff "will be receiving another check and additional paperwork within the next couple of days." (Exhibit 21)

68.     Defendants owe Plaintiff a substantial amount more than $347,000.

69.     Since August 6, 2020, Defendants have never sent any additional funds to Plaintiff for the balance of the remaining funds nor given Plaintiff any Coins.

70.     Defendants have failed to return Plaintiff's money, and as a result of Defendants' improper conduct, Plaintiff has been deprived of at least $2,885,852, which includes Plaintiff's capital investment, plus the profits of sales of the Coins, plus the excess value that the Coins have accrued since Plaintiff's initial purchase, plus penalties because of delay of funds.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Conversion Against All Defendants)

71.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 70 of this Verified Complaint with the same force and effect as if more fully set forth at length.

72.     Plaintiff has and maintains a possessory right and interest over all funds that Plaintiff invested with Defendants, including the profits earned on any sales of Coins.

73.     On December 2, 2019, Plaintiff requested a full liquidation of his account, including the return of his $2,737,455, that Defendant Bennett represented was in Plaintiff's escrow account at that time, plus any additional interest and the penalties that were incurred.

74.     Defendants had an obligation to return Plaintiff's funds.

75.     Defendants acknowledged that Plaintiff was entitled to a liquidation of his account and the return of Plaintiff's account balance.

76.     On April 23, 2020, Defendants represented that they sent a certified check to Plaintiff in the amount of $2,885,852 by Federal Express for the funds in Plaintiff's account, but such check was never received by Plaintiff.  Defendants did not issue a new check to Plaintiff nor were any funds sent to Plaintiff.

11

77.     Defendants wrongfully continue to exercise control over Plaintiff's funds in the amount of $2,885,852.

78.     Defendants' wrongful control over Plaintiff's funds and refusal to return such funds is an interference of Plaintiff's ownership rights.

79.     As a result of Defendants' wrongful control over Plaintiff's funds, Plaintiff has lost $2,885,852 plus interest.

80.     By virtue of the foregoing, Defendants have committed the tort of conversion and Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $2,885,852 plus interest.

### AS AND FOR SECOND CAUSE OF ACTION

#### (Fraud/Fraudulent Inducement)

81.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 70 of this Verified Complaint with the same force and effect as if more fully set forth at length.

82.     In order to defraud Plaintiff into investing money with Defendant, Defendant Ryan Murnane misrepresented to Plaintiff that he was "Ryan Michaels" and represented that he was in the business of selling coins for twenty years and that he was an expert on rare precious metals and coins, and provided Plaintiff with a fake business card bearing the name Ryan Michaels.

83.     In order to defraud Plaintiff into investing money with Defendant, Defendant misrepresented to Plaintiff, while knowing such statement to be false, that Defendants were capable of delivering rare and valuable coins to Plaintiff and would in fact deliver such rare and valuable coins upon receipt of monies from Plaintiff.

84.     In order to defraud Plaintiff into investing money with Defendant, Defendant misrepresented to Plaintiff, while knowing such statement to be false, that the Coins Plaintiff had paid for were insured under a "five Million dollar" "specialty umbrella" policy.

85.     In order to defraud Plaintiff into investing money with Defendant, Defendant misrepresented to Plaintiff, while knowing such statement to be false, that the Lloyd's Certificate purporting to represent that Defendants had $5,000,000 in insurance coverage was genuine and valid.

86.     Defendants do not have insurance with Lloyd's of London or any of their syndicate members.

87.     The Lloyd's Certificate sent to Plaintiff by Defendants is a fraudulent document that Defendants fabricated in further support of their scheme to defraud Plaintiff.

88.     Plaintiff reasonably relied upon Defendants' misrepresentations to his detriment by investing $1,420,800 with Defendants for valuable and rare Coins that he never received.

89.     No Coins were ever delivered to Plaintiff.

90.     The funds that Plaintiff earned from the alleged sale of the Coins by Defendants were never sent to Plaintiff.

91.     Plaintiff requested a full liquidation of the funds of his account.

92.     Defendants represented to Plaintiff that all of Plaintiff's funds would be returned in full by December 27, 2019, but Defendants knew they did not have sufficient funds to pay Plaintiff.

93.     The sale proceeds and profits earned by Plaintiff from the sale of his Coins as well as a delay of payment and a 5% penalty added to his account increased his account balance to $2,885,852.

94.     Defendants represented that they sent a certified check to Plaintiff in the amount of $2,885,852 for the balance of funds in Plaintiff's account, but such check was never received by Plaintiff.

95.     Defendants did not issue a new check Plaintiff, and the full amount of Plaintiff's funds was not ever sent to Plaintiff.

96.     Accordingly, Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $2,885,852 plus interest.

## AS AND FOR THIRD CAUSE OF ACTION

### (Unjust Enrichment)

97.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 70 of this Verified Complaint with the same force and effect as if more fully set forth at length.

98.     By the conduct alleged herein, Defendants have been and continue to be unjustly enriched at the expense of Plaintiff.

99.     Accordingly, Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $2,885,852 plus interest.

**WHEREFORE**, Plaintiff Dr. David Field respectfully requests that the Court issue an Order:

(a) On the First Cause of Action, awarding Plaintiff damages in an amount to be determined at trial, but in no event less than $2,885,852, plus interest;

(b) On the Second Cause of Action, awarding Plaintiff damages in an amount to be determined at trial, but in no event less than $2,885,852 plus interest;

(c) On the Third Cause of Action, awarding Plaintiff damages in an amount to be determined at trial, but in no event less than $2,885,852, plus interest;

(d) Awarding Plaintiff attorneys' fees, costs, disbursements, and interest;

(e) Awarding to Plaintiff such other and further relief which as to this Court deems just and proper.

Dated: New York, New York
       March 8, 2021

MOUND COTTON WOLLAN & GREENGRASS LLP

By: /s/ Michael R. Koblenz
Michael R. Koblenz, Esq. (MK-0888)
Sara F. Lilling, Esq. (SL-3969)
One New York Plaza
New York, NY  10004
Tel: (212) 804-4200
Fax: (212) 344-8066
Email: mkoblenz@moundcotton.com
Email: slilling@moundcotton.com
*Attorneys for Plaintiff Dr. David S. Field*

## VERIFICATION

STATE OF IOWA      )
                     ) ss:
COUNTY OF DUBUQUE  ).

I, Dr. David Field, am the Plaintiff in the within action.  I have read the foregoing Complaint and know the contents thereof.  I hereby verify that the contents therein are true to the best of my knowledge, information, and belief.

DR. DAVID FIELD

Subscribed and Sworn to
before me on March 3rd , 2021

NOTARY PUBLIC

ADAM WAGGONER
Notarial Seal, Iowa
Commission Number 803882
My Commission Expires 4-14-2023

16