UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

DR. DAVID S. FIELD

               Plaintiff,

   vs.

EXPONENTIAL WEALTH INC.,
RYAN MURNANE, RYAN MICHAELS,
KRYSTALYNNE MURNANE, NOLAN
BENNETT, AND CHRISTOPHER PAUL

               Defendants.

-------------------------------------------------------------- X

Index No. 1:21-cv-01990 (JGK) (SLC)

**ORDER TO SHOW CAUSE FOR
DEFAULT JUDGMENT AGAINST
DEFENDANT EXPONENTIAL
WEALTH INC.**

     Upon the annexed Declaration of Sara F. Lilling, Esq., dated April 12, and the exhibits annexed thereto, and upon all prior papers and proceedings heretofore had herein, it is

     ORDERED, that Defendant Exponential Wealth Inc. ("EWI") show cause ~~before this Court, located at 500 Pearl Street, New York, New York, on _____, 2022 at 9:30 o'clock in the forenoon thereof, or as soon thereafter as counsel may be heard,~~ why an Order should not be issued pursuant to Rule 54(b) and Rule 55(b) of the Federal Rules of Civil Procedure in favor of Plaintiff Dr. David S. Field, for the following relief:

    i.    Pursuant to FRCP Rule 55(b)(2), directing that a default judgment be entered in favor of Plaintiff against Defendant Exponential Wealth Inc. in the amount of $2,885,852 plus interest; and

    ii.   Awarding Plaintiff attorneys' fees, costs, and disbursements, and it is further

     ORDERED, that Defendant EWI shall respond in writing to this Order to Show Cause for a default judgment on or before May 6 , 2022. If Defendant EWI fails to respond by that date, judgment may be entered against it, and Defendant EWI will have no trial. Plaintiff may reply by M ay 13, 2022; and it is further

     ORDERED, that Plaintiff shall serve a copy of this Order to Show Cause, along with the annexed Declaration of Sara F. Lilling, Esq. and the exhibits annexed thereto, and the annexed

Proposed Judgment upon Defendant EWI by *April 20,* 2022, and shall file proof of service by *April 25, 2022.*

ORDERED, that no personal appearances are required in connection with this Order to Show Cause.

4/14/22                                    *G. Koeltl*

JUDGE JOHN G. KOELTL

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
DR. DAVID S. FIELD

                             Index No. 1:21-cv-01990 (JGK) (SLC)

               Plaintiff,

     vs.                            **DECLARATION OF**
                                     **SARA F. LILLING, ESQ.**
EXPONENTIAL WEALTH INC.,
RYAN MURNANE, RYAN MICHAELS,
KRYSTALYNNE MURNANE, NOLAN
BENNETT, AND CHRISTOPHER PAUL

                  Defendants.
------------------------------------------------------------ X

     SARA F. LILLING, pursuant to 28 U.S.C. § 1746, hereby declares:

     1.     I am an associate with the law firm of Mound Cotton Wollan & Greengrass, LLP, attorneys for Plaintiff Dr. David S. Field ("Plaintiff" or "Field"). As such, I am fully familiar with the facts and circumstances of this action.

     2.     I submit this Declaration in support of Plaintiff's request for a default judgment against Defendant Exponential Wealth Inc. ("EWI").

     3.     Plaintiff commenced this action by filing a Verified Complaint on March 8, 2021. A copy of the Verified Complaint without Exhibits (Doc. 1) is annexed hereto as Exhibit A.

     4.     A Summons and a copy of the Verified Complaint were served on Defendant EWI on March 30, 2021. A copy of the Affidavit of Service on Defendant EWI (Doc. 18) is annexed hereto as Exhibit B.

     5.     On July 29, 2021, the law firm of Crawford Bringslid Vander Neut, LLP filed a Notice of Appearance on behalf of all defendants, including Defendant EWI. A copy of the Notice of Appearance (Doc. 32) is annexed hereto as Exhibit C.

6.    Thereafter, on October 15, 2021, Plaintiff filed an Amended Verified Complaint. A copy of the Amended Verified Complaint without Exhibits (Doc. 50) is annexed hereto as Exhibit D.

7.    The Amended Verified Complaint was served on EWI, via ECF on their counsel of record, Crawford Bringslid Vander Neut, LLP, on October 15, 2021.  Id.

8.    On October 25, 2021, EWI filed an Answer to the Amended Verified Complaint (Doc. 55).

9.    On January 4, 2022, the Court directed Defendants to produce certain bank statements (the "Bank Statements") by January 21, 2022 (Doc. 91) (the "Jan. 4 Order").  A copy of the Jan 4 Order is attached as Exhibit E.

10.   On January 10, 2022, Defendants' counsel moved to withdraw their representation (Doc. No. 95) (the "Withdrawal Motion"), and on January 18, 2022, Defendants advised the Court of their intent to retain new counsel (Doc. 100).

11.   On January 19, 2022, the Court extended Defendants' deadline to comply with the Jan. 4 Order, and directed Defendants to produce the Bank Statements "within two weeks of new counsel's notice of appearance." (Doc. 101 at 2)

12.   On March 14, 2022, the Court granted the Withdrawal Motion and directed (i) new counsel for Exponential Wealth Inc. to file a notice of appearance by March 28, 2022, and (ii) the individual Defendants to produce the Bank Statements by March 21, 2022. (Doc. 109) (the "Mar. 14 Order").   A copy of the March 14 Order is attached as Exhibit F.

13.    In the Mar. 14 Order, the Court advised Exponential Wealth Inc. for the second time (see Doc. 30) that, by law, corporations cannot proceed pro se (see Jacobs v. Pat. Enf't

2

Fund, Inc., 230 F.3d 565, 568 (2d Cir. 2000)), and that failure to retain counsel may lead to entry of a certificate of default and a default judgment. (Id. at 1–2).

14.    Defendants failed to retain new counsel or otherwise responded to the Jan. 4 or Mar. 14 Orders.

15.    On March 31, 2022, Plaintiff filed a letter advising the Court that Defendants failed to produce the Bank Statements and have otherwise failed to engage in the discovery process, and requesting sanctions under Fed. R. Civ. P. 37.  (Doc. 110).  A copy of the March 31, 2022 letter is attached as Exhibit G.

16.    The March 31, 2022 letter also advised the Court that Plaintiff had served Requests to Admit on January 10, 2022.  These remain unanswered and should all be deemed admitted pursuant to Fed. R. Civ. P. 36(a)(3), including admissions of Defendants' wrongful conduct.

17.    On April 1, 2022, the Court issued an Order (Doc. 111) stating, in part:

1.  By **April 8, 2022**, Plaintiff shall request a certificate of default as to Exponential Wealth Inc. from the Clerk of Court.

2.  By **April 22, 2022**, Plaintiff shall file a Motion for Default Judgment in accordance with the Individual Practices of the Honorable John G. Koeltl, Rule 55 of the Federal Rules of Civil Procedure, and S.D.N.Y. Local Rule 55.

A copy of the April 1, 2022 Order is attached as Exhibit H.

18.    Defendant EWI is in default of the March 14 Order.

19.    A Clerk's Certificate of Default was entered against Defendant EWI on April 6, 2022.  A copy of the Clerk's Certificate of Default against Defendant EWI (Doc. 115) is attached hereto as Exhibit I.

20.    Defendants have repeatedly and blatantly disregarded this Court's Orders and the discovery process.  Defendants have been granted extension upon extension since this action

3

commenced more than a year ago; however, once these extensions are granted, Defendants simply ignore the new deadlines and further delay this action and Plaintiff's recovery of his funds.  Defendants continue to be rewarded for their unlawful conduct

21.    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

WHEREFORE, it is respectfully requested that this Court issue an Order directing that a default judgment be entered in favor of Plaintiff against Defendant Exponential Wealth Inc., in the amount of $2,885,582 plus interest, and awarding Plaintiff attorneys' fees, costs, disbursements, and  such other and further relief as the Court may be deem just and proper.

Dated: New York, New York
          April 12, 2022

/s/ Sara F. Lilling
SARA F. LILLING

4

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
DR. DAVID S. FIELD

                       Plaintiff,

    vs.

EXPONENTIAL WEALTH INC.,
RYAN MURNANE, RYAN MICHAELS,
KRYSTALYNNE MURNANE, AND NOLAN
BENNETT

                       Defendants.
------------------------------------------------------------ X

Index No.

**VERIFIED COMPLAINT**

       Plaintiff, Dr. David S. Field ("Field" or "Plaintiff"), through his attorneys, Mound Cotton Wollan & Greengrass LLP, as and for his Complaint against Defendants Exponential Wealth Inc. ("EWI"), Ryan Murnane, Ryan Michaels, Krystalynne Murnane, and Nolan Bennett ("Bennett") (collectively, "Defendants") alleges upon information and belief:

### NATURE OF ACTION

       1.     This action concerns Defendants' wrongful scheme to defraud Plaintiff into investing $1,420,800 for the purchase of rare and valuable coins ("Coins"), that Defendants promised to deliver to Plaintiff shortly after purchase.  The Defendants never delivered any of the rare or valuable Coins to Plaintiff, and it has become apparent that Defendants never intended to deliver nor were ever capable of delivering such Coins.  Even after the coins were allegedly sold on Plaintiff's behalf at various auctions, Defendants failed to remit payment to Plaintiff, and simply stole Plaintiff's money.

