UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAVID S. FIELD, ET AL.,

               Plaintiffs,

       - against -

EXPONENTIAL WEALTH INC., ET AL.,

              Defendants.

---

21-cv-1990 (JGK)

**ORDER**

JOHN G. KOELTL, District Judge:

    The parties are directed to appear for another final pre-trial conference on **October 23, 2025, at 4:00 p.m.** in Courtroom 14A, 500 Pearl Street, New York, New York 10007.

    Trial is scheduled for **October 28, 2025, at 9:00 a.m.** in Courtroom 14A, 500 Pearl Street, New York, New York 10007. A manual for pro se litigants representing themselves at trial, issued by the Pro Se Office, is attached to this Order.

    The parties can contact the Court Clerk, Mr. Don Fletcher, at (212) 805-0107 between 9:00 a.m. and 5:00 p.m. with questions about using technology in the courtroom.

    The parties may consider contacting the City Bar Justice Center's Federal Pro Se Legal Assistance Project in the Southern District of New York, which is a free legal clinic staffed by attorneys and paralegals to assist those who are representing themselves in civil lawsuits in this Court. The clinic is run by a private organization; it is not part of, or run by, the Court.

An informational flyer regarding the clinic is attached to this Order. The parties should request assistance in locating attorneys who might represent them in the trial of this case.

The Clerk is respectfully requested to e-mail a copy of this Order and the attachments to the pro se parties at dfield@westsideorthopaedics.com, rmurnane1980@gmail.com, and kmurnane87@gmail.com, and to note transmittal on the docket.

**SO ORDERED.**

Dated:      New York, New York
            August 5, 2025

                                          John G. Koeltl
                                 United States District Judge

2

# FEDERAL PRO SE LEGAL ASSISTANCE PROJECT
## in the Southern District of New York (SDNY)



## ABOUT THE PROJECT

The Federal Pro Se Legal Assistance Project provides limited assistance to self-represented litigants (plaintiffs and defendants) with cases involving civil legal matters in the United States District Court for the Southern District of New York (SDNY).

This project assists plaintiffs and defendants on a variety of federal legal issues, including, among others, civil rights, employment discrimination, and disability discrimination. The team also assists incarcerated individuals with civil (non-criminal) claims.

## HOW WE HELP

Fed Pro provides limited assistance through full-time attorneys, legal support team members, pro bono (volunteer) attorneys, law school/college interns, and a social work team. **While we cannot provide full representation,** Fed Pro can assist litigants by providing limited-scope services such as:

 **Counseling** about potential federal claims prior to filing suit

 Consulting on **discovery** matters

 **Interpreting and explaining** federal law and procedure

 Assisting with the **settlement** process (including mediation)

 **Reviewing drafted pleadings** and correspondence with the Court

### HOW TO ACCESS OUR SERVICES



For assistance, please complete the online form located on our website, https://www.citybarjusticecenter.org/projects/federal-pro-se-legal-assistance-project/.

If you are not able to complete the form, or you have questions about the form, please call (212) 382-4794. Please leave a message and wait for us to call you back.

# REPRESENTING YOURSELF AT TRIAL

## A MANUAL FOR *PRO SE* LITIGANTS

## APPEARING BEFORE THE

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK



**Daniel Patrick Moynihan United States Courthouse**
**500 Pearl Street**
**New York, New York 10007**

**Charles L. Brieant, Jr. Federal Building and Courthouse**
**300 Quarropas Street**
**White Plains, New York 10601**

The Southern District of New York acknowledges the Committee of the Federal Courts of the New York County Lawyers' Association for this publication. The lawyers of that Committee, through their work on this Manual, have demonstrated an honorable commitment to *pro bono* service and equal access to justice that reflects the tradition of the bar. The Court provides this Manual to every *pro se* litigant whose case is scheduled for trial. It is an essential document to help non-lawyers effectively and properly present their claims to a judge or jury.

July 2011.

## TABLE OF CONTENTS

**INTRODUCTION** .......................................................................................................... 1
    Proceeding *Pro Se* ................................................................................................. 2
    The Decision to Proceed *Pro Se* ....................................................................... 3
    Rules of Procedure ............................................................................................. 3
    Legal Research ................................................................................................... 4
    Trial Ready Checklist ......................................................................................... 6

**THE COURTROOM** ..................................................................................................... 7
    Courtroom Conduct ........................................................................................... 7
    Layout of the Courtroom ................................................................................... 8

**TRIAL PREPARATION** ............................................................................................. 10
    Theory of the Case ........................................................................................... 10
    Trial Notebook ................................................................................................. 11
    Role of Judge and Jury ..................................................................................... 12
    Consent to Trial by a Magistrate Judge .......................................................... 13
    Motions in Limine ............................................................................................ 14
    Pretrial Order and Filings ................................................................................. 15
    Final Pretrial Conference ................................................................................. 17

**COMMENCEMENT OF TRIAL** ............................................................................... 19
    Setting a Trial Date .......................................................................................... 19
    Final Status Conference ................................................................................... 19

**JURY SELECTION** .................................................................................................... 21
    Picking a Jury ................................................................................................... 21
    The Jury Pool ................................................................................................... 22
    Voir Dire .......................................................................................................... 23
    The Judge's Statements to the Jury .................................................................. 26

**OPENING STATEMENT** ........................................................................................... 27
    Making an Opening Statement .......................................................................... 27
    Sample Opening Statements .............................................................................. 29
    Waiver of Opening Statements ......................................................................... 31
    Objections to Opening Statements .................................................................... 31

**PRESENTATION OF EVIDENCE** ........................................................................... 33
    Types of Evidence ............................................................................................ 33
    Plaintiff Puts on Evidence First ....................................................................... 33
    Plaintiff Has the Obligation to Prove Its Claim .............................................. 34
    Burden of Proof ................................................................................................ 35
    Admission of Evidence .................................................................................... 35
    Rules of Evidence ............................................................................................ 36
    Common Evidentiary Problems ....................................................................... 40

**WITNESSES** ............................................................................................................... 45
    Role of Witnesses at Trial ................................................................................ 45
    Selecting Witnesses ......................................................................................... 45
    Order of Witnesses ........................................................................................... 46
    Preparation of Witnesses .................................................................................. 47

Non-Party Witnesses...................................................................................49
Non-Party Prisoner-Witnesses.....................................................................51
Deceased, Unavailable or Missing Witnesses ..............................................52
Excluding Witnesses from the Courtroom....................................................53
Questioning Witnesses:  Direct Examination...............................................53
Questioning Witnesses:  Cross Examination ................................................57
Questioning Witnesses:  Redirect Examination............................................62
Questioning Witnesses:  Expert Examination...............................................63

**EXHIBITS** ....................................................................................................**64**
Selecting and Using Exhibits ......................................................................64
Admitting Exhibits into Evidence ................................................................65
Demonstrative Exhibits...............................................................................69
Using an Exhibit to Refresh a Witness's Recollection ..................................70

**OBJECTIONS**................................................................................................**72**
Making Objections to Evidence...................................................................72
Deciding Whether to Make an Objection .....................................................73
The Judge's Ruling on Objections................................................................74
Common Objections ...................................................................................75
Objections to the Form of a Question..........................................................75
Objections to Substantive Admissibility......................................................78
Offer of Proof.............................................................................................80

**DAMAGES** ...................................................................................................**82**
Types of Damages.......................................................................................82
Proving Damages ........................................................................................83
Relief Beyond Damages: Injunctions ..........................................................84

**RESTING PLAINTIFF'S CASE** ...............................................................**86**

**DEFENDANT'S CASE** .................................................................................**87**
Defending a Claim ......................................................................................87
Burden of Proof..........................................................................................88

**REBUTTAL** ..................................................................................................**89**

**TRIAL MOTIONS**........................................................................................**90**
Judgment as a Matter of Law ......................................................................90
Judgment on Partial Findings......................................................................91

**CLOSING ARGUMENT** .............................................................................**92**
Making an Effective Closing Argument .......................................................92
Objections to Closing Arguments...............................................................94

**SETTLEMENT**.............................................................................................**95**
A Case Can Settle at Any Time ...................................................................95
Settlement Negotiations..............................................................................96
Written Agreement......................................................................................97
Offer of Judgment ......................................................................................98
Settlement After the Jury Is Impaneled .......................................................99

**SENDING A CASE TO THE JURY** ................................................................................ **100**
    Charging Conference ................................................................................................ 100
    Jury Instructions ..................................................................................................... 100
    Verdict Form .......................................................................................................... 101
    Jury Deliberations .................................................................................................. 101
    Jury Verdict ............................................................................................................ 102
    Polling the Jury ...................................................................................................... 102
    Findings of Fact and Conclusions of Law ............................................................. 103

**JUDGMENT** .............................................................................................................. **104**
    Entry of the Judgment ............................................................................................ 104
    Enforcing the Judgment ......................................................................................... 104
    Stay of the Judgment .............................................................................................. 105
    Registration of the Judgment ................................................................................. 106
    Satisfaction of the Judgment .................................................................................. 107

**COSTS** ...................................................................................................................... **108**
    Recovering the Costs of a Trial ............................................................................. 108
    Recovering Attorneys' Fees ................................................................................... 108

**POST-TRIAL MOTIONS** ........................................................................................... **109**
    Renewed Motion for Judgment as a Matter of Law ............................................... 109
    Motion to Amend Findings of Fact and Conclusions of Law ................................. 110
    Motion for a New Trial .......................................................................................... 110
    Motion for Relief from the Judgment ..................................................................... 112
    Motion to Correct Clerical Mistakes in the Judgment ........................................... 113

**APPEALS** .................................................................................................................. **114**
    The Right to Appeal ............................................................................................... 114
    Notice of Appeal .................................................................................................... 114
    Appeal Filing Fees ................................................................................................. 116
    Trial Transcripts .................................................................................................... 117
    Proceedings on Appeal Before the Second Circuit ................................................ 117

**RESOURCES** ............................................................................................................. **119**

## INTRODUCTION

Welcome to the United States District Court for the Southern District of New York. The Southern District of New York is the largest and oldest federal court in the nation. The Southern District of New York sits in downtown Manhattan and in White Plains, New York. The courthouses' addresses are:

United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

United States District Court
Southern District of New York
Charles L. Brieant, Jr. Federal Building and Courthouse
300 Quarropas Street
White Plains, New York 10601-4150
www.nysd.uscourts.gov

This Manual was prepared by the Southern District of New York, with the assistance of the Committee of the Federal Courts of the New York County Lawyers' Association, as a guide for persons who are representing themselves either as plaintiffs or as defendants at trial in the Southern District of New York. It is intended as an informative and practical resource and guide to understanding basic trial rules and procedures and to provide persons representing themselves with an overview of trial practice in the Court.

This Manual describes court procedures and rules but does not take the place of the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Civil Rules of the United States District Court for the Southern District of New York, the Individual Practices of the Judges of the Court, or any other statutes or bodies of law. The information contained in this Manual applies only to civil cases in the District Court and does not pertain to bankruptcy proceedings, *habeas corpus* petitions, or criminal matters.

The statements and materials in this Manual are for informational and assistive purposes only and do not constitute legal advice.  This Manual is not intended to be a substitute for the advice and assistance of a licensed attorney.  In addition, you should keep in mind that the law is constantly changing, and the information contained in this Manual may not be complete or up-to-date.  The laws and rules to which this Manual refers may have changed since the Manual's publication, and there may be new laws or rules applicable to your case. It is your responsibility to verify the accuracy of any information on which you intend to rely.

## Proceeding *Pro Se*

Individuals in court cases are generally referred to as *plaintiffs* or *defendants*.  The plaintiff is the person bringing the lawsuit who alleges that a defendant violated a right protected by law.  The defendant is the person who allegedly violated that right.  The majority of individuals appearing in court, also known as *litigants* or *parties*, are represented by licensed attorneys who practice law, have appeared in court, and are familiar with court rules and procedures.  Litigants or parties representing themselves in court without the assistance of a licensed attorney are known as *pro se litigants*.  The word *"pro se"* is Latin for "in one's own behalf."

Under United States law, you are permitted to try your case in federal court *pro se*. 28 U.S.C. § 1654. (U.S.C. refers to the United States Code, which contains all federal statutes.) There are, however, limitations on the right to self-representation.  A person planning to initiate or defend an action on behalf of a corporation or partnership may not appear *pro se* and must be represented by an attorney, even if there are only one or two shareholders in the corporation.  Similarly, a *pro se* litigant may not bring a class action (that is, an action on behalf of others).  Furthermore, a non-attorney parent generally may not appear *pro se* on behalf of his or her child, unless it is to appeal the denial of Social Security benefits to such child.

**The Decision to Proceed *Pro Se***

If you are considering representing yourself at trial, you should evaluate carefully the risks associated with proceeding *pro se* and educate yourself regarding the potential consequences. Litigation is extremely time consuming and complex, and the legal process can be difficult to understand. Although the *Pro Se* Office and other court personnel may explain basic procedures and provide standard forms, they are prohibited from giving legal advice. They cannot advise you on whether to bring a certain action, what remedies you should seek, or how you should conduct a trial. Furthermore, because it is likely that your opponent will be represented by an attorney, you could be at a serious disadvantage without an attorney. You are subject to the same rules of law and evidence as individuals represented by an attorney. The Court cannot make exceptions for *pro se* parties.

**Rules of Procedure**

If you are going to try your own case in federal court, you must have a basic understanding of the procedural rules governing your trial. There are four bodies of rules and procedures controlling your trial: (1) the Federal Rules of Civil Procedure (cited as "Fed. R. Civ. P."); (2) the Federal Rules of Evidence (cited as "Fed. R. Evid."); (3) the Local Civil Rules of the United States District Court for the Southern District of New York (cited as the "Local Rules"); and (4) the Individual Practices of the Judge assigned to your case.

The Local Rules and the Judges' Individual Practices are available on the Court's website (www.nysd.uscourts.gov). The *Pro Se* Office cannot access the website for you or print or download information from it. The Federal Rules of Civil Procedure and the Federal Rules of Evidence can be accessed at www.uscourts.gov. In addition, the Local Rules, the Federal Rules of Civil Procedure, and Federal Rules of Evidence may be found in most public law libraries. The Judges' Individual Practices also are available free of charge from the Court's cashier's office.

## Legal Research

It is important to remember that laws, rules and procedures change over time.  While this manual is designed to assist you with your *pro se* trial, it does not address in any way the substantive law that applies in your case.  This is an area of law that attorneys know, and, if you represent yourself, you must likewise know.  Therefore, you must do legal research on your own concerning your case.

Your first stop should be a law library that is open to the public.  The law library will have a number of different resources you can use to research the law of your case, as well as trial procedure.  Some helpful resources are listed at the conclusion of this Manual.  See pp. 120-21.  At the law library, you can access legal information based on the topic of law, the statutes, and the case law.  Below is a list of courthouse-based law libraries open to the public.

Manhattan

*NY County Public Access Law Library*
80 Centre Street, Room 468
New York, NY 10013
(646) 386-3715

Brooklyn

*Kings County Supreme Court - Law Library*
360 Adams Street, Room 349
Brooklyn, NY 11201
(347) 296-1144

Staten Island

*Richmond County Supreme Court - Law Library*
Supreme Court Bldg.
18 Richmond Terrace
Staten Island, NY 10301
(718) 390-5291

Bronx

*Bronx Supreme Court - Law Library*
851 Grand Concourse, Room 817
Bronx, NY 10451
(718) 618-3710

Queens

*Queens Supreme Court Law Library*
Queens County General Courthouse
88-11 Sutphin Avenue
Jamaica, NY 11435
(718) 298-1206

Westchester

*Westchester County Supreme Court - Law Library*
111 Martin Luther King Blvd.
White Plains, NY 10601
(914) 824-5660

Dutchess County

*Supreme Court Law Library*
50 Market Street
Poughkeepsie, NY 12601
(845) 486-2215

Putnam County

*Supreme Court Law Library*
20 County Center
Carmel, NY 10512
(845) 208-7804

Sullivan County

*Hamilton O'Dell Library*
New York State Supreme Court Library
Sullivan County Courthouse
Monticello, NY 12701
(845) 794-1547

Suffolk County

*Suffolk County Supreme Court Law Library*
Cohalan Court Complex
400 Carleton Avenue
Central Islip, NY 11702
(631) 853-7530

Orange County

*Supreme Court Law Library*
Orange County Government Center
255-275 Main Street
Goshen, NY 10924
(845) 291-3138

Rockland County

*Supreme Court Law Library*
1 South Main Street, Suite 235
New City, NY 10956
(845) 638-5396

Nassau County

*Supreme Court Law Library*
100 Supreme Court Drive
Mineola, NY 11501
(516) 571-3883

Suffolk County

*Supreme Court Law Library*
Criminal Courts Building
220 Center Street
Riverhead, NY 11901-3312
(631) 852-2419

Depending on the particulars of your case, your local public library may also have information that could be helpful to you. You may also use the Internet to conduct legal research. While there are many helpful legal websites on the Internet, be aware that not all websites provide accurate information. Therefore, you should be cautious when reviewing a website's information. You may access free on-line resources through the *Pro Se* pages of the Court's website. Once there, you can link to many government websites that provide free access to statutes, rules and case law. If you do not have a computer, you may access these Internet resources on computers at your local public library.

5

**Trial Ready Checklist**

        If you decide to proceed *pro se*, after gaining an understanding of the relevant law, being prepared is the most important aspect of trying your case. Below are some matters that are discussed in greater detail in this Manual to consider before trial.

☐    Do you have a clear, logical and easy-to-explain theory of the case?  <u>See</u> pp. 10-11.

☐    Have you prepared a trial notebook or organized your trial materials in some other manner?  <u>See</u> pp. 11-12.

☐    Have you made a list of what you have to prove at trial in order to sustain your burden of proof on each of your claims or defenses?  <u>See</u> pp. 34-35.

☐    Have you identified all of your witnesses and potential exhibits in the pretrial order?  <u>See</u> pp. 15-17.

☐    Have you anticipated possible objections to evidence that you plan to use at trial and your responses to those objections?  <u>See</u> pp. 35-36.

☐    Have you thought about what evidence your opponent is likely to use at trial and considered possible objections you can make to that evidence?  <u>See</u> pp. 72-74.

☐    Have you considered whether any disputes concerning evidence can, or should, be resolved through a pretrial motion in limine?  <u>See</u> pp. 14-15.

☐    Have you prepared questions for each of your witnesses?  <u>See</u> pp. 53-63.

☐    To the extent you can, have you met with and prepared your witnesses?  <u>See</u> pp. 47-49.

☐    Have you prepared questions for each of your opponent's witnesses?  <u>See</u> pp. 57-61.

☐    Have you prepared your opening statement?  <u>See</u> pp. 27-31.

☐    Have you prepared your closing argument?  <u>See</u> pp. 92-94.

☐    Have you made arrangements to ensure that all of the witnesses you need at trial will attend the trial?  <u>See</u> pp. 49-51.

☐    Have you prepared your trial exhibits?  <u>See</u> pp. 64-71.

# THE COURTROOM

## Courtroom Conduct

Always maintain the proper degree of respect and courtesy when in the courtroom.  Unless the Judge directs you otherwise, observe the following formalities:

- Be prompt.  Notify the Judge's chambers or the courtroom deputy if you will be late for or cannot attend a hearing, conference or trial date.

- Dress nicely and conservatively, preferably in business attire, as if you were going on a job interview.

- Stand at the beginning and end of any court session and each time the Judge or jury enters or leaves the courtroom.  Remain standing until the Judge sits down or has left the courtroom.

- Stand when addressing or being addressed by the Judge.  Always answer the Judge's questions.  Never interrupt the Judge.

- When speaking to the Judge, it is customary to refer to him or her as "Your Honor" or "Judge."

- Be courteous to everyone at all times, and address all persons (other than the Judge), including witnesses and your opponent, by their last names.

- Address your remarks (other than your opening statement and closing argument) to the Judge, not your opponent or the jury.

- Stand at the lectern while making your opening statement and closing argument, as well as when you are examining witnesses.

- The courtroom reporter makes a written record of the trial (or the proceeding is recorded on an audiotape).  Speak slowly, loudly and clearly.  If you do not, you may be asked to repeat something or slow down.

- Ask the Judge's permission before you approach the bench.

- Do not eat or drink (other than a glass of water at your table) in the courtroom.

- Do not make any gestures, facial expressions or audible comments as a sign of approval or disapproval to the testimony of a witness or to a statement or ruling by the Judge.

- Do not speak to the jurors in or out of the courtroom.

**Layout of the Courtroom**

Although each courtroom is slightly different, it is generally arranged as follows:



- In the front of the courtroom is the *bench*, a large, elevated desk area where the Judge sits.

- In front of the bench and to one side is a chair where witnesses sit when they testify. This is called the *witness box*.

- In front of the bench, there will usually be a person seated in front of a small machine. This is the *court reporter*, who uses the machine to create a record of everything that is said at trial. Occasionally, a court will use a tape recorder instead of a court reporter to record the trial.

- There will often be another person seated in front of the bench. This is the *courtroom deputy*, who assists the Judge.

- In the center of the courtroom, there will be several long tables with a number of chairs around them.  This is where the lawyers and the parties sit during trial.  The plaintiff typically sits at the table closest to the jury box.

- In the center of the courtroom in front of the bench, or adjacent to the counsel tables, is a lectern with a microphone.  This is where you stand when you speak to the Judge, conduct witness examinations, or speak to the jury during your opening statement or closing argument.

- There is a boxed-in area on one side of the courtroom called the *jury box* where the jurors sit during a trial.

- In the back of the courtroom, behind a low wall, there are several rows of benches where anyone can sit and watch the trial.

# TRIAL PREPARATION

## Theory of the Case

The *theory of the case* is your position in the case and how you intend to address the evidence that will be presented at trial.  Simply put, it is the story you want to tell the jury and how you intend to tell it.  There is no single correct way to present a case.  The goal, however, is the same: be clear, logical, and consistent, and tie all of the evidence together so that at the conclusion of the trial the jury will find your version of "what really happened" the most persuasive and believable.

Determine your theory of the case as early as possible and in advance of trial. Doing so will help you make decisions concerning the order of your witnesses, the questions to ask (and not to ask), what evidence to use, and how to respond to your opponent's evidence. Remember that often many of the facts at a trial will be agreed to by the parties (known as *undisputed facts*) and that a case will turn on one or more important *disputed facts*.

Developing your theory of the case typically involves several steps:

- Review the elements of each claim you have brought (or defense you have asserted, if you are the defendant), as well as what you have to prove (known as your *burden of proof*).