       2.     Defendants perpetrated this fraud on Plaintiff by, among other things, misrepresenting to Plaintiff who they are and their prior work experience, falsifying business cards and using fake names, falsifying checks that purported to be certified but actually were not,

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as there is complete diversity of citizenship between the parties, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

11.     This Court has personal jurisdiction over Defendants because Defendants reside in New York and regularly conduct business in New York.

12.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this lawsuit took place within this district, and the property which is the subject matter of this litigation is located in this district.

## FACTUAL ALLEGATIONS

13.     Plaintiff is a prominent orthopedic surgeon with a medical practice located in Dubuque, Iowa.

14.     In or around February 2019, Plaintiff met Defendants through a cold business call by Defendant Ryan Murnane, who told Plaintiff that his name was Ryan Michaels, and represented that he was in the business of selling coins for twenty years.

15.     Following the cold business call, Plaintiff received brochures in the mail from Defendants with a business card from Defendant Ryan Michaels, whose title was listed as Senior Account Executive at "Exponential Wealth Inc. Investments®".

16.     There is no "Exponential Wealth Inc. Investments" registered with the United States Patent and Trademark Office.

17.     It appears that Ryan Michaels is an alias for Ryan Murnane. Defendant Ryan Michaels admitted to Plaintiff that his real name is Ryan Murnane, and that he changed his name after being suspended by FINRA in May 2018.

3

18. Among other things, Defendants represented that EWI "offers the most inexpensive options of purchasing any bullion/precious metal worldwide"; that "EWI only charges 1.25% above the daily spot price on any one of the four main metals"; that EWI "offers a variety of alternative ways of harboring/storing your metal and ensure the safety of all your precious metals"; that "[o]ur insurance policies are always through Lloyds of London the worlds [sic] largest specialty insurer;" and that "EWI contracts with every metal depository nationwide [sic] also two international depositories." (Exhibit 1)

19. On or about March 11, 2019, Plaintiff executed a new account form with Defendant EWI and made an initial investment.

20. On March 11, 2019, Plaintiff purchased one (1) "Peace Dollar Ultra Rare 1921-1929 Brilliant Uncirculated limited existence" coin. Plaintiff paid Defendants $6,000 in exchange for one coin. (Exhibit 2)

21. According to the invoice generated by Defendants in connection with Plaintiff's purchase of the one (1) "Peace Dollar Ultra Rare 1921-1929 Brilliant Uncirculated limited existence" coin, Invoice Number: 1, dated February 4, 2019, Exponential Wealth Inc. are "Rarities Precious Metals & Fine Art Experts." Defendant Bennett is listed as the "Commodities Representative" with a title of "Managing Director" and Defendant Krystalynne Murnane is identified as "Director of Operations." (Exhibit 2)

22. On March 11, 2019, Plaintiff purchased nine (9) "Peace Dollar Ultra Rare 1921-1929 Brilliant Uncirculated limited existence coins" with a unit price of $6,000 each for a total cost of $54,000. (Exhibit 3)

23. According to the invoice generated by Defendants in connection with Plaintiff's purchase of the nine (9) "Peace Dollar Ultra Rare 1921-1929 Brilliant Uncirculated limited

4

existence" coins, Invoice Number: 2, dated February 4, 2019, Exponential Wealth Inc. are "Rarities Precious Metals & Fine Art Experts." Defendant Ryan Michaels is listed as the "Commodities Representative" with a title of "Director" and Defendant Krystalynne Murnane is identified as "Director of Operations". (Exhibit 3)

24.     Thus, on March 11, 2019, Plaintiff made an initial investment with Defendants for $60,000 in connection with the purchase of the ten (10) rare Coins. The payment was made by personal check number 4263 made payable to Exponential Wealth Inc. (Exhibit 4)

25.     Defendants issued a receipt to Plaintiff for Plaintiff's $60,000 initial investment (Exhibit 5)

26.      On or about April 27, 2019, Plaintiff sold the ten Coins he had purchased for $84,600 at an auction, and Plaintiff earned a profit of $24,600. Plaintiff had authorized the Defendants to sell the Coins on his behalf. (Exhibit 6)

27.     Following the April 27, 2019 sale, Plaintiff had $84,600 in his account with Defendants.

28.     On or about June 13, 2019, Plaintiff purchased additional rare Coins for a total cost of $1,270,400. (Exhibit 7)

29.     On or about June 13, 2019, Plaintiff sent $1,270,400 to Defendants by wire transfer in connection with the purchase of the Coins. (Exhibit 8)

30.     In August 2019, Defendants sold at an auction, on Plaintiff's behalf, the Coins that Plaintiff had purchased in June 2019. The Coins were sold at a profit.

31.     In August 2019, Plaintiff's account statement reflected a balance of $1,861,600. (Exhibit 9)

32.     On or about October 3, 2019, Plaintiff purchased three (3) rare U.S. Gold Dollar Coins, with unit prices of $525,000, $690,000, $992,000, respectively, for a total purchase price of $2,207,000.  (Exhibit 10)  Plaintiff had $1,861,600 in assets and credits in his account that were applied against the purchase price.

33.     On or about October 4, 2019, Plaintiff sent Defendants an additional $90,400. (Exhibit 11)

34.     Thereafter, Defendant's account balance increased to $1,952,000, which is the total of the $1,861,600 in assets and credits plus the additional $90,400 investment.

35.     Defendant Ryan Michaels told Plaintiff that Plaintiff only needed to send $90,400 in connection with the purchase because Defendant Ryan Michaels was adding the remaining $255,000 of his own money towards the purchase price of the Coins, and would recoup this money once the Coins were sold.

36.     The understanding between Plaintiff and the Defendants is that Plaintiff's funds would be held in escrow until delivery of the Coins.

37.     Defendants claimed that the Plaintiff's Coins were being held in Defendants' vault.

38.     Shortly after Plaintiff's funds were deposited, Defendants represented to Plaintiff that the coins were insured for up to $5,000,000.

39.     Plaintiff received a one-page document from Defendants entitled "Lloyd's Certificate," purportedly issued by Lloyd's, London, for a "$5,000,000 'five Million dollar' specialty umbrella." ("Lloyd's Certificate") (Exhibit 12)

40.     The Lloyd's Certificate sent to Plaintiff is not valid and is fraudulent.

41.     Among other deficiencies, the Lloyd's Certificate bears no Policy number or any reference to a specific underwriter.

42.     Neither Lloyd's, London nor any of its syndicate members actually insure the Defendants or the Coins.

43.     On October 5, 2019, Defendants sold on Plaintiff's behalf all three (3) Coins that Plaintiff had purchased on October 3, 2019 at an auction at the Jacob Javitz Center in New York, New York for a profit of $717,275.  Defendant Bennett communicated this amount to Plaintiff by telephone.

44.     In November 2019, Plaintiff asked Defendants to send him all of the funds in his account, except for $50,500, which he needed to keep in his account to keep it open for future purchases.

45.     On November 11, 2019, Defendant Ryan Michaels told Plaintiff that Defendants were sending Plaintiff a certified check via Federal Express.

46.     Despite Defendants' representations that Plaintiff's funds would be sent to him, Plaintiff did not receive any monies.

47.     On or about November 22, 2019, Plaintiff paid an appraisal fee of $17,422 for the Coins.  (Exhibit 13)

48.     On or about December 2, 2019, Plaintiff called Defendants and spoke directly with Defendant Bennett.  Plaintiff demanded a full liquidation and an immediate return of _all_ of Plaintiff's funds from Defendants.  Defendant Bennett said there was $2,737,455 in Plaintiff's account and that the funds were being held in escrow account 4976.

49.     On or about December 10, 2019, Plaintiff called Defendants and spoke to Defendant Ryan Murnane on the phone.  Defendant Ryan Murnane advised Plaintiff that he

7

would return half of Plaintiff's money by December 13, 2019 and the other half no later than December 27, 2019.

50.     In late December 2019, Plaintiff received two personal checks from Defendant EWI in connection with the liquidation of his account, both of which were returned for insufficient funds:

> (1) Check number 1005, dated December 17, 2019, in the amount of $54,000; and

> (3) Check number 1008, dated December 19, 2019, in the amount of $7,700.

(Exhibit 14)

51.     EWI's check number 1005 bounced for insufficient funds, and Defendants did not send another check to Plaintiff with sufficient funds for $54,000.  (Exhibit 14)

52.     EWI's check number 1008 bounced for insufficient funds, and Defendants did not send another check to Plaintiff with sufficient funds for $7,700. (Exhibit 14)

53.     Defendant EWI included a cover note to Plaintiff when it sent Plaintiff check number 1005 on December 17, 2019.   In the cover note, Defendant Exponential recognized Plaintiff's request for a liquidation of his account, and agreed that "all available funds will be sent back via check from E.W.I as soon as said funds from your recent trade ins become available in the EWI house account."  Check number 1005 in the amount of $54,000 was for sales that were allegedly procured on December 13, 2019 on Plaintiff's behalf.   (Exhibit 15)

54.     In late December, Plaintiff received check number 1007 from Defendants in the amount of $17,300, which reflects the cost of the appraisal less $122.00.  Plaintiff cashed check number 1007 in connection with the appraisal fees.  (Exhibit 14)

55.     On or about January 2, 2020, Plaintiff's lawyers sent Defendants a letter by certified mail demanding return of all monies sent to Defendants, which Defendants received. (Exhibit 16). Defendants did not respond to this January 2, 2020 letter.