- Determine the witnesses or documents you intend to use to prove the claim or parts of it, referred to as "elements of a claim" (or to prove a defense); whether there is a basis for your opponent to object to that evidence; and, if so, how you intend to respond to any objection.

- Understand what facts will be disputed and what evidence your opponent will likely present to put those facts in dispute.  Then, determine whether you have grounds to object to that evidence, and if not, how you otherwise will attack or challenge the evidence.

Your goal is to integrate the undisputed facts in the case with your version of the disputed facts to create a clear, logical story that the jury will find more persuasive than your opponent's version.  Keep your theory of the case in mind at all times during the trial, from your

10

opening statement, through your direct examinations and cross examinations of witnesses, to your closing argument, and try to be consistent in your story throughout the trial.

> **Practice Tip:** It is critical to identify the key disputed facts in your case, present as much evidence as you can to support your version of those facts and challenge your opponent's version of those disputed facts.

**Trial Notebook**

All of the important information and documents you might need at trial should be organized in a logical and useful way. While there are different ways to organize your trial materials, many trial lawyers use what is called a trial notebook. A trial notebook is typically a three-ring binder with tabbed sections for each part of a trial. Once placed in a notebook, materials cannot be lost and can be quickly reorganized and located when needed. Sometimes, instead of a binder, trial materials are organized in separately labeled file folders.

Regardless of whether you use a binder or file folders, your materials might be organized as follows:

- **Trial rules.** Relevant rules or statutes, including the Federal Rules of Civil Procedure, the Local Rules, the Judge's Individual Practices and the Federal Rules of Evidence.

- **Pleadings and discovery.** The Complaint and Answer, as well as any written discovery, including interrogatories and answers to interrogatories, requests to admit and responses and requests to produce documents and responses.

- **Pretrial order and motions.** The final pretrial order, motions in limine and any other relevant pretrial motions or orders.

- **Legal research.** Any pretrial memoranda of law, as well as the principal cases and other authority on which you intend to rely during trial.

- **Facts.** Factual materials, including reports, summaries of deposition transcripts, witness statements, photographs, a summary and checklist of the elements of each claim (or defense) in the case and the evidence you intend to introduce to prove each element, and a chronology of the relevant facts of the case. Also, a list of important telephone numbers, such as the Judge's

11

chambers and courtroom, the *Pro Se* Office, your opponent or opponent's counsel and your witnesses.

- **<u>Jury materials</u>.** Your proposed *voir dire* questions and any other materials concerning jury selection.  Also, proposed jury instructions and verdict form.

- **<u>Opening statement</u>.**  Your opening statement.

- **<u>Direct examinations</u>.**  Each witness you intend to call in your case should have a separate section, containing an outline of your examination; copies of exhibits you intend to show the witness; copies of the witness's prior deposition testimony, affidavits, or statements; and copies of any subpoena requiring the witness's attendance at trial (as well as proof of service).  You might also have note paper on which to take notes during that witness's direct testimony and cross examination.

- **<u>Cross examinations</u>**.  Each witness your opponent intends to call should likewise have a separate section, containing an outline of possible areas and questions for cross examination; copies of exhibits you might show the witness; and copies of the witness's prior deposition testimony, affidavits or statements.  You might also have note paper on which to take notes during that witness's direct testimony and your cross examination.

- **<u>Closing argument</u>.**  Your closing argument.

**<u>Practice Tip</u>:**  Whatever system you decide to rely on for arranging your materials at trial, it should allow you to locate necessary information immediately and present your case in a crisp, well-organized manner.  This will make you a more effective advocate for your case and will be appreciated by the Judge and jury.

**<u>Practice Tip</u>:**  You should organize copies of all the exhibits you might introduce during trial in separate file folders, making sure that you have enough copies (based on the Judge's Individual Practices).  Make a list of all the exhibits you intend to introduce, as well as those your opponent intends to introduce, and keep track of when they are admitted into evidence by the Court.

## <u>Role of Judge and Jury</u>

There are two types of trials: *jury trials* and *bench trials*.

If the parties chose a jury trial, a jury reviews the evidence presented by the parties, determines which evidence to believe and what actually happened, and generally decides

who wins the lawsuit.  A jury trial occurs when the lawsuit is a type of case that the law allows to be decided by a jury and at least one of the parties asks for a jury (known as a *jury demand*) within the time allowed under Rule 38 of the Federal Rules of Civil Procedure.  If a party does not make a timely jury demand, the right to a jury is generally forfeited.  Fed. R. Civ. P. 38(d).

A bench trial is a trial without a jury.  In a bench trial, the Judge determines the disputed facts between the parties and decides who wins the lawsuit.  A bench trial is held when: (1) the lawsuit is a type of case that the law does not allow a jury to decide; (2) none of the parties timely requests a jury; or (3) the parties agree that they do not want a jury.  Because there is no jury in a bench trial, you do not need to prepare jury-related documents such as proposed voir dire questions (i.e., questions to be asked to potential jurors), jury instructions and a verdict form.

In either type of trial, the Judge conducts the trial (known as *presiding* over the trial) and maintains order.  The Judge also decides in all trials what legal standards to apply and whether the evidence the parties wish to use is legal and proper (that is to say, whether the evidence is *admissible*).  In a jury trial, the Judge gives instructions to the jury, explaining the relevant law, how the law applies to the case being tried, and what questions the jury must decide.

## Consent to Trial by a Magistrate Judge

Each case filed in the District Court is assigned to a district judge.  The district judge, however, may refer portions of your case, usually pretrial matters and discovery proceedings, to a magistrate judge.  In addition to hearing and determining many pretrial matters, a magistrate judge, with the consent of all the parties, may conduct both jury and bench trials.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73(a).  A trial before a magistrate judge proceeds in the same manner as a trial before a district judge.

The decision to consent to have a magistrate judge conduct your trial is entirely voluntary, and the district judge to whom your case is assigned must approve the reference to a magistrate judge for trial.  Consent forms to have your case tried before a magistrate judge are available from the *Pro Se* Office.  See  http://www.nysd.uscourts.gov/cases/show.php?db-forms&id=69

> **Practice Tip:**  An advantage to having a magistrate judge conduct your trial is that he or she can often schedule your trial much sooner than a district judge because the district judge generally presides over many more cases than a magistrate judge.

## Motions in Limine

*Motions in limine* are applications made to the Court, generally before the trial starts, regarding disputes over potential or expected evidence or arguments.  Motions in limine are typically filed when there is a dispute over whether an important piece of evidence will be admitted or excluded at trial or whether a particular argument can be presented to the jury. Obtaining rulings on key issues before trial will help guide you in presenting your case.  For example, if the Judge rules that you cannot discuss the defendant's history of violence, you may not talk about that issue in your opening statement or ask any witnesses about the matter. Motions in limine allow for disputes to be resolved outside of the presence of the jury, so the jury is not made aware of the dispute and is not improperly influenced by the arguments.

Motions in limine can have a considerable impact on a trial, and most judges will rule on them in advance of trial so that the parties can plan accordingly.  The Judge's Individual Practices typically will set a deadline before the trial starts for filing motions in limine.

> **Practice Tip:**  Although judges typically require that motions in limine be made in advance of trial, the basis for a motion in limine might not arise or become apparent until a later time (sometimes during the trial), in which case you should seek to make the motion in limine at that time.

14

**Practice Tip:**  In some situations, the Judge is unable to rule on a motion in limine prior to the trial because the Judge needs to hear the context in which the evidence is being offered.  If the Judge has reserved decision on a motion in limine, you should not refer to the evidence or matters that are the subject of the pending motion until the matter is resolved.

Examples of issues that might be raised in a motion in limine include:

- Your opponent intends to tell the jury of past wrongs (e.g., past arrests, criminal convictions, prison disciplinary history) of yourself or one of your witnesses.  You may be able to exclude such evidence under the Federal Rules of Evidence.  See p. 40.

- Your opponent intends to tell the jury of your mental health history or that of one of your witnesses.  You may seek to exclude such evidence under the Federal Rules of Evidence.  See p. 42.

- Your opponent wants to call a witness solely for the purpose of introducing irrelevant and prejudicial facts.  You may file a motion in limine seeking to exclude, or limit, that witness's testimony under the Federal Rules of Evidence.  See p. 36.

- Your opponent provides you with documents after the close of discovery that should have been produced months earlier.  You may make a motion in limine to exclude the "late" materials from admissible evidence, keeping in mind, however, that you probably will not want to exclude those documents if they are favorable to you.

## Pretrial Order and Filings

There is a tremendous amount of work that goes into preparing for trial and many documents that must be filed with the Court before the trial starts.  Once the Judge sets the trial date, an order setting pretrial deadlines for filing or submitting various documents concerning the trial is typically issued.  Other deadlines may be set out in the Judge's Individual Practices.  You should review both the pretrial order and the Judge's Individual Practices to understand what you need to file with the Court and when you need to file it.  Leave yourself adequate time to prepare the necessary materials and meet the filing deadlines.

One document you will almost always have to file with the Court is a *pretrial order*, which essentially is a map, or index, of the case.  It is generally prepared jointly by the parties (check the Judge's Individual Practices) and contains the essential information of a case in a non-argumentative, brief and concise format, including:

- a summary of the facts of the case;

- a summary of the claims and defenses of the parties;

- a list of the witnesses each party expects to call to testify; and

- a list of the documents or other evidence each party expects to introduce as exhibits, including deposition testimony.

> **Practice Tip**:  Because the pretrial order is typically filed jointly by the parties, you must (and the Judge expects you to) cooperate with your opponent in its preparation.  Often times, counsel for your adversary will prepare the first draft of the pretrial order and you can add your sections to it.

Unless something extraordinary occurs, you will not be able to present exhibits or call witnesses at trial if they are not listed in the pretrial order.  Thus, you must be certain that you have listed all of your potential witnesses and exhibits in the pretrial order.  You are not, however, obligated to call every witness or introduce at trial every piece of evidence listed in the pretrial order.

> **Practice Tip**:   You generally may use documents or other evidence not listed in the pretrial order to challenge the credibility of a witness (see pp. 59-61) or to attempt to refresh the memory of a witness (see pp. 70-71), because you will not typically know what documents you need in those regards until a witness actually testifies at trial.  Those documents, however, generally will not be admitted into evidence.

In addition to the pretrial order, you typically will have to submit additional materials before the trial starts, including:

- in jury cases, proposed voir dire questions, jury instructions and verdict form;

- in non-jury cases, a statement of the elements of each of your claims or defenses and a summary of the facts on which you intend to rely to establish each;

- copies of documents or other evidence the parties expect to introduce as exhibits;

- motions in limine; and

- a brief on the law governing the case, called a "pretrial memoranda of law."

Review any scheduling order in your case, as well as the Judge's Individual Practices, to determine what you must file and when you must file it.

**<u>Final Pretrial Conference</u>**

The Judge may hold a final pretrial conference shortly before the trial is scheduled to start in order to determine a specific plan for the trial. Fed. R. Civ. P. 16(e). The goal of the final pretrial conference is to attempt to ensure that the trial will be as streamlined, focused and efficient as possible and to minimize the burden imposed on jurors and witnesses.

The Judge typically will address a number of important matters at the final pretrial conference, all of which you must be prepared to discuss, including:

- whether the matter is capable of being settled (including through mediation);

- what the law governing the case is and how the jury will be instructed in that regard;

- what issues, claims or defenses will be tried;

- what exhibits and witnesses each party might use at trial;

- approximately how much time each side will be permitted to present its case, including the time for opening statements and closing arguments; and

- issues concerning the jury, including voir dire questions, jury instructions and the verdict form.

In addition, at the final pretrial conference the Judge may discuss with the parties the substance and length of each proposed witness's testimony; require a party to limit a

17

witness's testimony; direct that witnesses may not testify about certain matters; or rule that certain witnesses cannot testify at all.  The Judge may also review with the parties the process by which documents and other exhibits will be submitted during trial and whether the parties will require any technology or equipment to present their exhibits (e.g., an overhead projector or DVD player).

## COMMENCEMENT OF TRIAL

### Setting a Trial Date

After all the pretrial documents have been submitted and approved and the final pretrial conference has been held, the Judge may set a *trial ready date*.  The trial ready date is usually the earliest date that your trial will start, but may change depending upon the Judge's schedule.  Generally, more than one case is listed as trial ready at the same time.  Once you are advised of your trial ready date, you should make sure that you have prepared all of your witnesses and assembled all of the materials you will need at trial.  Most judges require the parties to be ready on 48 hours' notice, but again, check the Judge's Individual Practices. Magistrate Judges often will set a specific trial date.

If the Judge's calendar opens up and your estimated trial time fits into the dates available, the Judge will issue an order scheduling trial to begin on a specific date.  If you are not ready to begin on the date scheduled, you must inform the Court immediately and request  a postponement by written motion.  If you or any of your witnesses are unavailable for a short period of time (e.g., a scheduled vacation or business trip), you must alert the Judge in advance about the conflict in writing and request that the trial not be scheduled during that time.  A request for an adjournment at a late date and without a good reason, however, typically will not be granted.  If a request for an adjournment has not been granted, you must come to court at the appointed time and begin the trial.  If you are not prepared for trial on the date scheduled, your case may be dismissed for failure to prosecute.  Fed. R. Civ. P. 41(b).

### Final Status Conference

On the first day of trial, prior to selection of the jury, the Judge usually will meet with you and your opponent briefly to go over any remaining matters, such as outstanding

motions in limine, evidentiary rulings and the presentation of witnesses.  If you have any final

questions, special requests or concerns about the trial, this is the time to raise them.

# JURY SELECTION

## Picking a Jury

If your case is going to be tried by a jury, the first order of business is to select the jury. The Judge will determine the precise number of jurors for your case. There are typically eight jurors on a jury, although the number may vary from six to twelve. Fed. R. Civ. P. 48. The purpose of jury selection is to pick a jury that can be fair to both parties. This is accomplished by each potential juror being asked a series of questions by the Judge designed to determine whether that potential juror is biased, prejudiced or sympathetic to either side. This process of questioning potential jurors is called *voir dire*. It is important during voir dire to watch the potential jurors and take careful notes because the individuals chosen as jurors will determine who wins your case, and you have some ability to remove, or *strike*, potential jurors who you believe will not be fair and impartial to you.

> **Practice Tip:** Remember that the jurors will eventually judge your credibility and that of your witnesses and weigh the facts of your case. They begin to form opinions about you and your credibility the first time they see you, so be mindful of how you act and conduct yourself at all times in front of them.

Many trial lawyers find it helpful to create a chart to help them keep track of the potential jurors during voir dire. This will help you organize your notes and is particularly helpful because you will typically be asked to refer to the potential jurors by their seat numbers when you challenge them. This is one example of such a chart:

21

**Sample Juror Selection Chart**

| 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|
| Alexa Smith<br>-Queens<br>-tattoo artist<br>-single<br>-drug conviction<br>-liberal<br>-degree in Greek history (smart)<br>-doesn't like lawyers | Phil Wallace<br>-Manhattan<br>-cook<br>-divorced<br>-knows witness Taylor<br>-high school graduate | LaToya McDaniels<br>-Manhattan<br>-Paralegal<br>-married, 1 child<br>-doesn't believe inmates | Terry Edwards<br>-Queens<br>-owns bakery<br>-claims financial hardship<br>-divorced twice<br>-2 kids<br>-doesn't own computer | Doug Walters<br>-Sullivan<br>-lawyer (civil)<br>-married<br>-3 kids | Brittany Sims<br>-Brooklyn<br>-student<br>-waitress<br>-single<br>-dislikes authority |
| 1 | 2 | 3 | 4 | 5 | 6 |
| John Doe<br>-Bronx<br>-unemployed<br>-college<br>-single<br>-nervous<br>-conservative | Bob King<br>-Westchester<br>-postal worker<br>-high school<br>-2 kids | Jane Rivera<br>-Manhattan<br>-retired police officer<br>-defendant in lawsuit for unlawful use of force and false arrest | Lynn Sung<br>-Brooklyn<br>-artist<br>-victim of crime<br>-avoided eye contact with me<br>-does not trust inmates | Margarita Lopez<br>-Manhattan<br>-engineering professor<br>-no litigation history | Jim Terry<br>-Bronx<br>-IT<br>-father-victim of police assault<br>-single<br>-strong personality |

Each numbered box reflects the potential juror's seat number during voir dire. In each box are examples of the kind of notes you might take on potential jurors to help determine whether you will seek to strike them.

**The Jury Pool**

The *jury pool*, the potential jurors in your case, are selected at random from a pool of persons from voter registration lists for Manhattan, Bronx, Westchester, Rockland, Orange, Sullivan, Putnam and Dutchess counties. See http://www.nysd.uscourts.gov.

**Voir Dire**

Each judge has his or her own process for selecting a jury. You should review the Judge's Individual Practices or raise any questions at the pretrial conference about how a jury will be chosen.

Typically, a group of between twelve and twenty-four potential jurors (a *jury panel*) will be called into the courtroom. The members of the jury panel are sworn in. The voir dire process typically begins with the Judge briefly describing to the jury panel the case and identifying the parties and their lawyers, as well as the witnesses who will appear during the trial.

Next, the Judge will question the members of the jury panel to allow the parties and the Court to determine whether any members of the panel are related to, or personally knows, the parties, their lawyers or the witnesses; have any personal interest in the case; or have strong feelings that might influence them in rendering an impartial decision in the case. Some questions will be very general, such as asking about a juror's education and occupation. Other questions may relate to the particular facts of the case. For example, if the case involves an alleged assault on a prisoner by a corrections officer, the Judge may ask whether members of the panel have ever been the victim of an assault by the police or whether a juror has any strong views about the credibility of prisoners.

If you have specific questions you want the Judge to ask the potential jurors, you must submit them as part of your proposed voir dire filed with the Court before trial. See pp. 15-17. Do not be surprised, however, if the Judge does not use your proposed questions when examining the potential jurors. Judges, based on their experience, typically have in mind the questions they want to ask the jury panel.

> **Practice Tip:** When preparing proposed voir dire questions, consider questions that will help the Judge elicit whether the potential jurors favor one side or the other, whether they have

biases toward or prejudices against the parties, and whether they have been a litigant in a similar type of action.

Once the questioning is complete, the Judge will excuse any potential jurors who the Judge thinks are biased or prejudiced and unable to render a fair and impartial verdict. Members of the panel will also be excused if the Judge believes they will not be able to perform their duties as jurors for any other reason (e.g., serving on the jury would be a hardship of some type).

At this time, the parties will have the opportunity to convince the Judge that other members of the jury panel should be excused because they are biased or prejudiced or cannot perform their duties for some other reason. These are called *challenges for cause.* There is no limit to the number of challenges for cause a party can make. Challenges to jurors by the parties are discussed away from the jury panel, oftentimes at a private discussion at the bench called a *side bar* or in the robing room, which is a room next to the courtroom. The party making a challenge for cause must clearly state a reason to the Judge for having the potential juror excused, and the Judge decides whether the panel member should serve on the jury or be excused. 28 U.S.C. § 1870. Panel members whom the Judge excuses for cause leave the courtroom and, depending on the Judge, new potential jurors may be called into the courtroom to replace them and be voir dired using the same process as the original panel.

> **Example:**  Example of challenge for cause:  *"I would like to challenge juror number 3, Jane Rivera, for cause because the claim in this case is that I was assaulted by a corrections officer, and she is a retired police officer who was previously accused of false arrest and unlawful use of force and I believe that she will be biased in favor of the defendant corrections officers."* <u>See</u> p. 22.

After all the panel members that have been dismissed as a result of a challenge for cause are excused from the courtroom, the parties have the opportunity to use *peremptory challenges* to excuse additional panel members. Peremptory challenges allow you to strike, or

24

remove, a potential juror without having to give a reason.  You have a limited number of

peremptory challenges, typically three.  28 U.S.C. § 1870.  Potential jurors bring their life

experiences with them into the courtroom.  Consider using your peremptory challenges against

those whose life experiences may lead them to doubt your position or favor your opponent's

position.  For example, a plaintiff in a prisoner's civil rights action may want to consider using a

peremptory challenge against a panel member with connections to a correction officer or law

enforcement official or who appears to have strong views about a prisoner's credibility.  There

may be a panel member whose body language during voir dire suggested to you that he or she

would be prejudiced against you.  You are free to challenge that panelist without having to

explain why.  If you do not want a potential juror to sit on your jury, you must make a formal

challenge.  Fed. R. Civ. P. 47.

> **Practice Tip:**  When exercising peremptory challenges, you
> cannot strike a potential juror <u>solely</u> on account of his or her race,
> gender, sexual orientation, national origin, or religion.  If you do
> so, your opponent may raise what is called a <u>Batson</u> challenge,
> based on the U.S. Supreme Court case, <u>Batson v. Kentucky</u>, 476
> U.S. 79 (1986).  If your opponent demonstrates that the
> peremptory challenge appears on its face to be based on one of
> those improper bases, you will be asked to offer a non-
> discriminatory reason for your challenge to the potential juror.
> The Judge will then determine whether the peremptory challenge
> was appropriate.  You should keep this rule in mind as well when
> your opponent exercises peremptory challenges.

> **Practice Tip:**  When considering whether to exercise a peremptory
> challenge, you might be able to determine which panel member
> would replace the challenged juror on the jury.  You should
> consider whether you are likely to be better off with the
> replacement than you would have been with the challenged juror.

After the jurors are chosen, the courtroom deputy swears them in.  At this point,

the jury is considered *impaneled,* and voir dire is over.  All the jurors who are impaneled will

participate in deciding your case, unless they are excused during the course of the trial.  Fed. R.

Civ. P. 48. Unless the parties agree otherwise, a case cannot be decided by fewer than six jurors, so the Judge will typically impanel at least seven or eight jurors in the event that one or two jurors is excused during the trial.

**The Judge's Statements to the Jury**

Once the jurors are sworn in, the Judge will explain to them their role in deciding the case. As part of this explanation, the Judge will typically inform the jurors that:

- The jury determines the facts of the case, not the law. It does so by weighing the credibility of the evidence presented. After the evidence has been presented, the Judge will instruct the jury on the applicable law, and the jury must follow that law – even if it thinks that the law is, or should be, different from the Judge's instruction.

- The jurors cannot discuss the case with anyone, including each other, until all of the evidence has been presented, the Judge instructs them on the law, and they begin to deliberate.

- The jurors must keep an open mind and not form an opinion until each party has concluded presenting its evidence. The jurors must not research or investigate any of the testimony or allegations on their own and must rely on the evidence presented at trial and the Judge's instructions.

- The Judge will instruct the jury on what is and is not evidence. The Judge also will instruct the jury as to which party has the burden of proof.