56.     On or about January 8, 2020, Defendants claim to have sold Twenty-Five (25) "Peace Dollar Ultra Rare 1921-1929 Brilliant Uncirculated limited existence" coins on Plaintiff's behalf for $25,000. (Exhibit 17)

57.     On or about January 8, 2020, Defendants sent Plaintiff a check, check number 1009, to Plaintiff for $25,000.  However, the check bounced for insufficient funds. (Exhibit 18) Defendants did not send another check to Plaintiff with sufficient funds for $25,000.

58.     On January 13, 2020, Plaintiff received a wire transfer of $87,000 from EWI. (Exhibit 19)

59.     Because of a delay in payment from a buyer of the Coins, the buyer was assessed a penalty and Plaintiff earned an additional profit bringing Plaintiff's account balance to $2,885,852.

60.     On April 23, 2020, Defendant Ryan Michaels told Plaintiff by phone that there was a certified check in the amount of $2,885,852 from Chase bank, in New York City, Broadway Branch, and that the check would be delivered to Plaintiff at his home address by April 25, 2020.   Defendants advised that the check was being sent by FedEx with a tracking number of 770314474025.  Defendants never provided a copy or proof of a certified check.  The FedEx tracking information reflects that the package is still "in transit" and that delivery is "pending".

61.     On or about April 24, 2020, Plaintiff went to a FedEx office in Dubuque, IA to check the status of the letter from Defendants with the certified check, but FedEx was not able to locate the letter.  FedEx advised in writing that the letter had been lost.  (Exhibit 20)

62.     Plaintiff called JP Morgan Chase bank on multiple occasions to try to track the certified check that Defendants supposedly sent, but Chase was not able to provide any information to Plaintiff without a check number.

63.     Defendant Ryan Michaels told Plaintiff that Defendants hired a lawyer named "Mr. Gold" who supposedly investigated the missing check from Chase.

64.     According to Defendant Ryan Michaels, Mr. Gold apparently told Defendants that the funds could not be recovered for three months because the certified check had been lost by FedEx.

65.     Plaintiff asked Defendants to have Mr. Gold contact Plaintiff's lawyer Michael Koblenz, Esq., but this was never done, nor was any contact information for Mr. Gold provided to Plaintiff.

66.     More than three months have passed and the funds have not been recovered, and a new check was never sent.

67.     On or about August 6, 2020, Plaintiff received a check from Defendant EWI, check number 1045, in the amount of $500.  In the cover note, Defendant EWI admits that this amount is "just a minor portion of the funds you are waiting on. . . The sum in which we are referring to is $347,000."  Defendant Exponential says that Plaintiff "will be receiving another check and additional paperwork within the next couple of days." (Exhibit 21)

68.     Defendants owe Plaintiff a substantial amount more than $347,000.

10

69.     Since August 6, 2020, Defendants have never sent any additional funds to Plaintiff for the balance of the remaining funds nor given Plaintiff any Coins.

70.     Defendants have failed to return Plaintiff's money, and as a result of Defendants' improper conduct, Plaintiff has been deprived of at least $2,885,852, which includes Plaintiff's capital investment, plus the profits of sales of the Coins, plus the excess value that the Coins have accrued since Plaintiff's initial purchase, plus penalties because of delay of funds.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Conversion Against All Defendants)

71.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 70 of this Verified Complaint with the same force and effect as if more fully set forth at length.

72.     Plaintiff has and maintains a possessory right and interest over all funds that Plaintiff invested with Defendants, including the profits earned on any sales of Coins.

73.     On December 2, 2019, Plaintiff requested a full liquidation of his account, including the return of his $2,737,455, that Defendant Bennett represented was in Plaintiff's escrow account at that time, plus any additional interest and the penalties that were incurred.

74.     Defendants had an obligation to return Plaintiff's funds.

75.     Defendants acknowledged that Plaintiff was entitled to a liquidation of his account and the return of Plaintiff's account balance.

76.     On April 23, 2020, Defendants represented that they sent a certified check to Plaintiff in the amount of $2,885,852 by Federal Express for the funds in Plaintiff's account, but such check was never received by Plaintiff.  Defendants did not issue a new check to Plaintiff nor were any funds sent to Plaintiff.

77. Defendants wrongfully continue to exercise control over Plaintiff's funds in the amount of $2,885,852.

78. Defendants' wrongful control over Plaintiff's funds and refusal to return such funds is an interference of Plaintiff's ownership rights.

79. As a result of Defendants' wrongful control over Plaintiff's funds, Plaintiff has lost $2,885,852 plus interest.

80. By virtue of the foregoing, Defendants have committed the tort of conversion and Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $2,885,852 plus interest.

## AS AND FOR SECOND CAUSE OF ACTION

### (Fraud/Fraudulent Inducement)

81. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 70 of this Verified Complaint with the same force and effect as if more fully set forth at length.

82. In order to defraud Plaintiff into investing money with Defendant, Defendant Ryan Murnane misrepresented to Plaintiff that he was "Ryan Michaels" and represented that he was in the business of selling coins for twenty years and that he was an expert on rare precious metals and coins, and provided Plaintiff with a fake business card bearing the name Ryan Michaels.

83. In order to defraud Plaintiff into investing money with Defendant, Defendant misrepresented to Plaintiff, while knowing such statement to be false, that Defendants were capable of delivering rare and valuable coins to Plaintiff and would in fact deliver such rare and valuable coins upon receipt of monies from Plaintiff.

12

84. In order to defraud Plaintiff into investing money with Defendant, Defendant misrepresented to Plaintiff, while knowing such statement to be false, that the Coins Plaintiff had paid for were insured under a "five Million dollar" "specialty umbrella" policy.

85. In order to defraud Plaintiff into investing money with Defendant, Defendant misrepresented to Plaintiff, while knowing such statement to be false, that the Lloyd's Certificate purporting to represent that Defendants had $5,000,000 in insurance coverage was genuine and valid.

86. Defendants do not have insurance with Lloyd's of London or any of their syndicate members.

87. The Lloyd's Certificate sent to Plaintiff by Defendants is a fraudulent document that Defendants fabricated in further support of their scheme to defraud Plaintiff.

88. Plaintiff reasonably relied upon Defendants' misrepresentations to his detriment by investing $1,420,800 with Defendants for valuable and rare Coins that he never received.

89. No Coins were ever delivered to Plaintiff.

90. The funds that Plaintiff earned from the alleged sale of the Coins by Defendants were never sent to Plaintiff.

91. Plaintiff requested a full liquidation of the funds of his account.

92. Defendants represented to Plaintiff that all of Plaintiff's funds would be returned in full by December 27, 2019, but Defendants knew they did not have sufficient funds to pay Plaintiff.

93. The sale proceeds and profits earned by Plaintiff from the sale of his Coins as well as a delay of payment and a 5% penalty added to his account increased his account balance to $2,885,852.

13

94.     Defendants represented that they sent a certified check to Plaintiff in the amount of $2,885,852 for the balance of funds in Plaintiff's account, but such check was never received by Plaintiff.

95.     Defendants did not issue a new check Plaintiff, and the full amount of Plaintiff's funds was not ever sent to Plaintiff.

96.     Accordingly, Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $2,885,852 plus interest.

## AS AND FOR THIRD CAUSE OF ACTION

### (Unjust Enrichment)

97.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 70 of this Verified Complaint with the same force and effect as if more fully set forth at length.

98.     By the conduct alleged herein, Defendants have been and continue to be unjustly enriched at the expense of Plaintiff.

99.     Accordingly, Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $2,885,852 plus interest.

**WHEREFORE**, Plaintiff Dr. David Field respectfully requests that the Court issue an Order:

(a) On the First Cause of Action, awarding Plaintiff damages in an amount to be determined at trial, but in no event less than $2,885,852, plus interest;

(b) On the Second Cause of Action, awarding Plaintiff damages in an amount to be determined at trial, but in no event less than $2,885,852 plus interest;

(c) On the Third Cause of Action, awarding Plaintiff damages in an amount to be determined at trial, but in no event less than $2,885,852, plus interest;

(d) Awarding Plaintiff attorneys' fees, costs, disbursements, and interest;

(e) Awarding to Plaintiff such other and further relief which as to this Court deems just and proper.

Dated: New York, New York
       March 8, 2021

MOUND COTTON WOLLAN & GREENGRASS LLP

By: /s/ Michael R. Koblenz
Michael R. Koblenz, Esq. (MK-0888)
Sara F. Lilling, Esq. (SL-3969)
One New York Plaza
New York, NY  10004
Tel: (212) 804-4200
Fax: (212) 344-8066
Email: mkoblenz@moundcotton.com
Email: slilling@moundcotton.com
*Attorneys for Plaintiff Dr. David S. Field*

15

## VERIFICATION

STATE OF IOWA          )
                       ) ss:
COUNTY OF DUBUQUE      ).