## OPENING STATEMENT

### Making an Opening Statement

After the jury is impaneled, the parties generally present *opening statements* to the jury. The plaintiff makes an opening statement first, followed by the defendant. During the opening statement, you are not allowed to argue your case or discuss the law. Rather, each party describes his or her version of the case in story form. Keep your opening statement brief, clear and forceful, and highlight the facts of your case. You do not need to talk about every detail. If you have witnesses who will testify on your behalf, you should mention them and what they will testify about but not go into great detail. Think of your opening statement as a movie preview of coming attractions or a roadmap of what you believe will come out during the trial. Its purpose is to help the jury understand what to expect and what you consider to be important, and it is your opportunity to tell to the jury your theory of the case and your version of the disputed facts. See pp. 10-11.

> **Practice Tip:** Often, the Judge will limit the length of opening statements, perhaps ten to fifteen minutes for each side. To avoid going over this time limit and to ensure that your opening statement is clear and concise, you should practice in front of a mirror or before friends and have them time you and critique your performance.

The opening statement is not evidence but rather outlines the facts you intend to prove at trial or what you believe the evidence will show. To be considered by the jury, any facts mentioned in your opening must be proven at trial through a witness's testimony or through documents or other evidence admitted at trial. When making your opening statement, avoid mentioning facts to the jury or promising to prove facts that you will not be able to prove through your exhibits or witnesses. In other words, do not overstate your case. The jury will remember it (and your opponent will remind the jury of it in its closing argument) and will hold it against

you.  Also, do not reference any matters that the Court has ruled you cannot discuss in deciding any motions in limine.

In your opening statement, highlight the strengths of your case and the weaknesses of your opponent's position, touching on all of the elements of each of your claims (or defenses).  Also consider whether you want to mention "bad facts" or particular weaknesses in your case, such as a lack of direct evidence about the incident, witnesses who are not credible or who are not particularly likeable or the lack of evidence on damages other than your own testimony.

If you believe your opponent is unaware of a particular weakness in your case or does not intend to raise it, you may not want to raise it yourself.  If, however, you believe that your opponent is likely to raise the damaging evidence, you need to consider carefully how to deal with it.  If the damaging evidence goes to an issue that is not central to your case, it may be best to wait for your opponent to raise it and then explain to the Judge or jury why that evidence should make no difference to the outcome of your case.  If, however, the damaging evidence goes to the heart of your case, it is often best to meet it head-on in your opening statement and as part of your direct case.  By raising the damaging evidence first, you can try to put the evidence in context and take the sting out of it in the minds of the jury.  For instance, if you have lost a motion in limine to exclude your prior criminal convictions, you may want to tell the jury up front that you have these convictions and explain why they should not affect your claims.

> **Practice Tip**:  Your opening statement is not evidence, even if you intend to testify yourself at trial about the same facts, because you are not under oath during the opening.  The same facts, when provided during an examination and under oath, would be evidence that the jury could consider.

> **Practice Tip**:  If you are seeking money damages for a physical injury or pain and suffering, you typically do not mention a specific amount of money during your opening statement.  Rather,

you should concentrate on the wrong or harm caused by the defendant and tell the jury that you are seeking damages for that harm.

## **Sample Opening Statements**

In your opening statement, you should start out by introducing yourself again to the jurors (they will have been introduced to you previously during voir dire) and thanking them and the Court for their patience and service. For example:

*Ladies and gentlemen of the jury, my name is _____, and I am the plaintiff in this action. I want to thank you in advance for your service on this jury and I know that you will listen to the testimony and consider the evidence in a fair and impartial manner.*

After your introductory comments, you should discuss the facts of your case. This is what an opening statement might look like in a prisoner's civil rights case involving allegations of unlawful use of force by two corrections officers:

*I will prove that on July 12, 2009, at approximately 2:00 pm in the pantry at ABC Correctional Facility, I was brutally beaten by correction officers John Smith and Jane Jones without cause or justification. You will hear testimony from an eyewitness, Ted Williams, a prisoner at ABC, who will describe what he saw occur on that day. Specifically, he will testify, and the evidence will show, that I did not provoke the incident that led to the beating and I did not threaten the defendants in any way.*

*You will hear my testimony that [describe incident]. You will also hear Mr. Williams testify that [describe testimony]. His testimony will be corroborated by Alex Raymond, another prisoner at ABC, who will testify that [describe testimony].*

*I will offer objective medical evidence from Doctor Michaels, a doctor in the infirmary at ABC, that I sustained serious injuries as a result of the beating by the defendants: a broken arm, 150 stitches to my face, partial loss of vision that continues to this day, and damage to my memory. There will be no dispute that I suffered these injuries.*

*The defendants will testify that force was used in self-defense and as a last resort and only because it was necessary. That is simply not true.*

> *You will hear evidence that I have been disciplined several times for fighting with other prisoners while incarcerated at ABC. While it is true that I have been involved in several fights with other prisoners, I have never been involved in a fight with an officer, and those prior incidents have nothing to do with what happened on July 12. I will prove that I was beaten on that day after being shackled and handcuffed and posed no threat to the defendants.*

> *You will also hear testimony that will call into question the defendants' claims that my injuries were suffered the following day when I fell down a flight of stairs. In fact, the evidence will show that I fell down those steps because of the injuries I suffered on July 12.*

> *Finally, you will hear testimony concerning the effect of my injuries on my health and my ability to earn a living once I am released from prison. I will ask you to return a verdict in my favor and award me compensatory and punitive damages. Thank you.*

In the case of a claim of employment discrimination as a result of the plaintiff's pregnancy, an opening statement (following the introductory comments) might look like the following:

> *Not too long ago I was considered to be one of the most well-respected administrative assistants at the defendant ABC Corporation. That all changed the day I announced, after years of my husband and my trying to have a child, that I was pregnant. The evidence will show that from that day on, concluding on January 1, 2009, when the defendant ABC Corporation unlawfully terminated my employment because of my pregnancy and in retaliation for my filing a discrimination complaint with the EEOC, both in violation of federal law.*

> *The evidence will show that I was employed as an Administrative Assistant by the defendant, ABC Corporation, for nearly 10 years and was, by all accounts, an excellent and productive employee. The last five years I was the assistant to defendant John Smith, a company vice president. You will hear testimony from a former supervisor and co-workers who observed my work habits and evaluated my work performance. The evidence will show that my work performance, without exception, was rated "very good." The evidence will also show that I had an excellent attendance record.*

> *I will prove that my working conditions changed dramatically once I told the defendant that I was pregnant in July 2008 and would*

*require maternity leave. You will hear from me and other witnesses that my boss, Mr. Smith, flew into a rage when he heard about my pregnancy and said derogatory things like "I wish we could fire all pregnant women" and "now she will never be around when I need her." I will prove that my duties were reduced and included clerical tasks such as filing and copying, which were not in my job description. I will prove through my testimony and through other witnesses that shortly after announcing my pregnancy, I was shut out of important meetings and projects.*

*You will hear testimony that, as a result of these hostile working conditions, I became distraught and began calling in sick and sought medical treatment for stress. I will testify that the defendants' conduct caused my work performance to dip from very good to poor until I was fired while eight months pregnant.*

*You will also hear that my firing came days after my filing a complaint with the EEOC complaining of my treatment by the defendants and that Mr. Smith emailed his boss, Paul Jones, the morning I was fired saying that he could not trust anyone who would file a complaint with the EEOC.*

*After you have heard all the evidence, I will ask you to return a verdict in my favor, awarding compensatory and punitive damages and reinstating me to my position with all seniority and benefit levels intact. Thank you.*

**Waiver of Opening Statements**

The Judge may ask the parties to waive, or skip, their opening statements. This most often occurs in a bench trial where the Judge is already familiar with the facts, or when the Judge determines that opening statements will be redundant or lengthen the trial needlessly. For example, if you plan to take the stand as a witness and essentially repeat what you would say during your opening statement, the Judge may ask the parties to waive opening statements.

**Objections to Opening Statements**

Parties typically do not object during opening statements. There are times, however, when objections are appropriate. Some common objections made during opening statements include the following:

- **<u>Arguing the law</u>.**  During opening statements, the parties tell the jury what they anticipate the evidence at trial will be.  It is typically objectionable to discuss in any detail the law that will be applied to the case.

- **<u>Mentioning inadmissible evidence</u>.**  If a judge, for instance, has already ruled in response to a motion in limine that a party may not discuss the other party's prior criminal convictions, that party is able to object during the opening statement of his opponent if those convictions are referenced.

- **<u>Giving personal opinions</u>.**  It is generally objectionable for a lawyer to tell the jury his or her personal opinion about the case, or particular evidence, because it improperly inserts the credibility of the lawyer into the trial.

## PRESENTATION OF EVIDENCE

### Types of Evidence

Following opening statements, the parties present their *evidence* to the jury (or to a judge in a bench trial). Evidence is the facts, or the proof, that the Judge allows a party to present to the jury. There are four general types of evidence:

- **Testimony**. Testimony of witnesses.

- **Documents**. Written materials, including letters, reports, records and emails (often produced by the parties doing pretrial discovery).

- **Real**. Actual evidence from the event at issue. For example, in an assault case, the actual baton used in the assault is real evidence.

- **Demonstrative**. Visual aids used to explain or illustrate testimony. Charts, diagrams, maps, models, video tapes and photographs are examples of demonstrative evidence.

  **Practice Tip**: It is useful to keep in mind several things that are never evidence: (1) statements in opening statements and closing arguments; (2) questions to witnesses (rather than the answers); (3) answers to questions to which the Judge has sustained, or agreed with, a party's objections; and (4) testimony and documents that the Judge has ruled are inadmissible.

### Plaintiff Puts on Evidence First

The plaintiff presents its side of the case first. The plaintiff begins by calling the first witness to the witness box ("*Your Honor, I would like to call as my first witness, _____*"), and proceeds to ask that witness all of its questions and show the witness any exhibits relevant to his or her testimony. This is called a *direct examination*. <u>See</u> pp. 53-57. The defendant then has the opportunity to ask that witness questions and show the witness documents related to the topics covered in the direct examination. This is a *cross examination*. <u>See</u> pp. 57-61. Then, the plaintiff has the opportunity to ask additional questions about topics covered in cross examination, referred to as *redirect examination*. <u>See</u> p. 63. Usually, the Judge will allow this

back and forth process to continue until both parties state that they have no further questions for a witness ("*Your Honor, I have no further questions for this witness at this time*"), at which time the witness steps down from the witness box (referred to as being *excused*).

The plaintiff then calls its next witness ("*Your Honor, I would like to call as my next witness, _____*"), and the same process of questioning occurs. After the plaintiff has presented all of its witnesses, the defendant has the opportunity to present witnesses and tell its side of the case in the same manner.

## Plaintiff Has the Obligation to Prove Its Claim

The plaintiff must submit evidence proving each of the elements of the claim alleged (the legal requirements necessary to establish a violation of law), unless the parties have agreed in writing that only certain elements of a claim are at issue or the Judge has specifically narrowed the issues that must be presented at the trial to include only certain elements of a claim. The elements of a claim are most easily found in the statute that creates the claim, relevant case law, or sample jury instructions for the particular claim.

The plaintiff must ensure that sufficient evidence of each element of the claims alleged has been presented so that a jury (or a judge in a bench trial) could find in its favor. If the plaintiff *rests* (or concludes) its case without presenting evidence to support each of the elements of claims alleged, any unproven claim may be immediately dismissed by the Judge and the defendant will not be required to present a defense to that claim. See pp. 90-91.

> **Practice Tip:** It is often helpful to make a list of the elements of each of your claims and the evidence you intend to submit to prove those elements. Put this list in your trial notebook and check off the elements as you submit your evidence. See pp. 11-12.

## Burden of Proof

At trial, each party will use evidence to convince the jury (or a judge in a bench trial) that its version of the disputed facts is more believable.  In most cases, the plaintiff has the burden to prove its claims by a *preponderance of the evidence* (that its version of the story is "more likely true than not").  While it is difficult to quantify exactly how much evidence the plaintiff needs to prove a case, the plaintiff will usually have met its burden if the jury finds that the evidence "tips the scales" in the plaintiff's favor.

## Admission of Evidence

Although court rules, statutes and custom provide great flexibility in allowing parties to present at trial whatever evidence is relevant and necessary to establish their claims and defenses, not all documents or testimony may be introduced as evidence.  The evidence must be *admissible* (that is, allowed by the Judge to be introduced as evidence) before a jury may consider it.  The admissibility of evidence is determined by the Federal Rules of Evidence, which set out specific steps and principles that must be followed before a judge will allow an exhibit or testimony to be admitted into evidence.  Only evidence that is admitted may be considered by the jury (or a judge in a bench trial) in determining who wins your case.  Therefore, it is critical that you carefully consider every piece of evidence on which you intend to rely to prove your claims, the objections your opponent might make to the evidence and how you will respond to those objections so that evidence is ultimately admitted.

Disputes between the parties over the admissibility of evidence are resolved in one of several ways:

- **Stipulation.**  The parties can stipulate, or agree, that certain facts or exhibits are admissible.

- **Motion in limine.**  A party can file a motion in limine asking the Judge to rule on whether certain evidence is admissible.  <u>See</u> pp. 14-15.

- **Objection.**  A party may object to the evidence when it is offered, and the Judge will decide whether the evidence may be admitted.  <u>See</u> pp. 72-81.

**Practice Tip:**  When a party objects to its opponent's introducing evidence (<u>e.g.</u>, particular testimony) and the Judge *sustains* (or agrees with) the objection and disallows it as evidence, the Judge will instruct the jury to disregard any testimony given concerning the matter.  If the jury, however, has already heard the testimony, it may have a difficult time disregarding it.  If you intend to object to particularly damaging testimony, therefore, do so by a motion in limine, which is ruled on outside of the jury's presence.  If you are successful in excluding the evidence, the jury will not hear it at all.

<u>**Rules of Evidence**</u>

To determine what evidence can or cannot be presented to the jury, you must be familiar with the Federal Rules of Evidence.  The Judge will rely on these rules in determining whether particular evidence is admitted at trial.  Set out below are just some of the rules of evidence you may come across.

<u>**Evidence must be relevant.**</u>  Evidence is *relevant* if it tends to prove the existence of a material, or important, fact in the case.  Fed. R. Evid. 401.  Generally, all relevant evidence is admissible unless it is excluded under some other rule of evidence.  Fed. R. Evid. 402.  Relevant evidence, for instance, may be excluded if it is duplicative of other evidence already admitted or is unfairly prejudicial.  Fed. R. Evid. 403.

<u>**Evidence cannot be unduly prejudicial.**</u>  Federal Rule of Evidence 403 provides that even if evidence is relevant, a judge has the discretion to exclude it if it is *unduly prejudicial*, likely to confuse or mislead the jury, or wastes time.  Fed. R. Evid. 403.  Evidence is unduly prejudicial not if it is "harmful" to a party – presumably all bad evidence against a party is harmful – but rather if it would be "unfair" to a party to admit the evidence.  A judge has substantial discretion to admit or preclude evidence under Rule 403.

36

**A witness must have personal knowledge of the facts.**  Generally, a witness may testify only to matters of which he or she has first hand or personal knowledge (known as being *competent* to testify as to particular facts).  Fed. R. Evid. 602.  You must establish that a witness has personal knowledge of particular facts through your examination of that witness.  For example, if you want a witness to testify about what he saw at 2:00 p.m. on July 12, 2009 in the pantry, you should first ask the witness where he was at 2:00 p.m. on July 12, 2009 to establish that he was in fact in the pantry before proceeding to question him about what he saw at that time.

**Evidence must be authentic.**  You must show that evidence you want to submit is *authentic*, meaning that it is what you say it is.  Fed. R. Evid. 901.  This assures the reliability of the items that are offered into evidence.  With regard to writings, recordings and photographs, the Federal Rules of Evidence favor evidence that is original or that is likely to be a true copy of the original.  Fed. R. Evid. 1002-03.  If neither party believes the evidence is forged or altered, the Judge will generally expect that the parties will stipulate, or agree, to its authenticity.  If there is a dispute, you must be prepared to prove that a copy is an exact duplicate of the original and that there is no reason to require the original be admitted.  Fed. R. Evid. 1003.

**A witness generally may not testify about what he or she has heard others say.**  The *hearsay rule* prohibits the introduction into evidence of statements, either oral or written, made out of court when offered to prove the truth of the facts asserted in the statement.  Fed. R. Evid. 801-02.  A witness, for example, generally cannot testify about what someone else told him or her outside the courtroom.  Similarly, many documents you might want to introduce as exhibits (see pp. 64-65) are by definition out-of-court written statements.  You typically must call the person who actually made the statement at issue as a witness.  The rationale behind the

hearsay rule is that the person who purportedly made the statement in question should be called

as a witness so the parties have the opportunity to cross examine the speaker (or writer) in court.

See pp. 57-61.

> **Practice Tip:**  Although the hearsay rule may be confusing, it is a
> very common and important concept at trial that may limit a
> witness's testimony or prevent documents from being admitted
> into evidence.  You should prepare in advance of trial how you
> will respond to hearsay objections, as well as any other potential
> objections.

Not all out of court statements, however, are considered hearsay under the Federal

Rules of Evidence.  Admissions made by your opponent, as well as prior statements by witnesses

that are inconsistent with their testimony in court, for example, are not hearsay.  Fed. R. Evid.

801(d).  The plaintiff in an employment pregnancy discrimination action, for instance, overhears

her manager (a defendant) say to a third person, "*I wish we could fire all pregnant women*."  The

plaintiff can testify about the statement because it is an admission by her opponent.  Likewise,

the plaintiff can have her co-worker, who was also present and overheard the statement, testify

about the statement.

In addition, the Federal Rules of Evidence provide for a number of exceptions to

the hearsay rule.  Fed. R. Evid. 803, 804 and 807.  You should review these exceptions carefully

to determine whether you can argue that the document you are trying to admit into evidence, or

the testimony about another person's out-of-court statement, falls under one of these exceptions.

**Evidence of someone's character is generally inadmissible.**  You are generally

not allowed to introduce evidence of a person's character (known as *character evidence*) to try

and prove that he or she has a tendency to act a particular way.  Fed. R. Evid. 404(a).  This

means, for example, you cannot try to prove that the defendant assaulted you by proving that he

has assaulted other people in the past.

There are a number of exceptions to this general rule, however, including that you may offer evidence of other crimes or wrongful acts of a person in order to try and show that the person's prior similar acts is evidence of a unique scheme or pattern. For instance, if you allege that a corrections officer assaulted you, you are unlikely to be able to introduce evidence that the defendant simply had been disciplined for two prior assaults. If, however, those prior assaults and your claim shared some unique similarities (e.g., in each, the defendant removed an inmate to a private room, handcuffed and shackled him, held him on the ground, and kicked him in the abdomen), you might be able to admit the evidence of the prior assaults to show a unique pattern of conduct by the defendant. Fed. R. Evid. 404(b).

You have more flexibility if you are attempting to attack the character of a witness in terms of his or her honesty or truthfulness. You may typically ask Witness One about Witness Two's reputation for telling the truth in an effort to prove that Witness Two is not telling the truth in your case. Fed. R. Evid. 608. Similarly, in some circumstances, you can challenge the credibility of a witness with evidence that the witness has been convicted of a felony or of a crime involving dishonesty or a false statement. Fed. R. Evid. 609.

**Settlement offers or discussions are generally inadmissible.** You are generally prohibited from offering as evidence settlement discussions or offers. Fed. R. Evid. 408. This is primarily because the information is not relevant, and an offer to settle may be motivated by a desire for resolution, rather than an admission that a party did something wrong. For example, the plaintiff cannot use settlement offers made by the defendant as evidence that the defendant believes it is guilty or may lose at trial. Similarly, the defendant cannot argue that the plaintiff has a weak case because the plaintiff was willing to settle.

**Steps taken after an incident in an effort to correct a problem are generally inadmissible.**  You are prohibited from introducing evidence of what is called *subsequent remedial measures* or steps taken after an incident to fix a problem.  Fed. R. Evid. 407.  There are several reasons behind this rule, the most important of which is that the Court does not want to discourage someone from correcting a problem for fear that it will be used by another to prove that there was a problem in the first place.  For example, in an employment discrimination case, the plaintiff typically cannot submit evidence that the defendant employer adopted an anti-discrimination policy after the alleged incident of discrimination against the plaintiff in order to show that the defendant tolerated discrimination prior to adopting that policy.

## Common Evidentiary Problems

**Past arrests, convictions, and prison disciplinary history.**  In litigation in which a prisoner is a party or a witness, there will likely be disputes over whether, and to what extent, evidence of a person's past arrests, convictions or prison disciplinary history may be admitted into evidence.  This evidence, part of a broader category of evidence referred to as *prior bad acts* evidence, is often inadmissible at trial for the purpose of attacking the person's character.  Certain prior bad acts may be admissible, however, if they are relevant to a person's honesty or truthfulness or if they offered for some reason other than simply to attack a person's character.  See pp. 38-39.  You should be familiar with Federal Rules of Evidence 404, 608 and 609 if you anticipate these issues arising in your trial.

If the Judge has ruled that your, or your witness's, prior bad acts can be admitted at trial, you need to try to establish to the jury (or to a judge in a bench trial) that they are not relevant to any matters in your trial.  For instance, you might argue that the bad acts occurred a long time ago or do not affect your ability to testify truthfully in this case.

**Business records.**  Records regularly maintained by a business are a common exception to the hearsay rule.  Fed. R. Evid. 803(6).  For example, if you seek to introduce the hiring records of the defendant employer and your opponent objects on the grounds that the records are hearsay, you should call as a witness an individual, such as the personnel director, who can testify as to the business practices of the defendant and that the particular records were: (1) kept in the ordinary course of business; (2) made at or near the time of the event recorded; and (3) made by someone with personal knowledge of the event or act.  Fed. R. Evid. 803(6), 901.  Alternatively, a person who is sufficiently familiar with the documents might be able to submit a written declaration about those matters, thus avoiding the necessity of having to call a witness to testify about the document.  Fed. R. Evid. 902(11).

**Hearsay within hearsay.**  Documents often contain what is known as *hearsay within hearsay*.  This means that not only is the document itself hearsay, but the document recites another statement that is also hearsay.  Each of the documents, and the statements in the document, must satisfy an exception to the hearsay rule or be shown to be non-hearsay.  Fed. R. Evid. 805.  For example, in a prisoner's civil rights action, an investigative report or a use of force report is itself a hearsay statement.  Both, however, will often also recite other hearsay statements, such as what the defendant officer, a witness or the plaintiff said about an incident. In order for the document to be admitted into evidence, you must show that the document itself is not excluded as hearsay (e.g., that it is a business record under Rule 803(6)), and that the statement in the document is separately admissible (e.g., that it is an admission by your opponent under Rule 801(d)(2)).