I, Dr. David Field, am the Plaintiff in the within action.  I have read the foregoing

Complaint and know the contents thereof.  I hereby verify that the contents therein are true to the

best of my knowledge, information, and belief.



_____
DR. DAVID FIELD


Subscribed and Sworn to
before me on March 3rd , 2021


_____
NOTARY PUBLIC

ADAM WAGGONER
Notarial Seal, Iowa
Commission Number 803862
My Commission Expires 4-14-2023

16

# EXHIBIT B

MOUND, COTTON, WOLLAN & GREENGRASS LLP
Secretary of State, 306BCL

# UNITED STATES SOUTHERN DISTRICT COURT
## OF NEW YORK

### AFFIDAVIT OF SERVICE



*2439417*

Index no : 1:21-CV-01990
Date of Purchase: 03/08/2021

| Plaintiff: | DR DAVID S FIELD |
|---|---|
| Defendant: | EXPONENTIAL WEALTH INC ETAL |

STATE OF NEW YORK COUNTY OF NEW YORK          ss.:

**DANIEL MILLER**, the undersigned, being duly sworn, deposes and says that I was at the time of service over the age of eighteen and not a party to this action. I reside in the state of New York.

On **03/30/2021** at **12:15 PM** at the office of the Secretary of State of the State of New York in the City of Albany, New York, I served the within **SUMMONS AND VERIFIED COMPLAINT** upon **EXPONENTIAL WEALTH INC** the Defendant in this action in the manner indicated below:

By delivering to and leaving with **NANCY DOUGHERTY, CLERK AUTHORIZED TO ACCEPT** in the office of the Secretary of State of New York, two true copies thereof and at the same time of making such service, deponent paid said Secretary of State, a fee of $40.00. That said service was made pursuant to Section 306 of the BCL.

Deponent further states, he knew the said served to be an authorized **CLERK AUTHORIZED TO ACCEPT** in the Corporate Divison of the State of New York.

Deponent further describes the person actually served as follows:

| Sex | Color of skin/race | Color of hair | Age | Height | Weight |
|---|---|---|---|---|---|
| Female | WHITE | BROWN | 65 | 5'3" | 140 |
| Other Features: | | | | | |

Sworn to and subscribed before me on
03/31/2021

X 
DANIEL MILLER
AAA Attorney Service Co. of NY, Inc.
20 Vesey Street, Room 1110
New York, NY 10007
(212) 233-3508 Clerk: ASHWINEE

HARVEY TAUBER
Notary Public, State of New York
No. 01TA4667012
Qualified in BRONX
Commission Expires 12/31/2022

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
DR. DAVID S. FIELD,                                    Index Number: 1:21-CV-01990

                         Plaintiff,

          -against-
                                                       **NOTICE OF APPEARANCE**

EXPONENTIAL WEALTH INC., RYAN MURNANE,
RYAN MICHAELS, KRYSTALYNNE MURNANE,
and NOLAN BENNETT,

                         Defendants.
--------------------------------------------------------------------X

          TAKE NOTICE, that Michael J. DeSantis, Esq. of CRAWFORD · BRINGSLID ·

VANDER NEUT, LLP hereby appears in this action on behalf of all Defendants.

          TAKE FURTHER NOTICE that demand is hereby made that service of all papers and

communications in this matter be made upon the undersigned.

Dated:  Staten Island, New York
        July 29, 2021

                                   Yours, etc.

                         **CRAWFORD · BRINGSLID · VANDER NEUT, LLP**


                         Michael J. DeSantis, Esq.
                         Attorneys for Defendants
                         900 South Avenue, Suite 204
                         Staten Island, New York 10314
                         (718) 273-9414




To:
        Mound Cotton Wollan & Greengrass, LLP
        One New York Plaza
        New York, New York 10004

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

DR. DAVID S. FIELD

          Index No. 1:21-cv-01990 (JGK) (SLC)

        Plaintiff,

   vs.                **AMENDED VERIFIED COMPLAINT**

EXPONENTIAL WEALTH INC.,
RYAN MURNANE, RYAN MICHAELS,
KRYSTALYNNE MURNANE, NOLAN
BENNETT, AND CHRISTOPHER PAUL

           Defendants.
------------------------------------------------------------ X

      Plaintiff, Dr. David S. Field ("Field" or "Plaintiff"), through his attorneys, Mound Cotton

Wollan & Greengrass LLP, as and for his Complaint against Defendants Exponential Wealth Inc.

("EWI"), Ryan Murnane, Ryan Michaels, Krystalynne Murnane, Nolan Bennett ("Bennett"), and

Christopher Paul (collectively, "Defendants") alleges upon information and belief:

<strong>NATURE OF ACTION</strong>

      1.    This action concerns Defendants' wrongful scheme to defraud Plaintiff into

investing $1,420,800 for the purchase of rare and valuable coins ("Coins"), that Defendants

promised to deliver to Plaintiff shortly after purchase. The Defendants never delivered any of

the rare or valuable Coins to Plaintiff, and it has become apparent that Defendants never intended

to deliver nor were ever capable of delivering such Coins. Even after the coins were allegedly

sold on Plaintiff's behalf at various auctions, Defendants failed to remit payment to Plaintiff,

and simply stole Plaintiff's money.

      2.    Defendants perpetrated this fraud on Plaintiff by, among other things,

misrepresenting to Plaintiff who they are and their prior work experience, falsifying business

cards and using fake names, falsifying checks that purported to be certified but actually were not,

fabricating an insurance certificate and representing that the rare and valuable Coins that Plaintiff purchased were insured for $5,000,000 when in fact no such insurance even existed, engaging in fraudulent business activities, representing that monies would be returned to Plaintiff, but knowingly having insufficient funds for any checks to clear.

3.      Plaintiff brings this action to recoup the $2,885,852 that remains in his account with Defendants, as well as interest, attorneys' fees, and costs that are the direct result of Defendants' conversion of Plaintiff's assets, fraud, and unjust enrichment.

## THE PARTIES

4.      Plaintiff is a natural person who resides at 10565 Woodland Heights Road, Dubuque, IA 52003.

5.      Defendant Exponential Wealth Inc. is a New York corporation, incorporated in New York on August 10, 2015, with its principal place of business at 99 Wall Street, Suite 1144, New York, NY 10005.

6.      Defendant Ryan Murnane is a natural person who resides at 888 Edgegrove Ave. Staten Island, NY 10309.

7.      Defendant Ryan Michaels is a natural person who resides at 888 Edgegrove Ave. Staten Island, NY 10309.

8.      Defendant Krystalynne Murnane is a natural person who resides at 888 Edgegrove Ave. Staten Island, NY 10309.

9.      Defendant Nolan Bennett is a natural person who resides at 888 Edgegrove Ave. Staten Island, NY 10309.

10.      Defendant Christopher Paul is a natural person who resides at 888 Edgegrove Ave. Staten Island, NY 10309.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as there is complete diversity of citizenship between the parties, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

12.     This Court has personal jurisdiction over Defendants because Defendants reside in New York and regularly conduct business in New York.

13.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this lawsuit took place within this district, and the property which is the subject matter of this litigation is located in this district.

## FACTUAL ALLEGATIONS

14.     Plaintiff is a prominent orthopedic surgeon with a medical practice located in Dubuque, Iowa.

15.     In or around February 2019, Plaintiff met Defendants through a cold business call by Defendant Ryan Murnane, who told Plaintiff that his name was Ryan Michaels, and represented that he was in the business of selling coins for twenty years.

16.     Following the cold business call, Plaintiff received brochures in the mail from Defendants with a business card from Defendant Ryan Michaels, whose title was listed as Senior Account Executive at "Exponential Wealth Inc. Investments®".

17.     There is no "Exponential Wealth Inc. Investments" registered with the United States Patent and Trademark Office.

18.     It appears that Ryan Michaels is an alias for Ryan Murnane. Defendant Ryan Michaels admitted to Plaintiff that his real name is Ryan Murnane, and that he changed his name after being suspended by FINRA in May 2018.

19.     It appears that Nolan Bennett is an alias for Christopher Paul, and that Christopher Paul used the name Nolan Bennett when he communicated with Plaintiff and in connection with his fraudulent activities with Defendants.

20.     Among other things, Defendants represented that EWI "offers the most inexpensive options of purchasing any bullion/precious metal worldwide"; that "EWI only charges 1.25% above the daily spot price on any one of the four main metals"; that EWI "offers a variety of alternative ways of harboring/storing your metal and ensure the safety of all your precious metals"; that "[o]ur insurance policies are always through Lloyds of London the worlds [sic] largest specialty insurer;" and that "EWI contracts with every metal depository nationwide [sic] also two international depositories." (Exhibit 1)

21.     On or about March 11, 2019, Plaintiff executed a new account form with Defendant EWI and made an initial investment.