> **Practice Tip:**  Where only part of a document is admissible as evidence, the inadmissible portion will be *redacted*, or blacked out, so the jury cannot see the inadmissible portion.

**Medical and mental health records.**  Although medical records are generally hearsay, they typically may be admitted under the "business records" exception to the hearsay rule.  Fed. R. Evid. 803(6).  A medical record containing a statement made by the patient as to how an injury occurred is an example of hearsay within hearsay.  In order for that particular statement to be admitted into evidence, it must satisfy a separate exception to the hearsay rule.  This issue frequently arises in two situations.  First, if the statement is helpful to the defendant (e.g., the statement in the medical record is inconsistent with the patient's version of the events), it might be admissible as non-hearsay as an admission by the party.  Fed. R. Evid. 801(d)(2).  If, on the other hand, the patient wants to admit the statement because it is consistent with his or her version of the facts, the patient might be able to do so because a statement made to medical personnel to assist them in diagnosing and treating a patient is an exception to the hearsay rule.  Fed. R. Evid. 803(4).

The admission of medical records should be limited, or related, to any injuries at issue.  A defendant typically is not entitled to introduce into evidence at trial a patient's entire medical record to support the contention that the patient is merely a chronic complainer.  Fed. R. Evid. 803(4).

Unless a party is claiming mental pain and suffering or emotional distress, his or her mental health records are generally irrelevant, and admission of these records may be unduly prejudicial.  Fed. R. Evid. 401, 403.  These records may also contain hearsay statements, which are generally excluded.  Fed. R. Evid. 801, 802.

**Video tapes**.  Parties are able to use video tapes at trial in different circumstances. You may want to show a video tape, for instance, if it proves or disproves a disputed or important fact.  For example, if a case involves an alleged assault and there is a

surveillance tape that captured the event, you may want to play the tape for the jury.  Ordinarily, a video tape is admissible if a party establishes that it accurately reflects the matters on the tape, is authentic and is relevant to the facts of the case.  Fed. R. Evid. 901.

If you intend to use a video tape at trial, you should make sure that your opponent has the opportunity to review it, and you should attempt to stipulate, or agree, with your opponent to the foundation for (or authenticity of) the video tape.  If there is a dispute over the admissibility of the tape, you should consider resolving it in a motion in limine or otherwise advising the Judge of your intention to introduce the tape.  You also need to make arrangements with the courtroom deputy for the necessary equipment to play the tape and make sure that someone is available to operate that equipment during trial.

**Privileged communications**.  While courts strongly favor full disclosure of all information relevant to a matter, private communications between persons in certain confidential relationships need not be disclosed and are generally inadmissible as evidence at trial.  Fed. R. Evid. 501.  These private communications are known as *privileged communications*.  Privileged communications include private communications between you and your (1) attorney; (2) physician; (3) spouse; (4) psychologist or therapist; (5) social worker; or (6) cleric (e.g., priest, rabbi, imam).  Other than in rare cases, neither you nor the individuals with whom you had the communications can be asked at trial to testify about the substance of your communications.

You may, however, waive, or give up, your privilege by testifying (either intentionally or inadvertently) about an otherwise privileged communication or by permitting the other party to the communication to testify about the communication.  For example, if you are seeking damages for mental and emotional injuries and testify that you suffer from stress, anxiety and fear as a direct result of the defendant's conduct, you may consider waiving the

43

privilege with your psychologist and allowing her to testify about your treatment and introduce your psychiatric records to support your claims.  Indeed, by claiming mental and emotional suffering, you may be waiving your privilege as to the communications between you and your treating physician.

## WITNESSES

### Role of Witnesses at Trial

A witness is typically someone who has personal knowledge of the facts or circumstances of your case. A good witness is usually someone who is credible (or believable) and who directly observed, or was involved with, the events related to your case and is able and willing to testify on your behalf. Unlike television programs or movies, surprise witnesses are rarely permitted to testify at trial. You must list all potential witnesses in the pretrial order that is submitted before the trial begins. <u>See</u> pp. 15-17. If you try to present a surprise witness at trial, the Judge will probably not allow that witness to testify.

You will hear witnesses described in different ways. There are *fact witnesses*, who testify about the facts of your case. *Expert witnesses*, on the other hand, do not have first hand knowledge of the facts of your case but rather have the background, expertise or special knowledge that allows them to express an opinion concerning the facts of your case that will assist the jury (and the Judge) in understanding the evidence or in determining a disputed fact. Fed. R. Evid. 702. For example, if you have suffered a head injury as a result of an assault, the doctor who treated your injury is a fact witness who can testify concerning the extent of your injuries. On the other hand, a doctor who has extensively researched head injuries and can testify as to her opinion of the long term damage to your memory as a result of your injury would be an expert witness. <u>See</u> p. 63.

### Selecting Witnesses

You are responsible for determining the witnesses you will call in your case, while your opponent is responsible for determining the witnesses it will call.

If you are a plaintiff, you must call witnesses that will provide admissible testimony to prove each of the elements of your claims.  <u>See</u> p. 34.  If you have to rely on any documents to prove your claims, you also must make sure you call witnesses who will allow you to qualify those documents to be admitted into evidence.  <u>See</u> p. 66.  If you are a defendant, you must call witnesses that will rebut, or challenge, the plaintiff's case, and also allow you to prove the elements of any defenses you are asserting or any other matter which you have the burden to prove.  <u>See</u> p. 88.

In general, call one witness on any point.  On critical or disputed points, perhaps call one or two supporting (or *corroborating*) witnesses if they are available.  If you have the luxury of being able to choose between witnesses, consider which one a jury will likely find more credible, or believable, or will otherwise be a stronger witness for you.  You must consider the extent to which a witness might have favorable testimony for your opponent or will be able to be successfully attacked, or *impeached*, by your opponent.  <u>See</u> pp. 57-61.

> **Practice Tip**:  The jury will decide a case based on which side they find to be most believable and credible, not which side presents more witnesses.  If you are concerned, however, that you are at a disadvantage simply because you have fewer witnesses than your opponent, you may ask the Judge for a jury instruction (<u>see</u> pp. 100-01) explaining to the jury that it is the quality, and not the quantity, of testimony that counts.

> **Practice Tip**:  If you are concerned that the jury is more likely to believe your opponent's witnesses because they are police officers or other government officials, you may ask the Judge for a jury instruction (<u>see</u> pp. 100-01) explaining that such witnesses are to be evaluated in the same way as any other witness.

## Order of Witnesses

Plan the order that you will present your witnesses at trial and make sure that all witnesses are available on the days of the trial.  Present your witnesses (and evidence generally) in a chronological or some other logical order and in a way that will be clear and make sense to

the jurors (and the Judge). Remember, the jurors have not heard your case before, and it is your responsibility to present a clear, concise and orderly story that they will understand and find persuasive. Often, a single witness will not be able to tell the complete story, or witnesses will have a small or limited role to play in your story, so testimony often will be presented in pieces, sometimes out of order and over several days. It is your responsibility to piece together the different witnesses' testimony for the jury in your opening statement (<u>see</u> pp. 27-29) and closing argument. <u>See</u> pp. 92-94.

> **Practice Tip:** In deciding the order of your witnesses, you may want to start and end with your strongest witnesses. For example, if you and an eyewitness are testifying, consider starting with yourself, ending the case with your eyewitness and calling your other witnesses, if any, in the middle of your case.

> **Practice Tip:** If possible, try to have all of your witnesses available to testify on any of the days of your trial. Trial may proceed more quickly than expected, or a witness you expected to testify may be unavailable, so make sure that your next witness is on hand at the courthouse. This will avoid the need to ask for a recess because there is no witness available to testify. Judges generally like to move trials along quickly and do not like to grant recesses due to the unavailability of witnesses.

## **Preparation of Witnesses**

The goal in preparing witnesses for trial is to get them familiar with what to expect at trial so they are not surprised by any questions they are asked and you are not surprised by any answers they provide. This means that you must prepare your witnesses not only for your direct examination (<u>see</u> pp. 53-57) but for your opponent's cross examination as well. <u>See</u> pp. 57-61. Preparing your witnesses for trial is particularly important if your witness is nervous about testifying or has problems understanding or speaking English.

Meet with your witnesses individually during the time leading up to your trial. You should review the actual questions you intend to ask the witness and understand the answers

the witness is going to provide. The most effective direct examinations at trial are almost always practiced but do not sound to the jury like they have been memorized.

> **Practice Tip:** It is important to rehearse direct examinations because you want to make sure that you elicit all of the testimony necessary from a witness to prove your case and because you are limited in the types of questions that you can ask on direct examination and in your ability to prompt your witnesses while they are testifying. See pp. 54-55.

Explain to your witnesses that different rules apply to questioning on direct examination versus cross examination and what to expect when they are cross examined by your opponent. See pp. 57-61. Review with your witnesses the questions they might be asked on cross examination and what your opponent may try to establish during that cross examination. You want to avoid having your witnesses surprised by anything they are asked at trial.

Review with your witnesses any documents you intend to show them and any questions you intend to ask them about those documents. If you plan to use witnesses to introduce documents into evidence, you must explain to them how you intend to do so and what questions you will ask them in order to qualify the documents to be admitted into evidence. See pp. 65-69. Likewise, show them any documents your opponent is likely to show them at trial and review with them any questions they are likely to be asked by your opponent about those documents. If there are documents, such as a report prepared by the witness, that you might use to jog their memory while they are testifying, review with them the process of how you can refresh their recollection. See pp. 70-71.

Also review with your witnesses before trial all of their previous deposition testimony, affidavits, or other statements related to your case. These materials may help witnesses recall the events at issue and sharpen their testimony. In addition, you must know if your witnesses' current recollection of events has changed from their prior testimony or

statements, and your witnesses must understand that if their recollections have changed, they should expect to be challenged about their changed recollections by your opponent during cross examination. <u>See</u> p. 60.

Perhaps most importantly, you should remind every witness who is going to testify on your behalf the single most important rule of testifying – tell the truth. Because your witnesses are telling your story and are an extension of you in the eyes of the jury, if the jury does not believe them, they ultimately are less likely to believe you.

## **<u>Non-Party Witnesses</u>**

If a *non-party witness* (a person who is not a plaintiff or a defendant in the case) refuses to testify or needs to be excused from work or school to testify, you will have to subpoena that witness. A subpoena is a court order requiring a non-party to appear at a hearing, deposition, or trial or to provide documents. Fed. R. Civ. P. 45; <u>see</u> subpoena form at http://www.nysd.uscourts.gov/cases/show.php?db=forms&id=19. In order to make sure that a non-party witness attends your trial, you should subpoena the witness as far in advance of the trial as possible. Be aware that you cannot subpoena a prisoner to testify at trial. There is a different process for arranging for a non-party prisoner-witness to testify at trial. <u>See</u> p. 51. A person who fails to appear at trial after being properly served with a subpoena may be held in contempt of court and may be sanctioned or arrested.

> **<u>Practice Tip</u>:** You can only subpoena a non-party witness to appear at trial if the witness lives within 100 miles of the courthouse. Fed. R. Civ. P. 45(c)(3)(A)(ii). If a non-party witness lives beyond that range and is not willing to voluntarily appear at trial, you may be able to read the witness's deposition testimony to the jury at trial (if he or she was deposed). Fed. R. Civ. P. 32(a)(4)(B).

To obtain a subpoena, you should follow these steps:

- Complete the appropriate sections of the subpoena form, which can be obtained from the *Pro Se* Office.

- Serve a copy of the completed subpoena personally (not by mail) on the non-party witness by someone who is over 18 and not a party to the action, along with a $40 per day witness fee and daily travel expenses. 28 U.S.C. § 1821. (The witness fees and travel costs cannot be waived by the Court, even if you were granted *in forma pauperis* status.)

- Serve a copy of the subpoena on your opponent in person or by mail.

- File the original subpoena, with proof-of-service (on the back of the original subpoena), with the *Pro Se* Office.

**Practice Tip:** If you are incarcerated or cannot arrange for personal service of the subpoena, you must file a motion to request that the Judge order the United States Marshal's Office to serve the subpoena on your behalf. If you file such a motion, keep in mind that if the Judge grants the motion, the Marshal may require a month or more to serve the subpoena. Therefore, you should not wait until the last minute to file this motion. Motion instructions are available from the *Pro Se* Office. See http://www.nysd.uscourts.gov/cases/show.php?db=forms instructions&id=73. If you use the Marshal's Office to serve the subpoena, you must provide them with the subpoena fee and the subpoena.

**Practice Tip:** You may be able to avoid expending the time and effort necessary to obtain a subpoena for a non-party witness if: (1) your opponent plans to call the same individual at trial; (2) your opponent agrees to (or is ordered to) have the individual present at trial; or (3) the witness agrees to testify on your behalf and you are absolutely positive that the witness will show up at trial. If one of these situations applies, you should inform both your opponent and the Judge (usually at a pretrial conference).

Absent a properly served subpoena, you are responsible for securing the attendance of your witnesses at trial. If you are relying on the testimony of your opponent's witnesses to help prove your case, you should make arrangements with your opponent to have those witnesses attend on the appropriate dates. If you are at all concerned that a witness will not show up at your trial, you should subpoena that witness (even a friendly witness) as discussed

above.  If you fail to subpoena a witness and that witness, for whatever reason, fails to show up at trial, the Judge will have little sympathy, and you likely will be forced to proceed without the witness.

**Non-Party Prisoner-Witnesses**

If you plan to call a non-party prisoner to testify as a witness, you must ask the Court to issue a *writ of habeas corpus ad testificandum.*  28 U.S.C. § 1651(a), § 2241(c)(5).  This is an order signed by the Judge that will allow the prisoner to travel from his or her correctional facility to appear at your trial to testify.  The order is issued at the discretion of the Judge, and there is no guarantee that the non-party prisoner-witness will be allowed to testify at trial.  As with any other witnesses, you must list all prisoner-witnesses you intend to call at trial in your pretrial order.  See pp. 15-17.

To obtain a *writ of habeas corpus ad testificandum,* you should file a motion well in advance of trial to request that an order be issued.  Your motion should contain: (1) the name of the prisoner; (2) the prisoner's identification number; (3) the correctional facility where the prisoner is incarcerated; (4) the date that the prisoner is needed to testify (e.g., the first day of trial); and (5) what the person would testify about.  You should also include with your request a proposed order for the Judge's signature.  You should fill in all of the necessary information in the proposed order except for the Judge's signature.

If the Judge grants the *writ of habeas corpus ad testificandum*, the United States Marshal will execute it (that is, be responsible for getting your witness to trial).  It usually takes at least four weeks (but probably more) for the Marshal's Office to arrange for a non-party prisoner to be produced for the trial.  It is your obligation to be prepared to start trial on the day it is scheduled to start, so if you need the testimony of a non-party prisoner-witness, make the necessary arrangements well in advance of trial.

## Deceased, Unavailable or Missing Witnesses

In some cases, a witness who testified at a deposition in your case is not able to testify at your trial. You may, however, be able to have that witness's deposition testimony read to the jury so that your case is not prejudiced by the witness's absence. If you had expected that witness to testify favorably to you at trial and the witness cannot testify at trial because the witness is: (1) deceased; (2) located more than 100 miles from the place of trial or out of the country (unless it appears that you arranged for the witness to be absent); (3) unable to testify because of age, illness, infirmity or imprisonment; (4) unable to be located or subpoenaed to attend the trial; or (5) if other exceptional circumstances exist, you may ask the Judge before trial to have the witness's deposition testimony read to the jury. See Fed. R. Evid. 804(b)(1); Fed. R. Civ. P. 32(a)(4). If you are permitted to use a witness's deposition testimony at trial, you must designate the portions of the deposition transcript that you intend to introduce as evidence in the pretrial order. See pp. 15-17. You may designate (and introduce as evidence) only the relevant portions of the transcript, not the entire transcript. Your opponent has the opportunity to designate other portions of the transcript that it intends to introduce as evidence.

You may also be allowed to present at trial audio or video tapes of the deposition testimony of that witness, provided they are admissible under the Federal Rules of Evidence. Videotaped deposition testimony of an unavailable witness is often much more effective with a jury than simply reading testimony into the record.

> **Practice Tip:** If a missing witness is under your opponent's control and your opponent fails to produce that witness (or to provide a satisfactory explanation for the witness's absence), you should immediately alert the Judge that the missing witness has knowledge about a relevant issue in the trial that cannot be provided by any other witness and that the witness is available to your opponent. You may ask the Judge to instruct the jury that it may draw the inference that the testimony of the missing witness would be unfavorable to your opponent.

## Excluding Witnesses from the Courtroom

At a party's request, witnesses, except for party witnesses (that is, the plaintiff and defendant), will be excluded from the courtroom during the trial and will be permitted in the courtroom only when they are called to take the witness stand. Fed. R. Evid. 615. During your final pretrial conference (see pp. 17-18) or in a motion in limine (see pp. 14-15), you may also ask the Judge for an order excluding all non-party witnesses from the courtroom until they have testified. This is done so that the witnesses cannot hear other witnesses' testimony and change their testimony in response to another's testimony. If you see a witness in the courtroom (other than the plaintiff or defendant) who has not yet testified, you may inform the Judge or the courtroom deputy and ask that the witness be removed.

## Questioning Witnesses:  Direct Examination

Direct examination is when you question your own witnesses or, if you are a *pro se* party, you testify on your own behalf. On direct examination, you present your evidence and your side of the story through the testimony of your witnesses. You should ask questions that will elicit testimony that supports your theory of the case and establishes all of the elements of your claims. See p. 34.

If you are a *pro se* plaintiff, you will usually take the witness stand first. Remember that anything you said in your opening statement is not considered evidence and cannot be considered by the jury in their deliberations. Once you take a seat in the witness box and are sworn in as a witness, however, what you say is evidence that, along with the other admissible evidence presented at trial, will be considered by the jury (or a judge in a bench trial) in deciding your case. If you are giving direct testimony yourself, the Judge will usually permit you simply to tell your version of the facts in your case. Do not be surprised, however, if the

Judge interrupts your testimony and asks you questions.  This is usually done to keep you focused on the allegations made in the Complaint or to keep the trial running smoothly.

When you question a witness, rather than testify yourself, the witness is seated in the witness box and sworn in by the courtroom deputy or the Judge.  The witness states his or her name for the court reporter.  At this point, you may begin asking your direct examination questions.  You question the witness while standing at the lectern.  If you need to approach the witness with an exhibit, you must request permission from the Judge (<u>e.g.</u>, "*Your Honor, may I approach the witness?").*  Most judges will have you hand any exhibits you wish to show the witness to the courtroom deputy, who will then hand them to the witness.

> **Practice Tip:**  Prior to the start of trial, provide the court reporter
> with an easy-to-read list of the proper spelling of the names of your
> witnesses.

While there are many things to keep in mind when conducting a direct examination, here are some of the more important things.

**Use non-leading, open ended questions on direct examination.**  In a good direct examination, your questions will simply guide the witness through his or her testimony by asking questions that allow the witness to tell his or her story.  On direct examination you generally cannot ask *leading questions*.  Fed. R. Evid. 611(c).  A leading question is one that suggests, or leads the witness to, the answer you want.  For example, in a case about an alleged assault by the defendants, non-leading questions might include: "*Where were you on July 12, 2009?", "Who was the officer on duty in the pantry on July 12, 2009?", "What did you see happen between me and the defendant in the pantry on July 12, 2009?",* and *"Where were you standing when you witnessed this incident?"*  You cannot, however, ask leading questions such as, "*Did you see the defendant beating me at 2:00 p.m. on July 12, 2009, in the pantry?"*

> **Practice Tip:** Proper direct examination questions will often start with words such as "who," "what," "when," "where," "why" and "how."

**You may use leading questions, however, during the direct examination of an adverse witness.** You are generally unable to ask your witnesses leading questions on direct examination because it is assumed that your witnesses are friendly to your position, you have some control over them, and they will cooperate in answering your open ended questions. It is sometimes necessary, however, to call an *adverse witness* – your opponent, or another witness who favors your opponent and whose testimony is generally adverse, or not helpful, to your case – to establish the elements of your claim (or defense). Unlike a friendly witness, it is generally assumed that an adverse witness is outside of your control, will not cooperate in answering your open ended questions, and will use every available opportunity to harm you with his or her testimony. For those reasons, with permission of the Judge (e.g., "*Your Honor, may I treat this witness as an adverse witness?*"), you are able to ask leading questions of an adverse witness and otherwise treat the direct examination of an adverse witness as a cross examination. Fed. R. Evid. 611(c); see pp. 57-61.

> **Practice Tip:** A witness who you believed was going to be friendly, but unexpectedly turns against you during his or her testimony, is known as a *hostile witness*. With permission of the Judge (e.g., "*Your Honor, may I treat this witness as a hostile witness?*"), you may examine a hostile witness as if on cross examination, just as you would an adverse witness. Fed. R. Evid. 611(c).

**Keep your examinations simple and clear.** Do not overwhelm or distract the jury (or the Judge) with unnecessary information and details or bore them with repetitive or duplicate testimony. Use short questions with simple language. Get to the point, develop it adequately, and then stop. Your questions should demonstrate that the witness has personal knowledge of the facts or circumstances at issue and that the witness is unbiased. Regardless of

whether you are questioning a witness or testifying yourself, you should be as clear and concise as possible and stick to the facts and issues in dispute.  In doing so, you should try to give the jurors (and the Judge) a clear, vivid picture of what happened, including details such as the time, location and personal observations of the witness.

**Remember your audience**.  Keep in mind that the jury (and the Judge) have never heard the testimony before.  Do not assume they are familiar with your experiences or with certain facts.  For example, if your case requires the jurors to understand the details of prison or office life, provide testimony explaining those details.  Also, do not use nicknames or abbreviations for situations, locations or events.  If you must use an abbreviation because it will be referred to often, explain it (or have the witness explain it) at the beginning of the examination, such as "CO" stands for "Corrections Officer," or "SHU" stands for "Segregated Housing Unit," or "AA" stands for "Administrative Assistant."

**Develop the witness's background**.  Begin your direct examination by asking the witness some background questions, such as the witness's age, place of residence, education, and employment history (e.g., "*Who is your employer?", "What position do you hold?", "How long have you held that position?*" and *"What are your responsibilities and duties?").*  This background information should be brief but should let the jury know who the witness is, why the witness is here, and why the witness should be believed.  If you are giving direct testimony yourself, you should similarly begin your testimony by briefly telling the jury about yourself.