22.     On March 11, 2019, Plaintiff purchased one (1) "Peace Dollar Ultra Rare 1921-1929 Brilliant Uncirculated limited existence" coin. Plaintiff paid Defendants $6,000 in exchange for one coin. (Exhibit 2)

23.     According to the invoice generated by Defendants in connection with Plaintiff's purchase of the one (1) "Peace Dollar Ultra Rare 1921-1929 Brilliant Uncirculated limited existence" coin, Invoice Number: 1, dated February 4, 2019, Exponential Wealth Inc. are "Rarities Precious Metals & Fine Art Experts." Defendant Bennett is listed as the "Commodities Representative" with a title of "Managing Director" and Defendant Krystalynne Murnane is identified as "Director of Operations." (Exhibit 2)

4

24.     On March 11, 2019, Plaintiff purchased nine (9) "Peace Dollar Ultra Rare 1921-1929 Brilliant Uncirculated limited existence coins" with a unit price of $6,000 each for a total cost of $54,000.  (Exhibit 3)

25.     According to the invoice generated by Defendants in connection with Plaintiff's purchase of the nine (9) "Peace Dollar Ultra Rare 1921-1929 Brilliant Uncirculated limited existence" coins, Invoice Number: 2, dated February 4, 2019, Exponential Wealth Inc. are "Rarities Precious Metals & Fine Art Experts."   Defendant Ryan Michaels is listed as the "Commodities Representative" with a title of "Director" and Defendant Krystalynne Murnane is identified as "Director of Operations".  (Exhibit 3)

26.     Thus, on March 11, 2019, Plaintiff made an initial investment with Defendants for $60,000 in connection with the purchase of the ten (10) rare Coins.  The payment was made by personal check number 4263 made payable to Exponential Wealth Inc.  (Exhibit 4)

27.     Defendants issued a receipt to Plaintiff for Plaintiff's $60,000 initial investment (Exhibit 5)

28.      On or about April 27, 2019, Plaintiff sold the ten Coins he had purchased for $84,600 at an auction, and Plaintiff earned a profit of $24,600.   Plaintiff had authorized the Defendants to sell the Coins on his behalf.  (Exhibit 6)

29.     Following the April 27, 2019 sale, Plaintiff had $84,600 in his account with Defendants.

30.     On or about June 13, 2019, Plaintiff purchased additional rare Coins for a total cost of $1,270,400. (Exhibit 7)

31.     On or about June 13, 2019, Plaintiff sent $1,270,400 to Defendants by wire transfer in connection with the purchase of the Coins.  (Exhibit 8)

32.     In August 2019, Defendants sold at an auction, on Plaintiff's behalf, the Coins that Plaintiff had purchased in June 2019.  The Coins were sold at a profit.

33.     In August 2019, Plaintiff's account statement reflected a balance of $1,861,600. (Exhibit 9)

34.     On or about October 3, 2019, Plaintiff purchased three (3) rare U.S. Gold Dollar Coins, with unit prices of $525,000, $690,000, $992,000, respectively, for a total purchase price of $2,207,000.  (Exhibit 10)  Plaintiff had $1,861,600 in assets and credits in his account that were applied against the purchase price.

35.     On or about October 4, 2019, Plaintiff sent Defendants an additional $90,400. (Exhibit 11)

36.     Thereafter, Defendant's account balance increased to $1,952,000, which is the total of the $1,861,600 in assets and credits plus the additional $90,400 investment.

37.     Defendant Ryan Michaels told Plaintiff that Plaintiff only needed to send $90,400 in connection with the purchase because Defendant Ryan Michaels was adding the remaining $255,000 of his own money towards the purchase price of the Coins, and would recoup this money once the Coins were sold.

38.     The understanding between Plaintiff and the Defendants is that Plaintiff's funds would be held in escrow until delivery of the Coins.

39.     Defendants claimed that the Plaintiff's Coins were being held in Defendants' vault.

40.     Shortly after Plaintiff's funds were deposited, Defendants represented to Plaintiff that the coins were insured for up to $5,000,000.

6

41.     Plaintiff received a one-page document from Defendants entitled "Lloyd's Certificate," purportedly issued by Lloyd's, London, for a "$5,000,000 'five Million dollar' specialty umbrella." ("Lloyd's Certificate") (Exhibit 12)

42.     The Lloyd's Certificate sent to Plaintiff is not valid and is fraudulent.

43.     Among other deficiencies, the Lloyd's Certificate bears no Policy number or any reference to a specific underwriter.

44.     Neither Lloyd's, London nor any of its syndicate members actually insure the Defendants or the Coins.

45.     On October 5, 2019, Defendants sold on Plaintiff's behalf all three (3) Coins that Plaintiff had purchased on October 3, 2019 at an auction at the Jacob Javitz Center in New York, New York for a profit of $717,275.  Defendant Christopher Paul, who represented to Plaintiff that he was Nolan Bennett, communicated this amount to Plaintiff by telephone.

46.     In November 2019, Plaintiff asked Defendants to send him all of the funds in his account, except for $50,500, which he needed to keep in his account to keep it open for future purchases.

47.     On November 11, 2019, Defendant Ryan Michaels told Plaintiff that Defendants were sending Plaintiff a certified check via Federal Express.

48.     Despite Defendants' representations that Plaintiff's funds would be sent to him, Plaintiff did not receive any monies.

49.     On or about November 22, 2019, Plaintiff paid an appraisal fee of $17,422 for the Coins.  (Exhibit 13)

50.     On or about December 2, 2019, Plaintiff called Defendants and spoke directly with Defendant Christopher Paul, who represented to Plaintiff that he was Nolan Bennett.

Plaintiff demanded a full liquidation and an immediate return of <u>all</u> of Plaintiff's funds from Defendants. Defendant Christopher Paul, who represented to Plaintiff that he was Nolan Bennett, said there was $2,737,455 in Plaintiff's account and that the funds were being held in escrow account 4976.

51. On or about December 10, 2019, Plaintiff called Defendants and spoke to Defendant Ryan Murnane on the phone. Defendant Ryan Murnane advised Plaintiff that he would return half of Plaintiff's money by December 13, 2019 and the other half no later than December 27, 2019.

52. In late December 2019, Plaintiff received two personal checks from Defendant EWI in connection with the liquidation of his account, both of which were returned for insufficient funds:

(1) Check number 1005, dated December 17, 2019, in the amount of $54,000; and

(3) Check number 1008, dated December 19, 2019, in the amount of $7,700.

(Exhibit 14)

53. EWI's check number 1005 bounced for insufficient funds, and Defendants did not send another check to Plaintiff with sufficient funds for $54,000. (Exhibit 14)

54. EWI's check number 1008 bounced for insufficient funds, and Defendants did not send another check to Plaintiff with sufficient funds for $7,700. (Exhibit 14)

55. Defendant EWI included a cover note to Plaintiff when it sent Plaintiff check number 1005 on December 17, 2019. In the cover note, Defendant Exponential recognized Plaintiff's request for a liquidation of his account, and agreed that "all available funds will be sent back via check from E.W.I as soon as said funds from your recent trade ins become

available in the EWI house account." Check number 1005 in the amount of $54,000 was for sales that were allegedly procured on December 13, 2019 on Plaintiff's behalf. (Exhibit 15)

56. In late December, Plaintiff received check number 1007 from Defendants in the amount of $17,300, which reflects the cost of the appraisal less $122.00. Plaintiff cashed check number 1007 in connection with the appraisal fees. (Exhibit 14)

57. On or about January 2, 2020, Plaintiff's lawyers sent Defendants a letter by certified mail demanding return of all monies sent to Defendants, which Defendants received. (Exhibit 16). Defendants did not respond to this January 2, 2020 letter.

58. On or about January 8, 2020, Defendants claim to have sold Twenty-Five (25) "Peace Dollar Ultra Rare 1921-1929 Brilliant Uncirculated limited existence" coins on Plaintiff's behalf for $25,000. (Exhibit 17)

59. On or about January 8, 2020, Defendants sent Plaintiff a check, check number 1009, to Plaintiff for $25,000. However, the check bounced for insufficient funds. (Exhibit 18) Defendants did not send another check to Plaintiff with sufficient funds for $25,000.

60. On January 13, 2020, Plaintiff received a wire transfer of $87,000 from EWI. (Exhibit 19)

61. Because of a delay in payment from a buyer of the Coins, the buyer was assessed a penalty and Plaintiff earned an additional profit bringing Plaintiff's account balance to $2,885,852.

62. On April 23, 2020, Defendant Ryan Michaels told Plaintiff by phone that there was a certified check in the amount of $2,885,852 from Chase bank, in New York City, Broadway Branch, and that the check would be delivered to Plaintiff at his home address by April 25, 2020. Defendants advised that the check was being sent by FedEx with a tracking

number of 770314474025.  Defendants never provided a copy or proof of a certified check.  The FedEx tracking information reflects that the package is still "in transit" and that delivery is "pending".

63.     On or about April 24, 2020, Plaintiff went to a FedEx office in Dubuque, IA to check the status of the letter from Defendants with the certified check, but FedEx was not able to locate the letter.  FedEx advised in writing that the letter had been lost.  (Exhibit 20)

64.     Plaintiff called JP Morgan Chase bank on multiple occasions to try to track the certified check that Defendants supposedly sent, but Chase was not able to provide any information to Plaintiff without a check number.