**Volunteer weaknesses**.  Many experienced trial lawyers believe that often the best way to deal with a weakness in a case is to volunteer it and control how the jury first hears about it.  For example, if the Judge has ruled that evidence of your prior conviction may be admitted for impeachment purposes under Fed. R. Evid. 609, <u>see</u> p. 40, you may want to tell the

56

jury during your direct examination that you were convicted and explain why the conviction is irrelevant to your case, rather than wait and let your opponent raise it during cross examination. If you are going to volunteer a weakness in your case, try to do so in such a way that does not unduly distract the jury from the positive aspects of the direct examination.  Perhaps bury the weakness in the middle of the examination so it is neither the first thing, nor the last thing, the jury hears from you or a witness.

**Listen to the witness's answers to your questions.**  Paying attention during your witness's direct testimony is important for at least two reasons.  First, it will show the jurors (who are always watching you) that you are interested in the testimony, thus they should be interested as well.  Second, even the most well-prepared witnesses will misspeak from time to time, and you want to be alert and ask follow-up questions to correct any misstatements.

**Refreshing the witness's recollection.**  Because a witness testifies from memory, do not be surprised if even the best prepared witness forgets an important part of his or her testimony.  When that happens, you might be able to *refresh the witness's recollection*, or jog the witness's memory, by showing the witness an exhibit, typically a document, that helps the witness remember the events that he or she has forgotten.  See pp. 70-71.

**Questioning Witnesses:  Cross Examination**

Once a party has finished questioning its witness, the opposing party is entitled to question that witness about the issues raised during direct examination (referred to as cross examination).  The purpose of cross examination is to test the reliability and truthfulness of the testimony given by a witness on direct examination.

**Practice Tip:**  Experienced trial lawyers do not begin to plan their cross examination of a witness while listening to the witness's direct testimony.  Your opponent's witnesses will be identified in the pretrial order (see pp. 15-17), and, as a result of discovery, including depositions, you should have a good idea as to what a

witness intends to testify about before he or she takes the witness stand. Prepare specific questions and areas of potential cross examination in advance of trial and then fine tune your questions as you listen to the witness's direct testimony or add additional questions if something unexpected comes out during direct examination.

You are not required to cross examine a witness. After a witness's direct examination, ask yourself whether the witness said anything that hurts your case, whether the witness was credible, and whether you have ammunition to use against the witness on cross examination. If the answer to any of these questions is "no," consider not cross examining the witness. If you do not have a plan or have something to gain by cross examining a witness, asking questions that will allow the witness simply to repeat damaging testimony, or show the jury that you are unable to effectively attack the witness's testimony, can be more damaging than the original testimony.

> **Practice Tip**: If you decide not to cross examine a witness, you should stand and tell the Judge, "*I have no questions for this witness at this time*."

> **Practice Tip**: One alternative to not cross examining a witness is to conduct a limited cross examination about what the witness does not know. For example, you claim that you were led into the pantry by the defendant correction officers where they proceeded to assault you. A witness for the defense testifies that he saw you enter the pantry on your own accord, did not hear any disturbance from the pantry, and saw you leave the pantry without any sign of injuries. If nothing else, you might get the witness to admit that he was not in the pantry, could not see into the pantry, and was seated some distance from the pantry (thus you can argue in your closing argument that the witness was not in a position to observe what actually occurred in the pantry or any injuries you suffered).

Cross examinations are typically brief and generally focus on a limited number of basic points that support your theory of the case. Experienced trial lawyers often will try to establish no more than three or four key points on cross examination and try to avoid minor issues that might distract the jury from their main points.

Perhaps the single most important thing to remember if you decide to cross examine a witness is that you must control the examination and not give an adverse witness the opportunity to provide additional harmful testimony.  The primary way you can do this is by never asking the witness an open ended question on cross examination.  Unlike direct examination, where you cannot ask leading questions, on cross examination, you should ask only leading questions to which the witness can answer "yes" or "no," without adding damaging comments.  Whenever possible during cross examination, state a fact and ask the witness to agree or disagree with it.  For instance, ask questions such as, "*You were not in the pantry when I claim that the defendants assaulted me, were you?*", "*The door to the pantry was closed at the time I claim that the defendants assaulted me, wasn't it?*", "*There are no windows through which you could see into the pantry, were there?*" and "*You were sitting across the room, approximately fifty feet from the entrance to the pantry, weren't you?*"  Do not ask questions such as "*What did you see?*" or "*So, you have no idea what actually happened in the pantry between the defendants and me?*"  You must assume that an adverse witness will seize every opportunity to harm you and you should not ask the witness any question that will give him or her the opportunity to do so.

Another common method of controlling the cross examination is to not ask the witness a question to which you do not know the answer.  Cross examination is not the place to explore what the witness knows with the hope that he or she may say something that helps your case.  The sole purpose of cross examination generally is to limit the harm that the witness has already done during his or her direct testimony.

There are different types of cross examinations, although the most common is what is referred to as a *discrediting* or *destructive* cross examination.  This type of questioning

attacks the credibility of the witness (referred to as impeachment) and attempts to persuade the

jury (or a judge in a bench trial) that the witness should not be believed.  There are a number of

different ways you can impeach a witness, including:

- showing that a witness has made prior statements that are inconsistent with the witness's direct examination testimony;

- showing that the witness is biased or prejudiced; or

- challenging the witness's ability to have observed the events at issue.

   **Show prior inconsistent statements by the witness**.  One of the most common

ways to impeach a witness is through prior inconsistent statements.  A prior inconsistent

statement is a statement made by the witness on a prior occasion that does not agree with the

witness's direct testimony.  By showing the jury that the witness has made prior inconsistent

statements about an important fact related to your case, you hope to demonstrate that the witness

is not honest or trustworthy and that the jury should not believe the witness's direct testimony.

Prior statements that might be used to impeach a witness include prior sworn testimony by the

witness (such as deposition testimony), prior written or oral statements (such as statements given

to an investigator or police officer), or any other writings of the witness, such as reports, letters

or emails, that are inconsistent with the in-court testimony of a witness.

   **Practice Tip**:  Make sure that the inconsistency you are attempting
   to prove is relevant to your case and important.  If it is not, you
   may cause the jury to conclude that the witness is generally
   reliable because you can challenge only irrelevant or unimportant
   matters.

   **Practice Tip**:  It is not necessary to point out every inconsistency
   in a witness's testimony on cross examination.  You should stick
   with the most important points.  The jury will understand what you
   are showing.

   **Show that the witness is biased or prejudiced**.  Your cross examination might

attempt to show that the witness is not fair or impartial.  This often involves showing that the

witness has some family or employment relationship that makes the witness partial to your opponent, or that there is some other fact that might cause the witness to favor your opponent or dislike you.  For example, getting a witness to admit that he is a personal friend of your opponent or has a grudge against you will allow you to attempt to persuade the jury in your opening statement and closing argument that the witness is biased in favor of your opponent and should not be believed.

           **<u>Challenge the witness's ability to have observed the events at issue</u>.**  When a witness says that he or she observed an event, you might be able to challenge the ability and opportunity for that witness to have observed the event.  You might attempt to show during cross examination that an event occurred quickly and unexpectedly or that the witness was surprised or frightened and thus that the witness's recollection of the event is questionable.  You might also show that the witness was too far away from an event to have accurately observed it or that the witness's view of an event was obscured.  For example, if a witness testifies that she saw you start a fight in the pantry on July 12, 2009, you may be able to establish that the witness was standing too far away to see what happened or that there was something in the witness's line of vision that blocked her view.

> **<u>Practice Tip</u>:**  There may be situations where an adverse witness also has testimony that is favorable to you and you want to get the witness to agree with facts that support your theory of the case.  In that situation, you should consider that if you try to discredit the witness, you risk undermining any helpful testimony the witness may provide.  If you want to try and elicit both favorable testimony from a witness as well as discredit that witness's direct testimony (and you might be able to do both), you typically want to elicit any favorable testimony from the witness before you attempt to discredit the witness in the eyes of the jury.

## Questioning Witnesses:  Redirect Examination

Redirect examination is a second chance to question your witness after your opponent's cross examination is complete.  Redirect examination is typically used to *rehabilitate* a witness, to explain or put in context damaging or inconsistent statements made by the witness during cross examination.  Questions on redirect examination are generally limited to the subjects covered in cross examination.  Redirect examination is not an opportunity to repeat the witness's direct testimony but rather to explain or clarify answers, or elicit full answers to questions only partially answered, on cross examination.  Depending on how effectively a cross examination undermined a witness's direct testimony, there may be no need for a redirect examination.

> **Example**:  Your eyewitness testified on cross examination that he was not wearing his glasses when he witnessed the incident.  The jurors may wonder how he could have seen anything.  If you know that your witness was not wearing his glasses because he was wearing his new contact lenses, you can ask the witness on redirect examination, *"Why didn't you have your glasses on at the time of the incident?"*

Following the completion of any redirect examination, the opposing party has the opportunity to recross examine a witness on matters the witness testified to during redirect examination.  The Judge will typically allow this back and forth process to continue until both parties state that they have no further questions for the witness.  At that point, the Judge will *excuse* the witness, that is, allow the witness to step down from the witness box and leave the courtroom.

> **Practice Tip**:  As on direct examination, you are not allowed to ask leading questions on redirect examination.  On the other hand, on recross examination, the rules concerning cross examination apply, and you should ask only leading questions.

**Questioning Witnesses:  Expert Examination**

The testimony of an expert witness is very different from the testimony of a fact witness.  Expert witnesses do not have first hand knowledge of the facts of your case.  Rather, they have the background, expertise or special knowledge that allows them to offer an opinion about the facts of your case that will help the jury (and the Judge) understand a complex matter.  Experts are often particularly helpful in proving damages, whether it is a medical expert who can testify about the long term damage done to your memory as a result of the head injuries you suffered in an assault or an expert on employee compensation who can testify about the compensation you lost as a result of being fired for unlawful reasons.  Unless you have found an expert who is willing to volunteer her services, you must pay an expert for time spent working on your case.  The Court does not have any funds available for *pro se* litigants to pay for this.

If you intend to use an expert witness, you must identify the expert well in advance of your trial, and the expert typically must submit a written report during the discovery period regarding the basis for her testimony.  Fed. R. Civ. P. 26(a)(2).

On direct examination, a party using an expert will need to establish first that the witness is "qualified" to testify as an expert by going through a series of background questions on the witness's experience and qualifications in its field of expertise.  If the Judge agrees that the witness is a qualified, the expert may testify about her opinion on a particular matter.  On cross examination, a party may challenge whether the expert is qualified to testify about a particular matter as well as challenge the expert's opinion on that matter.

# EXHIBITS

## Selecting and Using Exhibits

An *exhibit* is a document or any other material, other than testimony, that is offered as evidence or shown to the jury during a trial. Exhibits can be very important at trial because they often make an immediate and lasting impression on the jury. Jurors also often view exhibits as more interesting and reliable than testimony.

> **Practice Tip:** Like your witnesses, you will have to identify any exhibits you intend to introduce as evidence in the pretrial order. Generally, if you do not identify an exhibit before trial, you will not be allowed to introduce that exhibit at trial.

While you should always consider ways to use exhibits to tell your story more effectively to a jury, there are several things you should keep in mind:

- Exhibits should not be so numerous that they become boring or repetitive to the jury.

- Exhibits should be *probative* to a matter in dispute, that is, they help establish something you are trying to prove. Exhibits, much like the testimony of your witnesses, should support and advance your theory of the case.

- Determine whether an exhibit conflicts with another exhibit or with the testimony of your witnesses and whether it might be used by your opponent to impeach, or attack, your witnesses.

- Determine whether there is anything in an exhibit that your opponent might use to support its theory of the case.

> **Practice Tip:** Exhibits, especially documents, can contain a substantial amount of information. Carefully review any exhibit you are considering introducing at trial to determine whether there is a downside to using it and, if so, whether the benefit of using the exhibit outweighs any potential downside.

When selecting and preparing the exhibits you intend to use at trial, your goal should be to make them clear and visually appealing to the jury. An exhibit should make your case more clear to the jury, not confuse them or take away from your testimony or the testimony

of your witnesses.  When you use a visual exhibit at trial (e.g., documents, photographs, diagrams and charts) you should, if at all possible, enlarge a copy of the exhibit so the Judge and jury are able to follow along with the testimony about the exhibit.  The jury is often twenty feet or so from the exhibit, so the general rule is that the larger the exhibit, the better.  An overhead projector can enlarge a record or document, allowing the witness, lawyers, jurors and the Judge to see the same page at the same time.  It also allows everyone to follow along as you or a witness point out important sections of the exhibit.  Depending on the overhead projector available in the courtroom, you might be able to use a hard copy of a document or you might need to make transparencies for the projector from your documents, which you should be able to do at a photocopy store.  Alternatively, a photographic enlargement of a particularly important document or a page of a record can serve the same purpose.  If you are using a photographic enlargement, mount the exhibit on rigid Styrofoam board so the exhibit stands up.

> **Practice Tip:**  If you need an overhead projector at trial, you must remember to advise the courtroom deputy in advance of trial so necessary arrangements can be made.  Other equipment you might need includes an easel with paper if you intend to ask a witness to draw something to help the jury understand the witness's testimony or equipment to play audio or video tapes or DVDs.

> **Practice Tip:**  Judges have different practices in terms of providing jurors with copies of exhibits.  Some judges require that each of the jurors be provided binders at the beginning of trial that contain copies of all exhibits the parties intend to introduce.  Others prefer that the jurors focus on a single enlarged exhibit without having individual copies.  Still others may distribute copies of exhibits to jurors as they are introduced into evidence.  Check the Judge's Individual Practices, and if you have any questions raise them at the final pretrial conference.  See pp. 17-18.

## Admitting Exhibits into Evidence

If you have an exhibit you want the jury (or a judge in a bench trial) to consider as evidence, you must have that exhibit admitted into evidence.  See pp. 35-36.  The admissibility

of evidence is determined by the Federal Rules of Evidence.  Exhibits can be admitted into

evidence only when a series of steps are followed and a witness who is familiar with the exhibit

answers some preliminary questions about the exhibit and qualifies it for admission into

evidence.

The first step in qualifying an exhibit for admission into evidence is to identify a

witness who is able to *lay the foundation* for admitting the exhibit into evidence.  This means

that the witness is able to answer some preliminary questions about the exhibit.  The questions

necessary to lay the foundation for a particular exhibit differ depending on the type of exhibit.

Generally, laying the foundation for an exhibit requires that (1) the witness has first hand

knowledge of the exhibit or knows the facts underlying the exhibit; (2) the exhibit is relevant to

the issues at trial; and (3) the exhibit can be *authenticated*, establishing that it is what you say it

is.  Authentication tends to be the principal dispute at trial and is governed by Federal Rules of

Evidence 901 and 902.

> **Practice Tip:**  The parties often will not dispute the authenticity of
> many exhibits.  The Judge's Individual Practices generally require
> that the parties stipulate, or agree, to the foundation of all exhibits
> whose authenticity is not questioned, thus eliminating the need for
> foundation testimony about an exhibit.

Once you have identified a witness who is able to lay the foundation for an

exhibit and that witness is called to the witness box, the general process is as follows.

**Step 1.  Have the exhibit marked for identification.**  Every exhibit must be

*marked* so it can be differentiated from other exhibits.  Exhibits are generally marked with

sequential numbers (1, 2, 3, etc.) or letters (A, B, C, etc.).  Often, the Judge will require that you

mark all the exhibits you intend to introduce at trial before the trial, a process known as *pre-*

*marking* exhibits.  This process generally saves time and avoids confusion during the trial.  You

should check the Judge's Individual Practices to see how the Judge treats exhibits and whether

the matter is typically covered at the final pretrial conference.  See pp. 17-18.  If you have not

pre-marked your exhibits, you should ask the Judge at trial that the exhibit be marked, "*Your*

*Honor, I ask that this document, a copy of a July 13, 2009 use of force report, be marked for*

*identification as Plaintiff's Exhibit 1*."

> **Practice Tip**:  Do not be concerned when you pre-mark exhibits if they are subsequently introduced at trial in a different order; the introduced exhibits need not be numbered consecutively. Similarly, you do not have to offer all pre-marked exhibits into evidence at trial.

> **Step 2.  Hand the exhibit to the courtroom deputy (to give to the Judge).**

After the exhibit is marked, you need to provide it to the Judge, "*Your Honor, I am handing to*

*the courtroom deputy a copy of an exhibit marked for identification as Plaintiff's Exhibit No. 1.*"

You will also typically give a copy of the exhibit to your opponent (or direct your opponent's

attention to the exhibit if you have previously provided your opponent with copies of the exhibits

you intend to introduce).  This allows both the Judge and your opponent the opportunity to

review the exhibit.

> **Practice Tip**:  It is important to describe what you are doing in some detail, "*Your Honor, I am handing to the courtroom deputy a copy of an exhibit marked for identification as Plaintiff's Exhibit No. 1,*" rather than simply stating, "*Can you give this document to the Judge.*"  Although it may sound awkward, repetitive and unnecessary, it will create a far clearer transcript, or written record, of the trial.

> **Step 3.  Show the witness the exhibit.**  Ask the courtroom deputy to hand a copy

of the exhibit to the witness, "*Your Honor, I ask the deputy to please hand the witness a copy of*

*the exhibit marked for identification as Plaintiff's Exhibit No. 1.*"

> **Step 4.  Lay the foundation for the exhibit.**  Ask the witness to identify the

exhibit.

> *Plaintiff:  Have you seen Plaintiff's Exhibit No. 1 before?*

> *Witness:  Yes.*
>
> *Plaintiff:  Can you identify it?*
>
> *Witness:  Yes, it is a copy of use of force report I prepared, dated July 13, 2009.*

You should then ask the witness the questions necessary to lay the foundation for that particular type of document to be admitted into evidence.

> **Practice Tip:**  The witness cannot read the exhibit out loud or otherwise testify about it until the proper foundation for the exhibit is established and it is admitted into evidence by the Judge.

**Step 5.  Request that the exhibit be admitted into evidence.**  After the witness has laid the foundation for the exhibit, you must ask the Judge to admit the exhibit into evidence. Unless you remember to do this, the exhibit will not be admitted into evidence, and the jury will not be able to consider it in their deliberations.  If your opponent does not believe that the proper foundation for the exhibit has been established, your opponent may object to the exhibit being admitted into evidence.  <u>See</u> pp. 72-73.  If necessary to establish the basis of the objection, the Judge may allow your opponent to question the witness about the exhibit's foundation or the witness's knowledge about the exhibit.  Any examination at this point is strictly limited to questions about the foundation of the exhibit; cross examination about the substance of the exhibit must wait until the completion of your direct examination.  Not to be confused with the questioning of jurors (<u>see</u> pp. 23-26), this process is also referred to as *voir dire.*

> *Plaintiff:  Your Honor, I move that Plaintiff's Exhibit No. 1 be admitted into evidence.*
>
> *Judge:  Any objection?*
>
> *Defendant's Lawyer:  No objection [or "I object because _____"].*
>
> *Judge:  Plaintiff's Exhibit 1 is [or is not] admitted into evidence.*

**Practice Tip:**  A good practice is to keep a list of the exhibits you intend to introduce at trial in your trial notebook (see pp. 11-12) and note when each is admitted into evidence so you do not forget to have an exhibit admitted.

**Step 6.  Obtain permission to show the exhibit to the jury**.  After the exhibit has been admitted into evidence, if you want to question the witness about the exhibit, you should ask the Judge for permission to show the exhibit to the jury, "*Your Honor, may I show Plaintiff's Exhibit No. 1 to the jury at this time?"*

**Step 7.  Publish the exhibit**.  If the Judge gives you permission to show the exhibit to the jury, you are able to *publish*, or show, the exhibit to the jury.  This often will involve displaying for the jury the enlarged copy of the exhibit.

**Step 8.  Have the witness use the exhibit**.  Once an exhibit is published to the jury, you are in a position to have the witness use the exhibit by reading the exhibit out loud or asking the witness questions about the exhibit.

**Demonstrative Exhibits**

Demonstrative exhibits are visual aids for use in the courtroom.  They are not actual evidence from an event at issue but rather are used to explain or illustrate testimony.  Charts, diagrams, photographs, and maps are examples of demonstrative evidence.  For instance, during the questioning of a witness who witnessed an assault, you might show the witness an enlarged diagram of the area where the assault took place so the witness can refer to the diagram when describing what he or she witnessed.  This allows the jury to get a better picture of, or visualize, the witness's testimony.

The Judge has substantial discretion in allowing the use of demonstrative exhibits.  While demonstrative exhibits are often very helpful to a jury, if they are not relevant to the testimony or are somehow inaccurate, they may mislead or confuse the jury rather than assist

them, and the Judge may not allow the demonstrative exhibit to be used.  To the extent possible, the parties should stipulate, or agree, to the accuracy of any demonstrative exhibits before trial.  You should also advise the Judge of any demonstrative exhibits you intend to use.  Judges will have different views as to the use of demonstrative exhibits, and you should understand the Judge's individual views regarding those types of exhibits.

> **Practice Tip**:  Demonstrative exhibits are not typically admitted into evidence because they only help the jury understand the testimony of a witness, which is the actual evidence.  If you want the jury to be able to look at a demonstrative exhibit while deliberating, you must remember to ask for the exhibit to be admitted into evidence.

## Using an Exhibit to Refresh a Witness's Recollection

Even the best prepared witness may forget an important part of his or her testimony under the pressure of testifying at trial.  When that happens, you may attempt to refresh the witness's recollection, or jog the witness's memory.  This is typically done by showing the witness a document that will help the witness remember the events that he or she has forgotten.

In order to use a document to refresh a witness's recollection, you must demonstrate that the witness knows the facts, but has had a memory lapse, and has in mind some particular document that will jog his or her memory.  If that is the case, you should ask the Judge's permission to refresh the witness's recollection with the particular document identified by the witness.  If the Judge allows, you may mark a copy of that document as an exhibit, give it to the witness, and ask the witness to read it.  You then ask the witness whether the document has refreshed his or her recollection and, if it has, you take the document back from the witness, and the witness testifies as to what he or she recalls, without further aid of the document.

The document used to refresh a witness's recollection is not admitted into evidence, and unlike documents that are admitted into evidence, you do not have to lay a foundation for the document or identify it as an exhibit in advance of trial in the pretrial order. The document is used solely to refresh the recollection of the witness, and it is the testimony of the witness that is the evidence, not the document. There are, of course, situations where the document used to refresh a witness's recollection itself has been admitted into evidence separate and apart from being used to refresh a witness's recollection.