65.     Defendant Ryan Michaels told Plaintiff that Defendants hired a lawyer named "Mr. Gold" who supposedly investigated the missing check from Chase.

66.     According to Defendant Ryan Michaels, Mr. Gold apparently told Defendants that the funds could not be recovered for three months because the certified check had been lost by FedEx.

67.     Plaintiff asked Defendants to have Mr. Gold contact Plaintiff's lawyer Michael Koblenz, Esq., but this was never done, nor was any contact information for Mr. Gold provided to Plaintiff.

68.     More than three months have passed and the funds have not been recovered, and a new check was never sent.

69.     On or about August 6, 2020, Plaintiff received a check from Defendant EWI, check number 1045, in the amount of $500.  In the cover note, Defendant EWI admits that this amount is "just a minor portion of the funds you are waiting on. . . The sum in which we are

10

referring to is $347,000." Defendant Exponential says that Plaintiff "will be receiving another check and additional paperwork within the next couple of days." (Exhibit 21)

70.     Defendants owe Plaintiff a substantial amount more than $347,000.

71.     Since August 6, 2020, Defendants have never sent any additional funds to Plaintiff for the balance of the remaining funds nor given Plaintiff any Coins.

72.     Defendants have failed to return Plaintiff's money, and as a result of Defendants' improper conduct, Plaintiff has been deprived of at least $2,885,852, which includes Plaintiff's capital investment, plus the profits of sales of the Coins, plus the excess value that the Coins have accrued since Plaintiff's initial purchase, plus penalties because of delay of funds.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Conversion Against All Defendants)

73.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 72 of this Amended Verified Complaint with the same force and effect as if more fully set forth at length.

74.     Plaintiff has and maintains a possessory right and interest over all funds that Plaintiff invested with Defendants, including the profits earned on any sales of Coins.

75.     On December 2, 2019, Plaintiff requested a full liquidation of his account, including the return of his $2,737,455, that Defendant Christopher Paul, who represented to Plaintiff that he was Nolan Bennett, represented was in Plaintiff's escrow account at that time, plus any additional interest and the penalties that were incurred.

76.     Defendants had an obligation to return Plaintiff's funds.

77.     Defendants acknowledged that Plaintiff was entitled to a liquidation of his account and the return of Plaintiff's account balance.

78. On April 23, 2020, Defendants represented that they sent a certified check to Plaintiff in the amount of $2,885,852 by Federal Express for the funds in Plaintiff's account, but such check was never received by Plaintiff. Defendants did not issue a new check to Plaintiff nor were any funds sent to Plaintiff.

79. Defendants wrongfully continue to exercise control over Plaintiff's funds in the amount of $2,885,852.

80. Defendants' wrongful control over Plaintiff's funds and refusal to return such funds is an interference of Plaintiff's ownership rights.

81. As a result of Defendants' wrongful control over Plaintiff's funds, Plaintiff has lost $2,885,852 plus interest.

82. By virtue of the foregoing, Defendants have committed the tort of conversion and Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $2,885,852 plus interest.

## AS AND FOR SECOND CAUSE OF ACTION

### (Fraud/Fraudulent Inducement)

83. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 72 of this Amended Verified Complaint with the same force and effect as if more fully set forth at length.

84. In order to defraud Plaintiff into investing money with Defendants, Defendant Ryan Murnane misrepresented to Plaintiff that he was "Ryan Michaels" and represented that he was in the business of selling coins for twenty years and that he was an expert on rare precious metals and coins, and provided Plaintiff with a fake business card bearing the name Ryan

Michaels, and Defendant Christopher Paul misrepresented to Plaintiff that he was "Nolan Bennett," operating under an alias to perpetrate fraudulent activities.

85.     In order to defraud Plaintiff into investing money with Defendants, Defendants misrepresented to Plaintiff, while knowing such statement to be false, that Defendants were capable of delivering rare and valuable coins to Plaintiff and would in fact deliver such rare and valuable coins upon receipt of monies from Plaintiff.

86.     In order to defraud Plaintiff into investing money with Defendants, Defendants misrepresented to Plaintiff, while knowing such statement to be false, that the Coins Plaintiff had paid for were insured under a "five Million dollar" "specialty umbrella" policy.

87.     In order to defraud Plaintiff into investing money with Defendants, Defendants misrepresented to Plaintiff, while knowing such statement to be false, that the Lloyd's Certificate purporting to represent that Defendants had $5,000,000 in insurance coverage was genuine and valid.

88.     Defendants do not have insurance with Lloyd's of London or any of their syndicate members.

89.     The Lloyd's Certificate sent to Plaintiff by Defendants is a fraudulent document that Defendants fabricated in further support of their scheme to defraud Plaintiff.

90.     Plaintiff reasonably relied upon Defendants' misrepresentations to his detriment by investing $1,420,800 with Defendants for valuable and rare Coins that he never received.

91.     No Coins were ever delivered to Plaintiff.

92.     The funds that Plaintiff earned from the alleged sale of the Coins by Defendants were never sent to Plaintiff.

93.     Plaintiff requested a full liquidation of the funds of his account.

94. Defendants represented to Plaintiff that all of Plaintiff's funds would be returned in full by December 27, 2019, but Defendants knew they did not have sufficient funds to pay Plaintiff.

95. The sale proceeds and profits earned by Plaintiff from the sale of his Coins as well as a delay of payment and a 5% penalty added to his account increased his account balance to $2,885,852.

96. Defendants represented that they sent a certified check to Plaintiff in the amount of $2,885,852 for the balance of funds in Plaintiff's account, but such check was never received by Plaintiff.

97. Defendants did not issue a new check Plaintiff, and the full amount of Plaintiff's funds was not ever sent to Plaintiff.

98. Accordingly, Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $2,885,852 plus interest.

### AS AND FOR THIRD CAUSE OF ACTION

### (Unjust Enrichment)

99. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 72 of this Verified Complaint with the same force and effect as if more fully set forth at length.

100. By the conduct alleged herein, Defendants have been and continue to be unjustly enriched at the expense of Plaintiff.

101. Accordingly, Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $2,885,852 plus interest.

**WHEREFORE**, Plaintiff Dr. David Field respectfully requests that the Court issue an Order:

(a) On the First Cause of Action, awarding Plaintiff damages in an amount to be determined at trial, but in no event less than $2,885,852, plus interest;

(b) On the Second Cause of Action, awarding Plaintiff damages in an amount to be determined at trial, but in no event less than $2,885,852 plus interest;

(c) On the Third Cause of Action, awarding Plaintiff damages in an amount to be determined at trial, but in no event less than $2,885,852, plus interest;

(d) Awarding Plaintiff attorneys' fees, costs, disbursements, and interest;

(e) Awarding to Plaintiff such other and further relief which as to this Court deems just and proper.

Dated:  New York, New York
October 15, 2021

MOUND COTTON WOLLAN & GREENGRASS LLP

By: /s/ Michael R. Koblenz
Michael R. Koblenz, Esq. (MK-0888)
Sara F. Lilling, Esq. (SL-3969)
One New York Plaza
New York, NY  10004
Tel: (212) 804-4200
Fax: (212) 344-8066
Email: mkoblenz@moundcotton.com
Email: slilling@moundcotton.com
*Attorneys for Plaintiff Dr. David S. Field*

15

## VERIFICATION

STATE OF IOWA      )
                        ) ss:
COUNTY OF Dubuque )

I, Dr. David Field, am the Plaintiff in the within action. I have read the foregoing
Amended Complaint and know the contents thereof. I hereby verify that the contents therein are
true to the best of my knowledge, information, and belief.



DR. DAVID FIELD

Subscribed and Sworn to
before me on October 14th , 2021

NOTARY PUBLIC

LESLIE A BIVER
COMMISSION NUMBER 744688
MY COMMISSION EXPIRES
JANUARY 09, 2022

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DR. DAVID S. FIELD,

                           Plaintiff,

          -v-

EXPONENTIAL WEALTH INC., et al.,

                           Defendants.

CIVIL ACTION NO.: 21 Civ. 1990 (JGK) (SLC)

**ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

Pursuant to the discovery conference held today, January 4, 2022, the Court orders as follows:

1.  By **January 14, 2022**, Defendants shall produce the bank statements of Exponential Wealth, Inc. ("EWI") that were omitted from their prior production; and

2.  Defendants' counsel shall promptly review the personal bank statements of Ryan Murnane and Krystalynne Murnane to determine whether they reflect any transactions (i) between either Mr. Murnane or Mrs. Murnane and EWI, (ii) relating to funds that Plaintiff transferred to EWI, and/or (iii) relating to the Coins.  (See ECF No. 50 ¶ 1).  By **January 21, 2022**, Defendants shall either (i) produce the bank statements reflecting such transactions or (ii) provide confirmation that no such bank statements exist.  Defendants may redact any non-responsive transactions.

Dated:       New York, New York
             January 4, 2022

                              SO ORDERED.

                              _____
                              SARAH L. CAVE
                              **United States Magistrate Judge**

# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DR. DAVID S. FIELD,

                              Plaintiff,

        -v-

EXPONENTIAL WEALTH INC., <u>et al.</u>,

                              Defendants.