> **Practice Tip**:  Because you must go through a specific series of questions in order to refresh a witness's recollection, you should explain that process to your witness during your preparation of the witness so he or she understands what you are doing if you must attempt to jog his or her memory.  <u>See</u> pp. 47-49.

## OBJECTIONS

### Making Objections to Evidence

The jury is entitled to consider any evidence that is admitted during the trial.  The primary purpose of an *objection* is to prevent the jury (or a judge in a bench trial) from hearing or considering inadmissible or improper evidence.  If you believe that your opponent is asking an improper question to a witness, attempting to introduce an improper document, or making an improper argument to the jury, it is your obligation to object.  The Judge has no obligation to preclude evidence unless one of the parties raises an objection.

> **Practice Tip:**  A second purpose of an objection is to preserve issues for appeal.  You generally may not appeal errors in admitting evidence at trial unless you make a proper objection at trial.  Fed. R. Evid. 103(a)(1).

While experienced trial lawyers are quick to make well-stated, persuasive objections, like so many things at trial, there is typically a lot of preparation and advance thought that goes into many of their objections.  By the time you get to trial, you should have a fairly good idea of what evidence your opponent is going to introduce, including the witnesses that will be called and the exhibits that will be offered.  Think through the objections you might have to your opponent's evidence in advance, and as the trial proceeds, anticipate your objections so you can make them timely and convincingly.  Likewise, understand how you intend to introduce your evidence, the objections your opponent may make, and how you intend to respond to those objections.

You should stand whenever you make an objection and speak loudly and clearly.  Although best practice generally is to state the specific ground for your objection in a word or two (Fed. R. Evid. 103(a)(1)), most judges will have in mind the basis of your objection and often prefer that you simply say "*Objection,*" without further explanation.  If the Judge wants to

know the basis of your objection or is interested in hearing from the parties, the Judge will let you know, so always be prepared to state the basis of your objection.  Generally, however, the Judge will immediately rule on an objection without additional discussion.

If you are objecting to a question by your opponent, it is generally not appropriate to object until your opponent finishes asking the question, although the objection should be raised before the witness answers the question.  If you are objecting to an answer to a question, however, the objection should be made as soon as it becomes apparent the answer is objectionable, interrupting the witness to prevent the jury from hearing what you believe is inadmissible testimony.  It is thus important that you at all times pay close attention to your opponent's questions, as well as the witness's answers, and always be prepared to promptly object.

**Deciding Whether to Make an Objection**

While there will be many chances for you to object during a trial, experienced trial attorneys try to limit their objections, and you should keep in mind the following things when considering whether to object:

- **Have a solid legal basis for the objection.**  Making an objection and having it overruled by the Judge draws the jury's attention to the question and answer and suggests to the jury that the matter is important to you.

- **Jurors generally dislike objections.**  While you cannot be afraid to make appropriate objections, jurors generally do not like objections and often believe their purpose is to keep them from the truth.

- **Consider whether the answer hurts your case.**  Unless you are reasonably certain an answer will hurt your case, consider not objecting.  If the Judge agrees with your objection, the jury may wonder what damaging information you were trying to keep out of evidence.

- **Preserve issues for appeal.**  Errors in admitting evidence at trial generally cannot be raised on appeal unless a proper objection is made at trial.  Fed. R. Evid. 103(a)(1).  If you believe that you may want to raise an issue on appeal, you must object, including stating the specific ground of the objection.

**Practice Tip:** Whether damaging evidence is introduced in your direct case or during cross examination, try not to draw too much attention to it. The jury will naturally focus more on evidence surrounded by a lot of emotion in the courtroom or if a lot of objections are raised over the evidence. While you cannot ignore damaging evidence, you should try to downplay it rather than put a continuing spotlight on it.

## The Judge's Ruling on Objections

The Judge makes the ultimate decision about which evidence is or is not admissible. The Judge typically responds to an objection in one four ways:

- **Sustain.** The Judge agrees with the objection, and the witness must ignore the question (and no answer should be given) or the exhibit offered will not be admitted into evidence. The answer to the question (if given) or the exhibit offered into evidence may not be considered by the jury in its deliberations.

- **Overrule.** The Judge disagrees with the objection (and the witness must answer the question) or the exhibit offered will be admitted into evidence. The answer to the question or the exhibit may be considered by the jury in its deliberations.

- **Admit for some limited purpose.** The witness will be allowed to answer the question or the exhibit offered will be admitted into evidence, however, the jury may consider the answer or exhibit only for some limited purpose. Fed. R. Evid. 105.

- **Reserve decision.** The Judge will allow the witness to answer the question or permit the exhibit offered to be presented; however, the Judge will later determine whether the testimony or exhibit is admissible and may be considered by the jury.

If you disagree with the ruling by the Judge, do not argue with the Judge.

**Practice Tip:** If your objection to an answer is sustained – meaning the judge agreed with the objection – the Judge should state that the answer is stricken, or removed, from the record and tell the jury to disregard it. The Judge should do likewise if your objection to a question is sustained after the witness blurts out an answer. If the Judge does not strike the answer and direct the jury to disregard it, you must ask that the Judge do so, both to preserve your record for appeal and so that the jury understands that it may not consider the answer in its deliberation.

## Common Objections

Objections are most often made during the presentation of evidence and generally can be classified into two categories.  First are objections to *form*, that is, how a question is asked.  Second are objections to *substantive admissibility*, typically an objection to the answers to questions or exhibits being offered into evidence.  Objections to the form of a question, if sustained by the Judge, can generally be cured by asking a better phrased or different question.  On the other hand, if an objection to substantive evidence is sustained by the Judge, the evidence offered, either testimony or an exhibit, will be excluded.  In addition to objections during the presentation of evidence, objections can be made at any other time during the course of the trial, including during opening statements and closing arguments.  See pp. 31-32, 94-95.

## Objections to the Form of a Question

An objection to the form of a question is essentially an objection to the way a question has been asked.  Set out below are some of the more common objections to the form of a question:

- **Ambiguous**

    *Defendant's Lawyer:  Did Officer Smith hit the plaintiff on his right shoulder or his left shoulder or not?*

    *Plaintiff:  Objection, the question is ambiguous.*

    The question has more than one meaning and any answer will be unclear.  The question should be more precise.  Fed. R. Evid. 611(a).

- **Asked and answered**

    *Defendant's Lawyer:  What did you do when you entered the pantry?*

    *Witness:  I looked to the right.*

    *Defendant's Lawyer:  After you entered the pantry, which way did you look?*

    *Plaintiff:  Objection.  That question has been asked and answered.*

The same question cannot be repeated time and again after having already received a responsive answer. It not only can confuse the witness and the jury, but it also wastes time. Fed. R. Evid. 403, 611(a).

- **Calls for a narrative answer**

  *Defendant's Lawyer: Tell the jury what happened on July 12.*

  *Plaintiff: Objection. Calls for a narrative answer.*

  While open ended questions should be asked on direct examination, this question calls for a narrative answer and is objectionable because it fails to provide the witness with any direction and does not allow the opposing party an opportunity to anticipate objectionable testimony. Fed. R. Evid. 611(a). A less objectionable question might be, *"What did you see in the pantry at 2:00 p.m. on July 12?"*

- **Compound**

  *Defendant's Lawyer: Did you see Officer Smith on July 12 and did you speak to him?*

  *Plaintiff: Objection. Compound question.*

  Questions should not contain multiple, or compound, facts because the answer to the question is often unclear or confusing. Fed. R. Evid. 611(a). The objection here presumably could be cured by breaking the question into two questions: *"Did you see Officer Smith on July 12,"* and *"Did you speak with Officer Smith when you saw him on July 12?"*

- **Unintelligible**

  *Defendant's Lawyer: Did you leave the pantry before the entrance that led up to your exit?*

  *Plaintiff: Objection, unintelligible.*

  The question is so confusing that it cannot be understood. Fed. R. Evid. 611(a).

- **Leading**

  *Defendant's Lawyer: You didn't see Officer Smith hit the plaintiff in the pantry on July 12, did you?*

  *Plaintiff: Objection, leading.*

Leading questions are those that plainly suggest the answer you want and usually can be answered yes or no. Leading questions are generally objectionable if asked on direct examination of a friendly witness. They are not objectionable, and in fact are preferable, if asked on direct examination of an adverse or hostile witness or on cross examination. Fed. R. Evid. 611(c); see pp. 55, 59.

- **Misstates prior testimony (or an exhibit)**

  *Defendant's Lawyer: What time did you arrive in the pantry?*

  *Witness: Approximately 2:00 p.m.*

  [Later in the examination of the same witness]

  *Defendant's Lawyer: I am going to ask you some more questions about what you saw in the pantry on July 12. You testified earlier that you arrived in the pantry about 3:00.*

  *Plaintiff: Objection. The question misstates the earlier testimony of the witness.*

  A question that misstates or distorts evidence or misquotes a witness is improper. Fed. R. Evid. 611. This typically occurs when the questioner inaccurately refers to the contents of an exhibit or inaccurately states what a witness previously stated.

- **Argumentative**

  *Defendant's Lawyer: Isn't it a fact, Mr. Williams, that you were lying when you said you saw Officer Smith strike the plaintiff because you will do anything to help the plaintiff win this lawsuit?*

  *Plaintiff: Objection. Argumentative.*

  Questions asked for no purpose other than to argue with or harass a witness are improper. Fed. R. Evid. 611(a). The purpose of questioning a witness is to elicit information from that witness about what he or she observed or did. Argument should be saved for closing arguments. The Federal Rules of Evidence also specifically provide that the Judge should protect witnesses from harassment or undue embarrassment. Fed. R. Evid. 611(a)(3).

- **Assumes fact(s) not in evidence**

  *Defendant's Lawyer: After you saw the plaintiff strike Officer Smith, you called for help, correct?*

77

[The witness has not testified that he saw the plaintiff strike Officer Smith.]

*Plaintiff:  Objection.  Assumes facts not in evidence.*

Questions that assume the existence of facts that have not yet been established are objectionable.  Most often, the facts are in dispute.  The question would be proper if the witness had testified earlier that he in fact saw Officer Smith strike the plaintiff.

- **Calls for hearsay**

  *Defendant's Lawyer:   What did Officer Smith tell you about the incident?*

  *Plaintiff:  Objection, your Honor.  The question calls for a hearsay answer.*

  A common hearsay objection is when a question asks a witness to testify about what another person said to them.  Fed. R. Evid. 801, 802.   Not all out-of-court statements made by another person, however, are hearsay (Fed. R. Evid. 801(d)), and even if they are, there are a number of exceptions to the hearsay rule.  Fed. R. Evid. 803, 804 and 807; <u>see</u> pp. 37-38.

- **Calls for speculation**

  *Defendant's Lawyer:   Isn't it possible that the plaintiff harmed himself when he fell down the stairs on July 13?*

  *Plaintiff:  Objection, calls for speculation.*

  Questions which ask a fact witness to speculate about something, or express an opinion about the facts, are improper.  The witness does not have first-hand knowledge of the matter.  Fed. R. Evid. 602.

  > **Practice Tip**:   Questions that contain the word "possible," "possibly," "conceivable" or "conceivably" or ask whether something "could have occurred" or "might have occurred" or "could be the case" or "might be the case" often call for speculation.

## Objections to Substantive Admissibility

An objection to substantive admissibility is essentially an objection to what is being presented to the jury to support a claim or defense.

- **Hearsay**

  *Defendant's Lawyer:  Who was present during the discussion?*

  *Witness: Officer Smith, Officer Jones, and me.*

  *Defendant's Lawyer:  What did you say during the discussion?*

  *Witness:  Before I could say anything, Officer Smith said…*

  *Plaintiff:  Objection, your Honor, hearsay.*

  Not only can a question ask for hearsay, but a witness can volunteer hearsay in his or her answer.  <u>See</u> pp. 37-38.  Each is equally objectionable.

- **Irrelevant**

  In order to be admissible at trial, testimony or exhibits must be relevant to the facts at issue in the case.  <u>See</u> p. 36.  If your opponent attempts to admit evidence that is irrelevant, you can object.  Fed. R. Evid. 401-03.

- **Lack of knowledge**

  In order to testify about a matter, a witness must have first hand knowledge about it.  <u>See</u> p. 37.  With the exception of experts, if it has not been established that a witness has knowledge of the issues about which he or she is testifying, you can object on the grounds that the witness does not have knowledge of those issues and therefore cannot testify to them.  Fed. R. Evid. 602.

- **Insufficient foundation**

  Before a witness can testify about a document, a proper foundation for the exhibit must be laid.  <u>See</u> pp. 65-69.  If a proper foundation is not laid, you can object to the exhibit being admitted into evidence.

- **Cumulative**

  Where evidence has already been introduced about a fact, additional evidence proving the same fact is cumulative, that is, the additional evidence goes to prove that same fact.  The Judge will not allow a party to offer evidence that is unnecessarily repetitive of evidence already introduced during trial.  Fed. R. Evid. 611(a).  On disputed facts, however, the Judge will be much more willing to allow corroborating, or supporting, evidence.  You may object to testimony or the use of exhibits that are unnecessarily repetitive.

- **<u>Beyond the scope of the direct examination</u>**

  Cross examination is generally limited to matters raised during direct examination and matters affecting the witness's credibility.  <u>See</u> Fed. R. Evid. 611(b).  Redirect examination typically is limited to matters raised on cross examination.  If your opponent goes beyond these limits, you have a ground to object.

- **<u>Inflammatory or unduly prejudicial</u>**

  Evidence is inflammatory or unduly prejudicial when its probative value – how much it proves a disputed fact – is substantially outweighed by the prejudice it will cause one of the parties.  Fed. R. Evid. 403.  If your opponent seeks to introduce inflammatory evidence, you should object and show that its prejudicial effect substantially outweighs its probative value.  Prejudice here means that the admission of the evidence would be "unfair" to a party, not that it would be "harmful."  <u>See</u> p. 36.

- **<u>Past arrests or convictions</u>**

  The admission of evidence of past arrests and convictions is governed by Federal Rules of Evidence 403, 404, 608, and 609.  <u>See</u> p. 40.  If your opponent asks a witness about matters that are prohibited by these rules, you should object.

## <u>Offer of Proof</u>

If your opponent's objection has succeeded in excluding important evidence, you should ask the Judge if you can make an *offer of proof*.  Fed. R. Evid. 103(a)(2).  An offer of proof demonstrates to the Judge what the excluded evidence would show, if allowed, and why you believe it should be admitted.  An offer of proof is necessary for two reasons.  First, it may convince the Judge to change his or her mind and admit the evidence.  Second, the offer of proof is necessary in the event you later want to appeal the Judge's decision to exclude the evidence because you will need to have a record of what the evidence would have shown for the appellate court to review.  <u>See</u> p. 115.

Because the offer of proof involves a matter that the jury would not otherwise hear (because the Judge has initially decided to exclude it), offers of proof are generally made at a side bar, a discussion with the Judge at the bench, and out of earshot of the jury.

> **Practice Tip**:  While the discussion in a side bar may be conducted out of earshot of the jury, it is recorded and included in the trial transcript.

An offer of proof typically involves your telling the Judge what the proposed testimony would be and why you believe it is admissible, *"Your Honor, if I am allowed to present this evidence, it would show ___.  This evidence should be admitted because ____."*  In rare cases, so the Judge can better understand the evidence, the Judge might excuse the jury and allow you to put a witness on the stand and ask the same questions you would ask with the jury present.  If the Judge decides to admit the evidence, the jury is recalled, and the questions are asked in front of the jury.  When the evidence precluded is an exhibit, rather than testimony, the exhibit should be provided to the Judge and included in the court record so the appellate court is able to review it on any future appeal.

> **Practice Tip**:  An offer of proof preserves the record on appeal when your evidence is excluded in much the same way as a timely objection preserves the record on appeal when your opponent's evidence is admitted.  Fed. R. Evid. 103(a)(2).

# DAMAGES

## Types of Damages

Damages refer to an amount of money compensating a plaintiff for loss or injury and are a key part of any case. There are three general types of damages.

**Compensatory damages.** *Compensatory damages* is a sum of money the jury (or a judge in a bench trial) finds will fairly compensate the plaintiff for the actual loss or injuries suffered as a direct result of the defendant's conduct. Compensatory damages generally include all damages (beyond nominal damages) other than punitive damages. Examples of compensatory damages include lost wages or salary, damages to property, personal injuries and pain and suffering.

**Nominal damages.** There may be a situation where the jury (or a judge in a bench trial) concludes that the defendant violated the plaintiff's rights but that the plaintiff did not suffer any actual injury or damages. In such a case, the jury may award *nominal damages*, which is a token amount of damages (often one dollar), in recognition that while there was a legal wrong, there were no actual damages. For example, you prove that your disciplinary proceeding violated your constitutional rights to procedural due process, but the jury concludes that you suffered no actual harm because the result of the hearing would have been the same even had the procedure been proper. In that case, the jury might award you a nominal amount of damages in recognition that while your rights were violated, you suffered no injury. Nominal damages also might be awarded in a case where you prove an actual injury but fail to prove the amount of damages, for example, where you prove that you were wrongfully terminated but you fail to offer evidence of how much compensation you lost as a result.

**Punitive damages.** *Punitive damages* is a sum that may be awarded at the jury's discretion (or in a judge's discretion in a bench trial) separate from, and in addition to,

compensatory or nominal damages.  Punitive damages are awarded not to compensate the

plaintiff but rather to punish the defendant for extreme or outrageous conduct or to deter the

defendant from acting unlawfully in the future.  Punitive damages are not available in every type

of case, and even when they are, courts generally disfavor them and typically award them only in

cases involving the most outrageous or extreme conduct.

**Proving Damages**

    Generally, the burden of proof is on the plaintiff to prove that it was injured, the

extent of the injury, and the amount of its damages.  The plaintiff should offer as much evidence

as possible (without being duplicative) to establish the extent of any injury and the amount of

damages it suffered.  An expert witness is often helpful in proving damages.  If punitive damages

are sought, the plaintiff must show that the defendants' conduct was particularly extreme or

outrageous.  Here are examples of damages in two cases.

    **Damages in an excessive use of force case.**  You present evidence that two

correction officers brutally beat you.  You need to describe in detail how you were injured as a

result of the beating.  You should describe what it felt like when you were beaten and the

physical injuries to your body that you could see and feel, whether you suffered any permanent

injuries or are in continuing pain.  Other witnesses, in particular a doctor, should testify about

what they observed as to your injuries.  If available, you should introduce photographs of your

injuries and any medical records that describe your injuries or continuing pain.  If you suffered

emotional trauma (e.g., flashbacks, nightmares, etc.), you could have a psychologist, psychiatrist,

or therapist testify about those injuries.  You could also have a friend testify about the changes

they observed in your behavior after the incident.  If you can prove that the defendants acted in a

particularly malicious or outrageous manner, you might be able to prove that punitive damages

should be awarded as well.

83

**Damages in an employment discrimination case.** You establish that your manager discriminated against you while you were employed and eventually fired you because you became pregnant. You should testify about the acts of discrimination that you suffered while you were employed and the circumstances surrounding your firing. You should testify about how much money you earned at your job before you were fired and what has happened to your income and lifestyle since being fired. For example, you should describe how long it took to find another job, how difficult it was for you to live without any income, and the extent your responsibilities, benefits, seniority, or salary were diminished in any way. You should submit evidence of your lost compensation (to the time of the trial and into the future), both as a result of the discrimination while you were employed as well as following your termination. You should offer evidence of any humiliation, embarrassment and emotional pain and distress you suffered as a result of your treatment and firing. If you can prove that the defendants acted in an especially outrageous way or have a history of discriminatory conduct, you might be awarded punitive damages to punish the defendants, in addition to compensatory damages.

> **Practice Tip:** You and your witnesses, if any, should be as precise and descriptive as possible in describing your injuries. Do not just say, *"I felt bad,"* or *"I was hurt."* Describe in detail how you felt so the jury understands and appreciates your injury. For example, *"I had a throbbing pain in my arm, which lasted for eight days," "I could see blood in his eye," "I couldn't walk for four weeks,"* or *"My arm was dangling from its socket."*

## Relief Beyond Damages: Injunctions

In certain situations, you might be entitled to *equitable relief*, in addition to, or instead of, damages. Equitable relief refers to a category of remedies a court may award separate and apart from damages, the most common of which is an *injunction*. An injunction typically directs someone to perform some act or forbids someone from doing something. For example, if you prevail in an action where you claim that a correctional facility violated your constitutional

rights by not providing you access to the law library, the court might direct that the facility provide you access to the library in the future.  Similarly, if you prove that you were terminated from your job because you were pregnant, the court might order that you be reinstated to your former position, that your employer not discriminate against you in the future, and that it institute new policies intended to prevent future acts of discrimination against pregnant women.  If you are seeking an injunction or some other type of non-monetary relief, understand what, if any, additional evidence you must submit to be awarded that relief (or what evidence you must rebut if you are the defendant).

> **<u>Practice Tip</u>:**  A plaintiff at trial is responsible for proving both <u>liability</u> (that the defendant acted wrongly) and <u>damages</u> (that as a result of the defendant's wrongful conduct, the plaintiff has been harmed and suffered damages).  The defendant, likewise, should put on evidence rebutting both.

## RESTING PLAINTIFF'S CASE

If you are the plaintiff, once you have finished calling your last witnesses and submitted all of the evidence you need to tell your side of the story, you should stand and say to the Judge, "*I rest my case, Your Honor.*"  At that point, and subject to rebuttal (see p. 89), your case is closed and, barring exceptional circumstances, you may not call additional witnesses or seek to admit additional exhibits.

> **Practice Tip**:  Before resting your case (and preferably during a break prior to your final witness completing his or her testimony), take a moment to ensure that you have submitted all of the evidence that you want the jury (or a judge in a bench trial) to consider and satisfied each element of your claims.  You want to avoid resting your case, only to discover later that a key document or piece of anticipated testimony was never entered into evidence.

## DEFENDANT'S CASE

### Defending a Claim

If you are the defendant, you should approach your side of the case in much the same manner as the plaintiff. As a defendant, you will have your own theory of the case, and your goal is to tell your version of the story, putting together as much evidence as you can to support your version of the disputed facts and attacking the plaintiff's version of those facts. You want to persuade the jury that your version of the facts is more believable than the plaintiff's version. You want to convince the jury that the plaintiff did not meet its burden of proof or, if it did, that the plaintiff was not injured or suffered only a small amount of damage.

> **Practice Tip:** The defendant presents its evidence in the same manner, and subject to the same rules and limitations, as the plaintiff presented its evidence.