CIVIL ACTION NO.: 21 Civ. 1990 (JGK) (SLC)

<u>ORDER</u>

**SARAH L. CAVE**, United States Magistrate Judge.

On January 10, 2022, attorney Michael J. DeSantis filed a proposed order to show cause, declaration, and exhibits in support of the motion of Crawford Bringslid Vander Neut LLP ("Crawford") under Local Civil Rule 1.4 to be relieved as counsel for Defendants Exponential Wealth Inc., Ryan Murnane, Ryan Michaels, Krystalynne Murnane, and Nolan Bennett ("Defendants"). (ECF No. 95 (the "Motion")). On January 14, 2022, the Honorable John G. Koeltl ordered Defendants to show cause by January 28, 2022 why Crawford should not be relieved as counsel. (ECF No. 98 (the "January 14 Order")). On January 20, 2022, Defendants' deadline to respond to the January 14 Order was extended to February 11, 2022. (ECF No. 104). To date, Defendants have not responded to the January 14 Order or otherwise opposed the Motion. Accordingly, the Motion is GRANTED, and the Court orders as follows:

1. By **March 21, 2022**, Defendants shall produce the bank statements described in the Court's Order at ECF No. 91;

2. As the Court has previously informed Defendants (ECF No. 30), by law, corporations cannot proceed <u>pro se</u>. <u>Jacobs v. Pat. Enf't Fund, Inc.</u>, 230 F.3d 565, 568 (2d Cir. 2000). Accordingly, by **March 28, 2022**, new counsel for Exponential Wealth Inc. shall file a

notice of appearance.  Exponential Wealth Inc.  is hereby advised that failure to retain counsel in accordance with this Order may lead to entry of a certificate of default and a default judgment.  See Fed. R. Civ. P. 55(a);

3.  The deadline for the completion of all discovery is extended to **May 15, 2022**;

4.  By **May 22, 2022**, the parties shall file a joint letter certifying the completion of all discovery;

5.  A telephone conference is scheduled for **Wednesday, April 27, 2022 at 2:00 pm** on the Court's conference line.  The parties are directed to call: (866) 390-1828; access code: 380-9799, at least five minutes before the scheduled time.

Mr. DeSantis shall promptly serve a copy of this Order on Defendants by email and certified mail and, by **March 15, 2022**, file proof of service on the docket.

The Clerk of Court is respectfully directed to terminate Crawford (attorneys Michael DeSantis and Allyn J. Crawford) as counsel for Defendants.

Dated:  New York, New York   SO ORDERED.
    March 14, 2022

**SARAH L. CAVE**
**United States Magistrate Judge**

2

# EXHIBIT G

# MOUND COTTON WOLLAN & GREENGRASS LLP

COUNSELLORS AT LAW
ONE NEW YORK PLAZA
NEW YORK, NY 10004-1901

NEW YORK, NY
FLORHAM PARK, NJ
GARDEN CITY, NY
SAN FRANCISCO, CA
FORT LAUDERDALE, FL
HOUSTON, TX

(212) 804-4200
FAX: (212) 344-8066
WWW.MOUNDCOTTON.COM

MICHAEL R KOBLENZ
PARTNER
212-804-4247
MKoblenz@moundcotton.com

March 31, 2022

<u>VIA ECF</u>

Honorable Sarah L. Cave
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

> Re: *Dr. David S. Field v. Exponential Wealth Inc., Ryan Murnane, Ryan Michaels, Krystalynne Murnane, Nolan Bennett, and Christopher Paul*
> Case No.: 1:21-cv-01990 (JGK) (SLC)
> <u>Our File No.: 3994.001</u>

Dear Judge Cave:

We represent Plaintiff Dr. David S. Field in the above-referenced action. We write to advise the Court that Defendants have disregarded another Court Order (Doc. 109), and to seek sanctions against Defendants, including but not limited to a default judgment against Defendants, as well as awarding Plaintiff attorneys' fees and expenses. Plaintiff, the victim of Defendants' fraudulent scheme, continues to be deprived of $2,885,852, plus interest, while Defendants continue to reap the benefits of their wrongful conduct.

On March 14, 2022, this Court issued an Order (Doc. 109) that stated in part:

1. By **March 21, 2022**, Defendants shall produce the bank statements described in the Court's Order at ECF No. 91;

2. As the Court has previously informed Defendants (ECF No. 30), by law, corporations cannot proceed pro se. Jacobs v. Pat. Enf't Fund, Inc., 230 F.3d 565, 568 (2d Cir. 2000). Accordingly, by **March 28, 2022**, new counsel for Exponential Wealth Inc. shall file a notice of appearance. <u>Exponential Wealth Inc. is hereby advised that failure to retain counsel in accordance with this Order may lead to entry of a certificate of default and a default judgment. See Fed. R. Civ. P. 55(a);</u> (Underline emphasis added.)

MOUND COTTON WOLLAN & GREENGRASS LLP

Honorable Sarah L. Cave
March 31, 2022
Page 2 of 3

**To date, Defendants have failed to produce any additional bank statements or any other outstanding discovery, and a notice of appearance has <u>not</u> been filed for Defendant Exponential Wealth, Inc.  Even if the individual Defendants are proceeding *pro se*, they have failed to produce any additional outstanding discovery.**

On January 4, 2022, this Court had issued an Order (Doc. 91), following a discovery conference also on January 4, that stated:

> Pursuant to the discovery conference held today, January 4, 2022, the Court orders as follows:
>
> 1. By **January 14, 2022**, Defendants shall produce the bank statements of Exponential Wealth, Inc. ("EWI") that were omitted from their prior production; and
>
> 2. Defendants' counsel shall promptly review the personal bank statements of Ryan Murnane and Krystalynne Murnane to determine whether they reflect any transactions (i) between either Mr. Murnane or Mrs. Murnane and EWI, (ii) relating to funds that Plaintiff transferred to EWI, and/or (iii) relating to the Coins. (See ECF No. 50 ¶ 1). By **January 21, 2022**, Defendants shall either (i) produce the bank statements reflecting such transactions or (ii) provide confirmation that no such bank statements exist. Defendants may redact any non-responsive transactions.

The January 4 discovery conference was scheduled following our request for a pre-motion discovery conference to compel Defendants to produce outstanding discovery after we made several good faith attempts to obtain relevant documents and information from Defendants without judicial intervention, but Defendants failed to produce the requested document that should have been produced in the normal course of discovery.

**In addition, Plaintiff served Requests to Admit on Defendants on January 10, 2022. These remain unanswered and should all be deemed admitted pursuant to Fed. R. Civ. P. 36(a)(3), including admissions of Defendants' wrongful conduct.**

Defendants' repeated and blatant disregard of this Court's Orders and the discovery process is sanctionable.  Defendants have been granted extension upon extension since this action commenced more than a year ago; however, once these extensions are granted, Defendants simply ignore the new deadlines and further delay this action and Plaintiff's recovery of his funds.  Unless consequences are imposed, Defendants will continue to disregard the discovery process and continue to be rewarded for their unlawful conduct.

Accordingly, Plaintiff respectfully requests that sanctions under Fed. R. Civ. P. 37 be imposed on Defendants, including but not limited to Plaintiff's attorney fees and expenses, and

MOUND COTTON WOLLAN & GREENGRASS LLP

Honorable Sarah L. Cave
March 31, 2022
Page 3 of 3

other appropriate sanctions listed in Fed. R. Civ. P. 37(b)(2)(A)(i), (ii), (iii), (vi), and/or (vii) for failure of Defendants to obey this Court's discovery Orders any other relief that this Court deems just and proper. Under Fed. R. Civ. P. 37(b)(2)(A)(vi), the Court may render a default judgment against a disobedient party. Given Defendants' repeated disobedience in providing discovery and following Court orders, a default judgment against Defendants is warranted. Plaintiff's motions for a default judgment against Defendants Nolan Bennett and Christopher Paul are pending.

Respectfully submitted,

MOUND COTTON WOLLAN &
GREENGRASS LLP
By: /s/ Michael R. Koblenz
Michael R. Koblenz, Esq. (MK-0888)
Sara F. Lilling, Esq. (SL-3969)
One New York Plaza
New York, NY 10004
Tel: (212) 804-4200
Fax: (212) 344-8066
Email: mkoblenz@moundcotton.com
Email: slilling@moundcotton.com

cc:    Dr. David S. Field (via email)

# EXHIBIT H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DR. DAVID S. FIELD,

                              Plaintiff,

        -v-                                              CIVIL ACTION NO.: 21 Civ. 1990 (JGK) (SLC)

EXPONENTIAL WEALTH INC., et al.,                                    **ORDER**

                              Defendants.

**SARAH L. CAVE**, United States Magistrate Judge.

On January 4, 2022, the Court directed Defendants to produce certain bank statements

(the "Bank Statements") by January 21, 2022. (ECF No. 91 (the "Jan. 4 Order")). On January 10,

2022, Defendants' counsel moved to withdraw their representation (ECF No. 95 (the "Motion"))

and, on January 18, 2022, Defendants advised the Court of their intent to retain new counsel.