Because the plaintiff has the burden of proof in a civil case, the defendant is typically not obligated to do anything at trial. If the defendant does not believe that the plaintiff has proven the elements of the claims asserted after the plaintiff rests its case, the defendant may make a motion for judgment as a matter of law. Fed. R. Civ. P. 50(a); see pp. 90-91. Even if that motion is denied, the defendant may rest its case without presenting any evidence, and the trial will proceed to closing arguments. See pp. 92-94. The jury will return a verdict for the defendant if it concludes that the plaintiff failed to satisfy the burden of proving its claims. Absent a complete failure of the plaintiff in proving its case, however, it is a rare (and a risky) strategy for the defendant to not submit at least some evidence to oppose the plaintiff's case.

At the conclusion of the defendant's case, the defendant will stand and advise the Judge that it rests its case, in much the same way the plaintiff rested. See p. 86.

## Burden of Proof

Although the plaintiff in a civil action typically has the burden of proving its claims (<u>see</u> p. 34), the defendant may have the burden to prove certain matters.  In some cases, for instance, the burden of proof may "shift" to the defendant after the plaintiff has presented evidence proving certain elements of its claim.  Once the burden of proof shifts to the defendant, the defendant must present evidence to support its defense.  For example, in a case alleging discrimination under Title VII, the plaintiff has the initial burden to show facts that, on their face, suggest intentional discrimination.  If the plaintiff does so, the burden shifts to the defendant to come forward with a legitimate, non-discriminatory reason for its actions.

Another example of the defendant's having the burden of proof is in the case of certain defenses that require the defendant prove the elements of the defense at trial.  For instance, the defendant may admit that it injured the plaintiff but argues that it did it in self-defense.  The defendant has the obligation to prove that it acted in self-defense.  The plaintiff has the same opportunities to cross examine and object to the defendant's questioning of witnesses and evidence as the defendant had when the plaintiff presented its case.

> **Practice Tip:**  If the defendant has asserted claims against the plaintiff, called *counterclaims*, the defendant has the burden of proof to prove those claims.

# REBUTTAL

*Rebuttal* is the final stage of presenting evidence at a trial.  After the defendant finishes putting in its evidence and rests, the plaintiff generally has the opportunity to submit evidence to undermine or explain the defendant's evidence.  This evidence is called rebuttal evidence.  Rebuttal is limited.  The plaintiff may not put in evidence simply restating its case again or submit evidence that it forgot to put in during its direct case.  Rebuttal is limited to countering the defendant's evidence.  For example, a rebuttal witness might testify that the defendant's witness could not have seen the events to which he testified because the witness was not in the facility or the office on the day in question or that the defendant's witness is biased or prejudiced.  Not all cases have a rebuttal.  Often times, evidence rebutting the defendant's case is introduced during the plaintiff's cross examination of the defendant's witnesses thereby rendering separate rebuttal necessary.  The Court has discretion as to what it will allow on rebuttal to prevent the plaintiff from simply rehashing its direct case.

## **TRIAL MOTIONS**

### **Judgment as a Matter of Law**

After a party has been fully heard on an issue, and at any time before the case is submitted to the jury, a party may argue to the Judge that the opposing party has not submitted enough evidence to prove its case.  This is called a motion for *judgment as a matter of law*.  Fed. R. Civ. P. 50(a).  This motion is often made by the defendant at the close of the plaintiff's case (<u>see</u> p. 87), or by either party at the close of all of the evidence.  If the Judge grants a motion for judgment as a matter of law, it will end the trial, and the Judge will enter the appropriate judgment without the involvement of the jury.

In a motion for judgment as a matter of law, the Judge does not weigh the evidence, or determine whose evidence is more persuasive; that is the role of the jury at the close of evidence in a jury trial.  Rather, if the defendant moves for judgment as a matter of law, the Judge determines whether the plaintiff has offered evidence supporting each element of the claims asserted.  If the Judge determines that the plaintiff has failed to submit adequate evidence, no reasonable jury could find in favor of the plaintiff with regard to those particular claims, and the defendant is entitled to judgment as a matter of law.  On the other hand, if at the close of all of the evidence, the plaintiff moves for judgment as a matter of law, the Judge determines whether the plaintiff has submitted evidence supporting each element of its claims, and if the evidence is not contradicted by evidence submitted by the defendant, no reasonable jury could find in favor of the defendant, and the plaintiff is entitled to judgment as a matter of law.  A party may move for judgment as a matter of law on all of the claims or only some of them.  Likewise, the Judge may sometimes grant a motion for judgment as a matter of law on only some of the claims, allowing other claims for which there is competing evidence (even if the evidence is one-sided) to be decided by the jury.

**<u>Practice Tip</u>:**  A party may renew its motion for judgment as a matter of law after the jury's verdict if the party believes that the verdict is not supported by the evidence.  <u>See</u> p. 109.  A party, however, may not renew its motion for judgment as a matter of law after the trial unless it made the motion initially during the trial. Fed. R. Civ. P. 50(b).

**<u>Example</u>:**  If the plaintiff claims that it was denied medical treatment by a prison guard, but on direct, cross and rebuttal the plaintiff could only prove that his or her visit to the doctor was delayed by five minutes, the Judge may find that the plaintiff failed to meet an essential element of the claim and grant the motion for a judgment as a matter of law in favor of the defendant.

**<u>Example</u>:**  If the plaintiff claimed that it was fired because of its race but failed to introduce any evidence showing that race was a factor in its termination and the defendant offered evidence that the plaintiff was fired for non-discriminatory reasons (<u>e.g.,</u> a poor attendance record, bad work ethic, poor evaluations), the Judge may find that the plaintiff failed to meet an essential element of its claim and grant judgment as a matter of law for the defendant.

## <u>Judgment on Partial Findings</u>

The Judge in a bench trial also has the ability to enter judgment on behalf of a party, known as a *judgment on partial findings*.  Fed. R. Civ. P. 52(c).  The Judge applies the same standards as a judgment as a matter of law under Federal Rule of Civil Procedure 50(a).

# CLOSING ARGUMENT

## Making an Effective Closing Argument

After both parties have submitted all of their evidence, each side has the right to make a closing argument, or *summation*.  While the defendant often makes its closing argument first, and the plaintiff follows and has the last word, the practice varies by judge.  Just as you prepared your opening statement in advance of trial, you should also write out your closing argument before trial so you are able to organize your thoughts and what you want to tell the jury.  After the close of evidence, you can revise your closing argument to make sure that it is consistent with the evidence that was actually admitted during the trial.  Like opening statements, the Judge may place time limits on closing arguments.

> **Practice Tip:**  In your closing argument, you may only discuss matters that have been admitted into evidence.  If you failed (or forgot) to elicit particular testimony or to have a particular exhibit admitted into evidence, or if the Court did not allow certain evidence to be admitted, you may not refer to that evidence during your closing argument.

The closing argument is your final chance to address the jurors before the Judge instructs them on the law of the case and they begin deliberations.  In many ways, your closing argument will track your opening statement.  In your opening statement, you previewed the evidence for the jury.  See pp. 27-31.  During your closing argument, you should tell the jury a logical and coherent story of what happened, referring to the evidence that was admitted during the trial and making clear how it supports your theory of the case.  Keep your closing argument brief and to the point so the jury does not get lost in details or unimportant points.  You will know the questions on the verdict form that the jury will have to answer in their deliberation, see pp. 102-03, and lawyers will often discuss in their closing arguments how they believe the jury should answer those questions (e.g., "*On the verdict form you will be asked the following*

*question, 'x', and I submit the answer to that question should be 'y'"*).  If you are the plaintiff, do not forget to argue how you were harmed, the types of damages you seek, and why the jury should award you those damages.

> **Practice Tip**:  When discussing damages for items that are not easily quantifiable, such as pain and suffering, you may not suggest to the jury specific dollar amounts or precise ways to arrive at those amounts (<u>e.g.</u>, $182,500 based on $25 a day for twenty years of pain and suffering).  Instead, you might point the jury towards the evidence at trial that supports an award for pain and suffering and remind it that you are entitled to be fairly and reasonably compensated for that pain and suffering.

In your closing argument, you should keep in mind the following points:

- Provide a chronological narrative (story) of your case, similar to the opening statement.  This time, however, provide more detail.  Be specific and highlight any specific testimony or evidence in your favor.  Use direct quotes if possible and show the jury any particular exhibits that support your main points.

> **Example**:  *You heard Mr. Smith say that he was not involved in the decision to fire me and objected to my being fired.  You, however, heard testimony from Mr. Wynn, one of my former co-workers – currently employed by the defendant and who has nothing to gain and everything to lose by testifying on my behalf – sit in this court yesterday, in front of his boss, Mr. Smith, and testify that the day Mr. Smith heard that I was pregnant he said that he "wished they could fire all pregnant women."*
>
> *You also heard testimony that days before I was terminated, I filed a complaint with the EEOC.  You remember that I showed you an email from Mr. Smith to his boss the morning that I was fired [show email to jury again] saying that he "could not trust any person who would file a complaint with the EEOC."  Mr. Smith would have you believe that it was a coincidence that I was fired hours after he sent that email.  That seems unlikely, doesn't it?*

- Remember that many of the facts of the case may not be disputed by the parties.  Focus on the facts that are in dispute and attempt to convince the jury how the evidence supports your version of the disputed facts more than your opponent's version.

- Argue the strengths of your case, rather than focusing on your opponent's weaknesses.  Your emphasis should be on why you should win, not why your opponent should lose.

- At the same time, to the extent you are able to, explain why any weaknesses in your case should not prevent the jury from ruling in your favor.

- If in the opening statement your opponent promised the jury that it would submit important evidence that was never introduced, spotlight this broken promise.

> **Example:**  *You heard the defendants say in their opening statement that you would hear the testimony of a witness who would tell you that on two occasions I had provided incorrect information for an important year end report Mr. Smith was responsible for.  You heard no such testimony, because the fact is that never occurred.*

- If applicable, comment on the credibility of witnesses, both yours and those of your opponent.  You do not have to argue that a witness lied but rather might ask the jury whether a particular witness has a motive to be less than truthful about what he or she witnessed (e.g., the defendant is the witness's supervisor or colleague).  On the other hand, if you have put up a witness who has nothing to gain by lying or risks retribution for his or her testimony, remind the jury of that fact in order to bolster that witness's credibility.

> **Example:**  *You heard Ms. Collins testify that she has never seen Mr. Smith discriminate against women.  Now, you also heard that Ms. Collins, who took my place following my termination, was paid a substantial bonus last year (more than I was ever paid in ten years) and that Mr. Smith was responsible for determining that bonus.  That does not put Ms. Collins in a position to be critical of Mr. Smith or to testify objectively about how he treats women, does it?*

## Objections to Closing Arguments

Objections may be made during closing arguments, although they are not common.  Objections to closing arguments include the following:

- **Misstating evidence.**  It is objectionable during closing arguments to misstate the evidence admitted during the trial.

- **Referring to excluded evidence.**  For example, if a judge has excluded evidence about what a witness told their spouse about an incident, that evidence may not be referenced during closing arguments.

- **Giving personal opinions.**  As in opening statements, it is objectionable for a lawyer to tell the jury his or her personal opinion during closing arguments.

## SETTLEMENT

### A Case Can Settle at Any Time

Settlement is a compromise between parties in a civil case and may occur at any time.  It is up to each party to decide whether, and on what terms, it is willing to settle the case.  The vast majority of cases settle, most before trial.  Other cases settle after the jury is impaneled and the parties evaluate whether they think they have a favorable jury.  If it appears that the plaintiff has met its burden of proof, the defendant may try to settle the case before the jury begins its deliberations.  Still other cases settle after jury deliberations begin.  You should consider any serious offer of settlement, regardless of when it is made.  There is no guarantee that the jury (or a judge in a bench trial) will find in your favor, no matter how well you think you are doing at trial, or even if it does, that it will award you the damages you seek.  Even if the jury finds in your favor, it may conclude that you failed to prove damages or that you are entitled only to nominal damages.  <u>See</u> p. 82.

> **Practice Tip**:  Settlement eliminates the cost, delay and effort of litigation, as well as the uncertainty and the risk that you will lose the case and get nothing.

Even if you win at trial and recover the damages you seek, your opponent has the right to appeal, and the appellate court may reverse the decision of the district court or reduce the damages you were awarded.  With that in mind, you might consider an offer to settle even following a favorable verdict to avoid the risk that the judgment will be reversed on appeal, or to finally resolve the matter sooner and for a reduced amount, rather than waiting for the outcome of the appeal, which could take many months.

> **Practice Tip**:  If you are incarcerated, any settlement in excess of $10,000 could be subject to New York's "Son of Sam" Law. N.Y. Executive Law § 632-a.  That law is intended to compensate certain "victims" of your crimes.  The Crime Victims Board must be notified of any settlement (or judgment) in excess of $10,000,

and it will then attempt to notify victims of your crimes that you have come into an amount of money. Those victims have a period of time to file a lawsuit for damages against you. If they file such a suit or even if they state that they want to consider filing such a suit, the settlement (or judgment) proceeds (other than $1,000) may be restrained and not paid to you until the claims of the alleged victim are resolved.

## __Settlement Negotiations__

During settlement negotiations, if you are the plaintiff, you should have in mind a minimum amount that you believe would compensate you for your loss, as well as the maximum amount you believe you could obtain if you tried the case to verdict and won. You can do this by listing all the expenses, medical or otherwise, associated with your injuries. If you are seeking some amount based on lost compensation, list out exactly what compensation you have lost. Your calculation of damages should be very specific to prepare for negotiating with your opponent as well as presenting your case to a jury, where it will be your burden to prove the amount of damages you suffered. <u>See</u> p. 83. Remember that compensatory damages are intended to compensate you for your loss and "make you whole," not be a windfall. Be realistic about the amount of damages you are seeking and how much will compensate you for your loss.

> __Practice Tip__: In settlement discussions, you may also want to seek payment for certain costs that you have incurred in litigating the case, such as the cost of transcripts and filing fees (if you are not proceeding *in forma pauperis*). <u>See</u> p. 109.

Once you determine the minimum amount that would compensate you for your loss and the maximum amount you believe a jury might award you, you should step back and objectively consider the strength of your claims and the likelihood of your winning at trial and the jury awarding you the damages you seek. Your likelihood of success depends on, among other things, the strength of your evidence, the credibility of your witnesses, and the makeup of your jury. Keep in mind in evaluating the strength of your case that it is not so much what really

96

happened but rather what you will be able to prove happened through admissible evidence and what the jury (or a judge in a bench trial) will believe happened.

> **Example:**  One rough way to calculate what a reasonable settlement might be is to multiply what you believe the likelihood of your winning at trial is by the amount of damages you believe a jury would award you if you were to prevail.  For instance, if you believe you have a 25% chance of winning at trial and that a jury would award you $10,000, a settlement of $2,500 might make sense.

If you are the defendant, you should engage in a similar analysis to determine whether a particular settlement makes sense.  Of course, if you are the defendant, you must also consider your ability to pay a settlement and the risk of loss if you do not settle and the jury enters a verdict against you.

> **Practice Tip:**  In making and accepting a settlement offer, both parties are making calculated guesses about what the jury (or a judge in a bench trial) will decide and the likelihood they will win at trial.  These guesses may or may not be accurate.  A popular expression is that a good settlement is one that leaves both sides unhappy – because both parties typically give up something in order to get the certainty of a settlement.

Evidence of settlement negotiations, or of a settlement offer, is generally inadmissible at trial, so you should not be concerned that your opponent will argue to the jury that you believe that your case is weak because you considered settlement or made a settlement offer.  See p. 39.

**Written Agreement**

If you reach a settlement with your opponent, it should be reduced to a written agreement and signed by all the parties.  Oral agreements, while valid and enforceable, should be read into the record at trial to reduce the likelihood of a later dispute over exactly what was agreed to by the parties.  If there are settlement discussions going on during a jury trial, the Judge will not want to keep the jury waiting for extended periods of time while the parties discuss

settlement, thus any discussions will generally take place during breaks in the trial. You should have a checklist of items to be included in any settlement prepared in advance of trial so if discussions occur, you will have in mind what you are looking for, and if an agreement is reached with your opponent, a written agreement can be drafted quickly or the agreement can be read into the court record. A settlement generally includes a separate release in which the parties waive their right to bring any other lawsuit or proceeding related to the claims in the lawsuit.

Once the parties have a signed settlement agreement, they may submit it to the Judge to approve it, although there generally is no obligation to do so. The parties will have to file, however, a Stipulation and Order of Dismissal to the Court to dismiss the lawsuit as settled.

**<u>Offer of Judgment</u>**

A party may make an *offer of judgment* 14 days or more before the trial is set to begin. The party receiving the offer must decide whether to accept it within 14 days of its receipt. If the party rejects the offer and the case proceeds to trial, it may have to pay the costs incurred by the offering party if the offer turns out to be more than the judgment awarded after trial. <u>See</u> Fed. R. Civ. P. 68. For example, 20 days before trial, the defendant makes an offer to the plaintiff of $10,000 to settle the case. The plaintiff rejects the offer and proceeds to trial. At trial, the jury awards the plaintiff damages of $1,000. Because the defendant's offer was more than the judgment awarded to the plaintiff, the defendant may seek to recover from the plaintiff the costs the defendant incurred after making the offer, even though it lost at trial.

> **<u>Practice Tip</u>:** Costs typically include items such as trial transcripts and, if used at trial, deposition transcripts. Local Rule 54.1(c); <u>see</u> p. 108. If the case is one in which the relevant law (e.g., a civil rights action under 42 U.S.C. § 1983) categorizes attorneys' fees as costs, such costs might also include attorneys' fees accrued from the Offer if Judgments as well.

**<u>Settlement After the Jury Is Impaneled</u>**

The Judge may assess the parties the cost of one day's attendance of the jurors if a case is settled after the jury has been summoned or during trial.  Local Rule 47.1.  This cost, although not much, is intended to encourage the parties to consider settlement before the time, expense and inconvenience of impaneling a jury is incurred.

## SENDING A CASE TO THE JURY

### Charging Conference

After the close of the evidence, but before closing arguments (see pp. 92-94), the Judge will typically meet with the parties to go over how the Judge intends to *charge*, or instruct, the jury. At this charging conference, the Judge typically reviews with the parties the jury instructions and verdict form the Judge intends to provide to the jury. You will have the opportunity to object to any part of the jury instructions and verdict form with which you disagree. If you make an objection to the jury instructions or verdict form, you should explain the basis for your objection and be prepared to offer alternative instructions or different questions for the verdict form.

### Jury Instructions

After closing arguments, the Judge will instruct the jury on the relevant law, how this law must be applied to the facts of the case, and the specific questions the jury will be required to decide. This is called the *jury instructions,* or the *jury charge*. As a general rule, the jury instructions will:

- inform the members of the jury of their role in the case;

- explain which party has the burden of proof;

- explain the role of the evidence presented, the weight to be given to various types of evidence, and the permissible and impermissible inferences to be drawn from the evidence;

- explain any limitations on the use of the evidence presented by the parties at trial; and

- explain the elements of each claim and the defenses available to the defendant.

You generally will have had the opportunity to submit proposed jury instructions to the Judge prior to trial. See pp. 15-17. The Judge will review the proposed jury instructions

submitted by the parties to help decide what to tell the jury about the law in your case. The Judge, however, is not obligated to use either party's proposed jury instructions in charging the jury. As discussed above, the parties will have the opportunity to review the final jury instructions with the Judge during the charging conference.

**Verdict Form**

Along with the jury instructions, the Judge will give the jury a *verdict form*. This is a set of "yes or no" questions that the jurors must answer during deliberations. Again, you and your opponent will typically have had the opportunity to submit to the Judge proposed verdict forms in advance of trial. See pp.15-17. The Judge will review the proposed verdict forms in preparing the final verdict form provided to the jury and will review with you the final verdict form during the charging conference.

**Jury Deliberations**

After the Judge finishes instructing the jury, the jury is sent to a room, guarded by the United States Marshal Service, to *deliberate*, or discuss your case. This will be the jurors' first chance to discuss the case among themselves. No one, including the Judge and the parties, is permitted to attend or witness the jury deliberations. During their deliberations, jurors are not permitted to speak to anyone, other than each other, about your case.

If the jurors have a question, they will write a note to the Judge asking for guidance (e.g., seeking clarification of the law) or to be provided with something (e.g., an exhibit or to have testimony read back to them). If the Judge receives a note from the jury, the Judge will call the parties back to the courtroom and read the question aloud. The Judge will then either discuss how he or she plans to answer the jury's question or ask for suggestions from the parties as to what should be said or given to the jury. If you disagree with how the Judge intends to respond to the jury's request, you must immediately tell the Judge and explain why you object.

> **Practice Tip:** You must make yourself available to the Court at all times while the jury is deliberating because of instances such as those described above. Because deliberations can be lengthy, it is best to bring someone who can stay in the courtroom while the jury is deliberating to free you to get lunch or attend to other personal matters. If you must leave the courtroom, always let the courtroom deputy know how you can be reached.

## Jury Verdict

Once the jury has reached a decision, the jury *foreperson,* the spokesperson for the jury, will inform the Court. The Judge will then call all the parties back to the courtroom. The jury's decision is called the *verdict*. Unless the parties otherwise agree, the verdict must be unanimous, and no verdict can come from a jury of less than six jurors. Fed. R. Civ. P. 48(b). When the jury returns to the courtroom, the Judge will ask the foreperson if the jury has reached a verdict. If the answer is yes, the Judge will ask to see the verdict form and then ask the foreperson to confirm the jury's answers to each of the questions on the verdict form.

If the jury foreperson tells the Judge that the jury has not been able to reach a unanimous decision, the Judge in the first instance often will send the jury back for further deliberations in an effort to reach a decision. If the jurors ultimately are unable to agree on a unanimous verdict, a situation known as a *deadlocked* or *hung jury*, the Judge will declare a *mistrial*. When a mistrial is declared, the case is not decided, the Judge dismisses the jury, and the case is retried from the beginning before a new jury at a future date. Following a mistrial, if the plaintiff decides not to pursue the case, there would not be a new trial.

## Polling the Jury

After the verdict has been read, either party (typically the losing party) may ask the Judge for permission to *poll the jury*. Fed. R. Civ. P. 48(c). If the Judge agrees, the Judge will ask each member of the jury how he or she answered the questions posed on the verdict form. Polling a jury is designed to allow the parties to confirm that the jurors have reached a

unanimous decision.  If the polling reveals that the jury was not unanimous in the verdict, the Judge may direct that the jury deliberate further or may declare a mistrial and order a new trial. Fed. R. Civ. P. 48(c).