(ECF No. 100). On January 19, 2022, the Court extended Defendants' deadline to comply with

the Jan. 4 Order, and directed Defendants to produce the Bank Statements "within two weeks of

new counsel's notice of appearance." (ECF No. 101 at 2).

On March 14, 2022, the Court granted the Motion and directed (i) new counsel for

Exponential Wealth Inc. to file a notice of appearance by March 28, 2022, and (ii) the individual

Defendants to produce the Bank Statements by March 21, 2022. (ECF No. 109 (the "Mar. 14

Order")). In the Mar. 14, Order, the Court warned Exponential Wealth Inc. for the second time

(see ECF No. 30) that, by law, corporations cannot proceed pro se (see Jacobs v. Pat. Enf't Fund,

Inc., 230 F.3d 565, 568 (2d Cir. 2000)), and that failure to retain counsel may lead to entry of a

certificate of default and a default judgment.  (Id. at 1–2).  To date, no Defendant has retained new counsel or otherwise responded to the Jan. 4 or Mar. 14 Orders.

On March 31, 2022, Plaintiff filed a letter advising the Court that Defendants have failed to produce the Bank Statements and have otherwise failed to engage in the discovery process, and requesting sanctions under Fed. R. Civ. P. 37.  (ECF No. 110).

Accordingly, the Court orders as follows:

1.  By **April 8, 2022**, Plaintiff shall request a certificate of default as to Exponential Wealth Inc. from the Clerk of Court.

2.  By **April 22, 2022**, Plaintiff shall file a Motion for Default Judgment in accordance with the Individual Practices of the Honorable John G. Koeltl, Rule 55 of the Federal Rules of Civil Procedure, and S.D.N.Y. Local Rule 55.

3.  Plaintiff's request for sanctions under Rule 37 is DENIED WITHOUT PREJUDICE to a renewed request supported by a motion on notice (the "Sanctions Motion"), pursuant to the following briefing schedule:

    a.  By **May 2, 2022**, Plaintiff serve and file the Sanctions Motion;

    b.  By **June 1, 2022**, Defendants shall serve and file their opposition to the Sanctions Motion; and

    c.  By **June 15, 2022**, Plaintiff shall file his reply.

Defendants are warned that their failure to oppose the Sanctions Motion may result in the award of the requested sanctions and the entry of a certificate of default and a default judgment.  See Fed. R. Civ. P. 37(b)–(d) (providing, inter alia, that a party's failure to obey a discovery order may result in "a default judgment against the disobedient party"); Guggenheim

Cap., LLC v. Birnbaum, 722 F.3d 444, 454 (2d Cir. 2013) (finding that the district court "did not abuse its discretion by entering a default judgment against [the defendant] as a discovery sanction under Rule 37" for the defendant's willful disobedience of discovery orders); see also Fed R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.").

Plaintiff shall promptly serve a copy of this order on Defendants and file proof of service on the docket.

All other terms of the Mar. 14 Order remain in effect.

Dated:       New York, New York
             April 1, 2022

                                          SO ORDERED.


                                          _____
                                          SARAH L. CAVE
                                          **United States Magistrate Judge**

3

# EXHIBIT I

USDC ...
DOCU...
ELECTRONICALLY FILED
DOC #:
DATE ... D:  4/6/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X

DR. DAVID S. FIELD

                Plaintiff,

    vs.

EXPONENTIAL WEALTH INC.,
RYAN MURNANE, RYAN MICHAELS,
KRYSTALYNNE MURNANE, NOLAN
BENNETT, AND CHRISTOPHER PAUL

                Defendants.
--------------------------------------------------------------- X

Index No. 1:21-cv-01990 (JGK) (SLC)

**CLERK'S CERTIFICATE
OF DEFAULT AGAINST
DEFENDANT EXPONENTIAL
WEALTH INC.**

I, RUBY J. KRAJICK, Clerk of the United States District Court for the Southern District
of New York, do hereby certify that this action was commenced on March 8, 2021 with the filing
of a Summons and Verified Complaint (Doc. 1). A Summons and copy of the Verified Complaint
were served on Defendant Exponential Wealth Inc. ("EWI") on March 30, 2021. Nancy
Dougherty, Clerk Authorized to Accept in the office of the Secretary of State of New York
accepted service on behalf of EWI. Proof of service was filed on March 31, 2021 (Doc. 18).

On July 29, 2021, the law firm of Crawford Bringslid Vander Neut, LLP filed a Notice of
Appearance on behalf of all defendants, including Defendant EWI (Doc. 32). Thereafter, on
October 15, 2021, Plaintiff filed an Amended Verified Complaint (Doc. 50). A copy of the
Amended Verified Complaint was served on all of the initial defendants, including EWI, via ECF
on their counsel of record, Crawford Bringslid Vander Neut, LLP.

On October 25, 2021, EWI filed an Answer to the Amended Verified Complaint (Doc. 55).

On January 4, 2022, the Court directed Defendants to produce certain bank statements (the
"Bank Statements") by January 21, 2022. (Doc. 91) (the "Jan. 4 Order").

On January 10, 2022, Defendants' counsel moved to withdraw their representation (Doc. No. 95) (the "Withdrawal Motion"), and on January 18, 2022, Defendants advised the Court of their intent to retain new counsel (Doc. 100).

On January 19, 2022, the Court extended Defendants' deadline to comply with the Jan. 4 Order, and directed Defendants to produce the Bank Statements "within two weeks of new counsel's notice of appearance." (Doc. 101 at 2)

On March 14, 2022, the Court granted the Withdrawal Motion and directed (i) new counsel for Exponential Wealth Inc. to file a notice of appearance by March 28, 2022, and (ii) the individual Defendants to produce the Bank Statements by March 21, 2022. (Doc. 109) (the "Mar. 14 Order") In the Mar. 14 Order, the Court advised Exponential Wealth Inc. for the second time (see Doc. 30) that, by law, corporations cannot proceed pro se (see Jacobs v. Pat. Enf't Fund, Inc., 230 F.3d 565, 568 (2d Cir. 2000)), and that failure to retain counsel may lead to entry of a certificate of default and a default judgment. (Id. at 1–2).

Defendants failed to retain new counsel or otherwise responded to the Jan. 4 or Mar. 14 Orders.

On March 31, 2022, Plaintiff filed a letter advising the Court that Defendants failed to produce the Bank Statements and have otherwise failed to engage in the discovery process, and requesting sanctions under Fed. R. Civ. P. 37. (Doc. 110)

On April 1, 2022, the Court issued an Order (Doc. 111) stating, in part:

1. By **April 8, 2022**, Plaintiff shall request a certificate of default as to Exponential Wealth Inc. from the Clerk of Court.

2. By **April 22, 2022**, Plaintiff shall file a Motion for Default Judgment in accordance with the Individual Practices of the Honorable John G. Koeltl, Rule 55 of the Federal Rules of Civil Procedure, and S.D.N.Y. Local Rule 55.

I further certify that the docket entries indicate that Defendant EWI is in default of the

March 14 Order.

Dated:     New York, New York
           April 4, 2022

                                            RUBY J. KRAJICK
                                            Clerk of Court

                              By: _X manyo_ Deputy Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

DR. DAVID S. FIELD

                Index No. 1:21-cv-01990 (JGK) (SLC)

                Plaintiff,

      vs.                        **PROPOSED DEFAULT**
                                     **JUDGMENT AGAINST**
EXPONENTIAL WEALTH INC.,        **DEFENDANT EXPONENTIAL**
RYAN MURNANE, RYAN MICHAELS,   **WEALTH INC.**
KRYSTALYNNE MURNANE, NOLAN
BENNETT, AND CHRISTOPHER PAUL

                Defendants.
------------------------------------------------------------- X

       This matter having come before this Court on Plaintiff Dr. David S. Field's application

for entry of a default judgment against Defendant Exponential Wealth Inc. ("Defendant EWI"),

under Rule 55(b)(2) of the Federal Rules of Civil Procedure; and after having considered

Plaintiff's submissions, the Court finds as follows:

       (1)     A Certificate of Default was issued by the Clerk of the Court against Defendant

EWI on April 6, 2022; and

       (2)     Defendant EWI is not a minor, an incompetent person, or a member of the

military service of the United States; and

       (3)     Defendant EWI is in default of this Court's March 14, 2022 Order (Doc. 109) by

failing to retain new counsel by March 28, 2022; and

       (4)     Defendant EWI has failed to respond to the discovery directives in this Court's

January 4, 2022 Order (Doc. 91) and this Court's March 14 Order (Doc. 109); and

       (5)     This Court's April 1, 2022 Order directed Plaintiff to file a Motion for Default

Judgment against Defendant EWI by April 22, 2022, which Plaintiff timely filed.

THEREFORE, IT IS ADJUDGED that Plaintiff shall have judgment over and against Defendant EWI in the amount of $2,885,852 plus interest and that Plaintiff is awarded attorneys' fees, costs, and disbursements in the amount of _____, and that Plaintiff shall have execution therefor.

IT IS SO ORDERED this ____ day of _____, 2022

_____
JUDGE JOHN G. KOELTL

2