**Findings of Fact and Conclusions of Law**

In a bench trial, the Judge will render a verdict and issue findings of fact and conclusions of law upon which the Judge bases the verdict.  Fed. R. Civ. P. 52(a).  The findings of fact must indicate the facts on which the Judge relied in making its decision.  The Judge may read its findings and conclusions into the record from the bench after the close of evidence or may set them out later in a written opinion.  Fed. R. Civ. P. 52(a)(1).

# JUDGMENT

## Entry of the Judgment

After the jury (or a judge in a bench trial) issues a verdict, a document called a *judgment* is prepared by the judgment clerk and entered on the court docket. Fed. R. Civ. P. 58. The judgment is a document containing the formal decision in a case and closes the action in the district court. If you have won at trial and been awarded damages, the judgment will contain the amount of damages you have been awarded. The entry of the judgment on the court docket begins the time for the parties to file an appeal from the judgment. The court clerk will provide you with notice of the entry of the judgment, although the time to appeal begins to run from the date the judgment is entered, not when you receive notice of entry, so you should keep track of the court docket to confirm when the judgment is entered. Fed. R. Civ. P. 77(d).

## Enforcing the Judgment

If the verdict is in your favor and you have been awarded damages, you may not take steps to collect those damages (referred to *enforcing* or *executing on the judgment)* until 14 days after the judgment has been entered on the court docket. Fed. R. Civ. P. 62(a). After 14 days, if the judgment has not been *stayed* (that is, the Court has delayed your ability to enforce the judgment (see pp. 105-06), you may take steps to enforce the judgment. The person who owes you damages is referred to as a *judgment debtor*. If the judgment debtor refuses to comply with the judgment and pay you the damages you have been awarded, you may file a *writ of execution* with the court clerk. Fed. R. Civ. P. 69(a)(1). A writ of execution is a court order that directs a United States Marshal to take possession of property owned by the judgment debtor to pay the damages owed to you. The Marshal will attempt to enforce the judgment if you complete a United States Marshal 285 form. The Marshal will request advance payment of the

estimated fees and expenses for serving a writ of execution. Any unused amounts will be returned to you upon enforcement of the judgment.

> **Practice Tip:** If the judgment debtor complies with the judgment (i.e., pays the judgment), you do not have to go through the process of enforcing the judgment.

## Stay of the Judgment

The party losing at trial may file an appeal from the judgment to the United States Court of Appeals for the Second Circuit or may file various post-trial motions with the District Court challenging the judgment. See pp. 110-119. These acts alone, however, do not automatically stay the judgment or prevent a party from enforcing the judgment and collecting the damages awarded. Unless the Judge directs otherwise, a party may take steps to enforce the judgment beginning 14 days after the judgment has been entered on the court docket, while any appeal or post-trial motions proceed.

A party filing an appeal, however, is entitled to a stay of the enforcement of the judgment if it files a bond with the Court. Fed. R. Civ. P. 62(d). Requiring that a bond be filed helps prevent frivolous appeals and protects a plaintiff's ability to collect a judgment in its favor while the defendant exercises its right to appeal. The amount of the bond will usually be the amount of the damages awarded in the judgment, plus interest, although the Court has the discretion to set the bond at a lower amount. The stay of the judgment is effective when the bond is approved by the Court. Fed. R. Civ. P. 62(d). If the losing party does not, or is unable to, post a bond approved by the Court, the winning party may take steps to enforce the judgment while any appeal proceeds.

> **Practice Tip:** If the judgment is for a substantial amount or the defendant has limited assets, the defendant may find it difficult to file a bond. The surety company or bondsman that issues the bond does not want to assume the risk of the defendant not ultimately paying the judgment, thus typically requires collateral (i.e., cash or

other valuable assets) in the full amount of the bond. For example, if the Court requires a $10,000 bond, the surety company will typically require $10,000 in collateral (in addition to the payment of a premium) to post the bond.

A party filing a post-trial motion challenging the judgment, see pp. 110-114, may also ask the Court to stay the judgment pending the determination of that motion. Fed. R. Civ. P. 62(b). The Court has the discretion to stay the judgment and, if it grants a stay, to set the conditions of that stay, including whether the party seeking the stay must post a bond. Fed. R. Civ. P. 62(b). If the Court does not grant a stay, a party may take steps to enforce the judgment while any post-trial motions challenging the judgment proceed.

> **Practice Tip:** If you are the defendant and you lose at trial and damages are awarded to your opponent, even if you intend to appeal or otherwise challenge the judgment, you must quickly seek to stay the judgment. If you do not, your opponent will be able to take steps to execute on the judgment, including seizing your property or garnishing your wages, even as you proceed on an appeal or motion to challenge the judgment.

## Registration of the Judgment

If the judgment debtor has assets or property outside of the Southern District of New York, for example, in Brooklyn or New Jersey, and you wish to seize that property to recover the damages owed to you, you must register the judgment in the district court where the assets or property are located by filing a *Certification of Judgment*, which is prepared by the judgment clerk, in that court. 28 U.S.C. § 1963. Registration of the judgment is not necessary if the assets you are seeking to seize are within the Southern District of New York. A Certification of Judgment cannot be prepared, however, until the judgment becomes final following appeal or the time to appeal from judgment has expired (i.e., typically 30 days after it is entered on the docket). Any appeal from the judgment or post-trial motion that challenges the judgment and

suspends the time to appeal will therefore delay the judgment from being registered in another district court.

## Satisfaction of the Judgment

If you are the defendant and a judgment was entered against you and you have paid it, you should file a *Satisfaction of Judgment* with the district court, indicating that the money judgment has been paid in full.  Local Rule 54.3.  This is important because your wages may be garnished in the future if you cannot prove that you have satisfied the judgment.

# COSTS

## Recovering the Costs of a Trial

The Judge may make the losing party at trial pay certain *costs* incurred by the winner in connection with the trial. Fed. R. Civ. P. 54(d). The costs that the winner at trial is generally entitled to recover are set by statute and include (1) the cost of the trial transcript; (2) certain deposition expenses; (3) certain costs and fees related to trial witness and exhibits; and (4) court-related fees. Fed. R. Civ. P. 54(d); Local Rule 54.1(c). Costs should not to be confused with attorneys' fees. The parties are responsible for their own attorneys' fees unless a specific statute or rule provides otherwise.

If you win at trial and seek to recover your costs, you must file a *bill of costs* with the Court within 30 days after the judgment is entered or, if an appeal is taken, within 30 days after the appeal is decided. Local Rule 54.1(a). The bill of costs is a list of the specific costs you seek to recover, including copies of supporting bills, receipts, and canceled checks. Fed. R. Civ. P. 54; Local Rule 54.1. The losing party may object to any item in the bill of costs by filing a written objection with the Court. Local Rule 54.1(b).

## Recovering Attorneys' Fees

The general rule in the United States is that each party pays its own legal expenses. There are several exceptions to this rule, including certain civil rights cases, where the Court may make the losing party pay the other party's reasonable attorneys' fees. A *pro se* plaintiff, however, is not entitled to recover attorneys' fees because by definition he or she is not represented by an attorney.

## POST-TRIAL MOTIONS

### Renewed Motion for Judgment as a Matter of Law

During the trial, you had the right to make a motion for judgment as a matter of law, arguing to the Judge that the evidence was so one-sided that no reasonable jury could find against you.  See pp. 90-91.  After a jury trial, if you believe that the jury has made a serious mistake in weighing the evidence and the Court previously denied your earlier motion for judgment as a matter of law, you may make a renewed motion for judgment as a matter of law. Fed. R. Civ. P. 50(b).  The post-trial renewed motion for judgment as a matter of law is limited to the issues raised in your earlier motion for judgment as a matter of law made during trial.

A renewed motion for judgment as a matter of law must be filed within 28 days after entry of the judgment.  Fed. R. Civ. P. 50(b).  The renewed motion is subject to the same standard as the original motion; you must prove that the jury's verdict was not supported by the evidence.  See pp. 90-91.  In ruling on your motion, the Court may (1) refuse to disturb the verdict; (2) order a new trial; or (3) direct that judgment be entered in your favor as a matter of law.  Fed. R. Civ. P. 50(b).

If you file a timely renewed motion for judgment as a matter of law with the *Pro Se* Office, your time to file a Notice of Appeal under the Federal Rules of Appellate Procedure ("Fed. R. App. P.") does not begin to run until that motion is decided.  Fed. R. App. P. 4(a)(4)(A)(i).

> **Practice Tip:**  If you did not make a motion for judgment as a matter of law during the trial, but following the trial you believe that the evidence does not support the verdict, you may make a motion for a new trial under Federal Rule of Civil Procedure 59(a). The standard for granting judgment as a matter of law is very similar to the grounds for granting a new trial, and the two motions are often made together.  See Fed. R. Civ. P. 50(b).

## Motion to Amend Findings of Fact and Conclusions of Law

In a bench trial, the Judge issues findings of fact and conclusions of law upon which the verdict is based.  <u>See</u> p. 103.  Within 28 days after entry of the judgment, you have the right to make a motion to amend those findings or conclusions and amend the judgment consistent with any new findings or conclusions.  Fed. R. Civ. P. 52(b).  You cannot merely reargue your case in a Rule 52(b) motion.  The grounds for amending a judge's findings of fact and conclusions of law include:  (1) newly discovered evidence; (2) a change in the law; or (3) a significant error of fact or law by the judge.

This motion is often made together with a motion for a new trial under Federal Rule of Civil Procedure 59(a) (<u>see</u> Fed. R. Civ. P. 52(b)), and if timely filed with the *Pro Se* office, will stay the time to file a Notice of Appeal.  Fed. R. App. P. 4(a)(4)(A)(ii).

## Motion for a New Trial

After a jury or bench trial, either party may make a motion for a new trial, arguing that the first trial was somehow seriously flawed.  Fed. R. Civ. P. 59(a).  A party may seek to have the entire case retried or only certain claims retried.  If the Judge grants a motion for a new trial, a new trial will be held with a new jury, and the trial will be conducted as if the first trial never occurred.

In a motion for a new trial after a jury trial, the Judge generally will not overturn the jury's verdict unless, after reviewing all of the evidence, the Judge is firmly convinced that the jury has made a serious mistake or there was some other misconduct that significantly affected the rights of the parties and could have affected the outcome of the trial.  The Court may grant a new trial if:

- the verdict is against the weight of the evidence;
- the award of damages is excessive or inadequate;

- there is newly discovered evidence;

- there was improper conduct by counsel (or the *pro se* party) or the Court; or

- there was improper conduct affecting the jury (<u>e.g.</u>, the jury was improperly influenced, or there was a faulty jury instruction).

> **<u>Practice Tip</u>:**    The term *newly discovered evidence*, used in connection with post-trial motions, means evidence that (1) existed at the time of the trial; (2) was excusably overlooked by a party, notwithstanding that party's efforts to find it; (3) is admissible; and (4) is likely to change the outcome of the trial.  In addition to a new trial under Rule 59(a), newly discovered evidence may also entitle a party to relief from judgment under Rule 60(b), serve as a basis to amend a judge's conclusions of law or findings of fact under Rule 52(b), or result in the final judgment being amended under Rule 59(e).

After a bench trial, the Court may grant a motion for a new trial if a party can establish that the Judge made a clear legal or factual error or that there is newly discovered evidence.  If the Judge grants a motion for a new trial following a bench trial, the Judge need not hold a new trial.  Instead, the Judge may simply reopen the trial record and take additional testimony, amend the Court's findings of fact and conclusions of law, and direct the entry of a new judgment.  Fed. R. Civ. P. 59(a)(2).

Rather than seeking a new trial, a party may instead make a motion to alter or amend the final judgment.  Fed. R. Civ. P. 59(e).  This motion allows the Court to correct errors in the trial without retrying the case.  There are four general bases upon which a court may amend its judgment:

- there is a change in the law since the judgment was entered;

- there is newly discovered evidence;

- the court committed a clear error of law; or

- to prevent a significant injustice.

A motion for a new trial or to alter or amend the final judgment must be made within 28 days after entry of the judgment, and that deadline is strictly enforced. Fed. R. Civ. P. 59(b). If you file a timely Rule 59 motion with the *Pro Se* Office, your time to file a Notice of Appeal does not begin to run until the Judge decides your motion. Fed. R. App. P. 4(a)(4)(A)(iv)-(v).

## **Motion for Relief from the Judgment**

A motion under Federal Rule of Civil Procedure 60(b) does not argue with the reason a court decided the way it did. Instead, the motion asks the Judge not to require that a party obey the judgment. A party may file a motion for relief from the judgment under Rule 60(b) for any of the following reasons:

- mistake, inadvertence, surprise, or excusable neglect;

- newly discovered evidence;

- fraud, misrepresentation, or other misconduct of an adverse party;

- the judgment is void;

- the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

- any other reason justifying relief from operation of the judgment.

The time for making a Rule 60(b) motion depends on the reason for which you are seeking relief. For the first three reasons above, the motion must be made within one year after entry of the judgment. A motion based on the remaining reasons must be made within a reasonable time, within the discretion of the Court, and based on the circumstances. Fed. R. Civ. P. 60(c). Accordingly, if you missed the 28-day time period for making a renewed motion for judgment as a matter of law under Rule 50(b) or for moving for a new trial or to alter or amend

the judgment under Rule 59, you might still be able to seek relief from the judgment under Rule 60(b).

A motion for relief from the judgment under Rule 60(b) suspends the time to file a Notice of Appeal only if it is filed with the *Pro Se* Office within 28 days after entry of the judgment. An otherwise timely Rule 60(b) motion filed more than 28 days after entry of the judgment does not suspend, or affect in any way, the time for filing an appeal from the underlying judgment. Fed. R. App. P. 4(a)(4)(A)(vi).

**Motion to Correct Clerical Mistakes in the Judgment**

If you want the Court to correct a clerical mistake, such as an improperly issued or docketed order (e.g., wrong caption, wrong docket number, etc.), you may file a motion with the *Pro Se* Office seeking to correct the error or omission. Fed. R. Civ. P. 60(a).

## APPEALS

### The Right to Appeal

A party has the right to appeal any final judgment in the Southern District of New York to the United States Court of Appeals for the Second Circuit (the "Second Circuit"). The rules and procedures for appealing a district court judgment are set out in the Federal Rules of Appellate Procedure and the Local Rules of the Court of Appeals for the Second Circuit. See www.ca2.uscourts.gov/clerk/Rules/Rules_home.htm. A detailed discussion of the appeal process is beyond the scope of this Manual, and if you are considering an appeal, you should review those rules carefully.

Generally speaking, if an appeal is taken, the Second Circuit will examine the record of evidence presented in the District Court and the law that the District Court applied and decide whether the Court's decision was legally sound or not. The Second Circuit will typically be deferential to the District Court's findings of fact (e.g., whether a defendant committed a particular act), unless the finding is not supported by any evidence, and so will focus on whether the Judge made an error in interpreting the law or in a procedural ruling during the trial (e.g., admitting a critical piece of evidence over your objection). Any error must have been sufficiently significant so that the Judge or jury reached an incorrect decision as a result of the error. If the sole basis of your appeal is that you simply disagree with the decision of the jury, or a judge in a bench trial, your appeal almost certainly will not be successful.

### Notice of Appeal

In order to appeal following trial, the final judgment must first be entered by the court clerk on the court docket. See p. 104. You must file a *Notice of Appeal* with the *Pro Se* Office within 30 days after the judgment is entered on the docket (or 60 days if the United States,

a federal agency, or federal employee is a party).  Fed. R. App. P. 4(a)(1)(A).  The *Pro Se* Office

will serve the Notice of Appeal on your opponent.

      A Notice of Appeal is a one page document containing your name, a description

of the judgment (or part thereof) being appealed, and the name of the court to which the appeal is

taken (the Second Circuit).  See www.nysd.uscourts.gov/forms.php?f=p.  It does not require you

to make any legal argument.

> **<u>Practice Tip</u>:**  Once you file a Notice of Appeal, the District
> Court no longer has jurisdiction over your case, and all
> questions regarding the case or the Second Circuit's procedures
> should be addressed to the Clerk of the Second Circuit.  There is
> no *Pro Se* Office in the Second Circuit, and the Southern District
> *Pro Se* Office cannot answer questions regarding Second Circuit
> procedure.
>
> The office of the Clerk of the Second Circuit is located in Room
> 370 of the Daniel Patrick Moynihan Courthouse at 500 Pearl Street
> in Manhattan.  The telephone number of the Clerk's Office is (212)
> 857-8500.

      The deadline for filing a Notice of Appeal is very strict, and may only be

extended in very narrow circumstances.  Fed. R. App. P. 4(a)(5).  If the time to file your Notice

of Appeal has expired and you still wish to appeal, you must file a motion for an extension of

time, together with the Notice of Appeal, in the *Pro Se* Office within 30 days from the expiration

of the original period.  Fed. R. App. P. 4(a)(5); see www.nysd.uscourts.gov/forms.php?f=p.

Because the *Pro Se* Office will not serve a late Notice of Appeal, you must serve a copy of the

motion for an extension of time and the Notice of Appeal on your opponent before filing the

originals with the *Pro Se* Office.  If the Judge grants your motion, the appeal will be forwarded

to the Second Circuit.  If the Judge denies your motion, it will be forwarded to the Second

Circuit so that court can separately consider your motion.

> **Practice Tip:** Even if you proceeded *pro se* in the District Court, you may ask the Second Circuit to appoint counsel for you for appeal.

The timely filing of certain post-trial motions will *toll*, or suspend, the time to appeal. Fed. R. App. P. 4(a)(4). Once the District Court decides the post-trial motion, the time to appeal begins to run again.

> **Practice Tip:** Tolling the time to appeal when you file certain post-trial motions is different from staying the judgment. When filing a post-trial motion, you must ask the Court separately to stay the enforcement of the judgment. <u>See</u> pp. 105-06.

## Appeal Filing Fees

The cost for filing a Notice of Appeal is $455. If you are unable to pay the filing fee, you may request that the District Court grant you *in forma pauperis* status and waive the filing fee. You do this by submitting to the *Pro Se* Office, along with your Notice of Appeal, an application to proceed *in forma pauperis* on appeal. <u>See</u> www.nysd.uscourt.gov/forms.php?f=p. If you were previously granted *in forma pauperis* status by the District Court and that status has not been revoked in the judgment or otherwise, the filing fee is automatically waived. Fed. R. App. P. 24(a)(3). If *in forma pauperis* status has either been revoked or denied by the District Court, you may apply for *in forma pauperis* status with the Second Circuit by submitting a new *in forma pauperis* application to the *Pro Se* Office, which will forward the application to the Second Circuit for a ruling. Fed. R. App. P. 24(a)(5). If you have not been granted *in forma pauperis* status and cannot pay the filing fee and your time to file a Notice of Appeal has almost expired, the *Pro Se* Office will accept the Notice of Appeal without the fee and you will be sent a "fees due" letter requesting payment at a later date.

**Trial Transcripts**

Depending on the issues raised on appeal, you will likely need to include as part of your appeal the transcript of the trial (or some portion thereof).  The trial transcript is not automatically produced or placed into the court file.  If you think the trial transcript is necessary for your appeal, you should first look at the docket sheet to see if the District Court already requested that a copy of the transcript be included in the court record.  If so, it will be included in the *record on appeal*, which are the court materials transmitted to the Second Circuit for its review.  Fed. R. App. P. 10(a).  If not, you will have to obtain a copy of the relevant portions of your trial transcript and have it included in the record on appeal.  You must request the transcript directly from the Court Reporters at (212) 805-0300.  You will be charged a fee, the amount of which will depend on how quickly you need your request processed and on the length of the transcript.

> **Practice Tip:**  A transcript for a trial that took two weeks could be hundreds of pages and cost thousands of dollars, and you may only need a particular day's testimony.  It is best to be as specific as possible when requesting a transcript.  You should restrict your request to reflect only a particular day's testimony, if that is what you need.

**Proceedings on Appeal Before the Second Circuit**

The Second Circuit is an *appellate court*.  There is no trial, no jurors, no witnesses, and testimony is not heard.  A panel of three judges usually is assigned to hear an appeal.  The Second Circuit generally will consider only issues that the District Court considered.  Typically, a party may not submit additional evidence to the Second Circuit that was not part of the record in the District Court.  If you want to have the record on appeal corrected or enlarged, you must file a motion in the District Court.  Fed. R. App. P. 10(e).  The parties' legal and factual arguments raised on appeal are set out in appellant briefs, which the parties file in the

Second Circuit.  The Second Circuit may also allow *oral argument,* where the parties (or their attorneys if they have one) are able to argue, in person, before the three judge panel why the Second Circuit should rule in their favor.

# RESOURCES

## Substantive Law

American Bar Association.  Guide to Workplace Law.  2nd ed. Random House, 2006.

Boston, John & Manville, Daniel E.  Prisoner's Self Help Litigation Manual.  4th ed. Oxford University Press, 2010.

## Federal Civil Trials

Goldberg, Steven H. & McCormack, Tracy Walters.  First Trial in a Nutshell.  2nd ed. West, 2009.

Larsen, Robert E.  Navigating the Federal Trial.  2010 ed. West, 2010.

Mauet, Thomas A.  Fundamentals of Trial Techniques.  8th ed. Wolters Kluwer Law & Business, 2010.

## Evidence

Binder, David F.  Hearsay Handbook.  4th ed. McGraw Hill, 2002.

Graham, Michael H.  Handbook of Federal Evidence.  6th ed. Thomson West, 2006.

Park, Roger C.  Trial Objections Handbook.  Shepard's/McGraw Hill, 1991.

Strong, John W.  McCormick on Evidence.  5th ed. West Group, 1999.

Weinstein, Jack B. & Berger, Margaret A. Weinstein's Evidence Manual.  8th ed. Mathew Bender & Co., 2008.

## Examination of Witnesses

American Bar Association.  Preparing Witnesses.  3rd ed. American Bar Association, 2009.

Aron, Roberto, et al.  Cross-Examination of Witnesses: The Litigator's Puzzle. Shepard's/McGraw Hill, 2006.

Iannuzzi, John Nicolas.  Handbook of Cross-Examination: The Mosaic Art.  2nd ed. Prentice Hall, 1999.

Mogill, Kenneth & Gonzalez, Richard A.  Examination of Witnesses. 2nd ed. West Group, 2000.

**Jury Instructions**

McNamara, Todd J. & Southerland, J. Alfred.  Federal Employment Jury Instructions.  James Publishing, 2002.

O'Malley, Kevin F., et al.  Federal Jury Practice and Instructions.  5th ed. West Group, 2000.

Sand, Leonard B., et al.  Modern Federal Jury Instructions.  Lexis/Nexis, 2007.