UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────

DR. DAVID S. FIELD, ET AL.,

                     Plaintiffs,

       - against -

RYAN MURNANE, ET AL.,

                     Defendants.
─────────────────────────────────────

                         21-cv-1990 (JGK)

                         MEMORANDUM OPINION
                         AND ORDER

JOHN G. KOELTL, District Judge:

    The plaintiffs, Dr. David Field and Holly Field, brought this action against the defendants, Ryan Murnane and Krysta-Lynne Murnane. The plaintiffs alleged and the jury could reasonably have found that the defendants operated a fraudulent scheme to induce Dr. Field and Ms. Field to invest money in alleged rare and valuable coins that were non-existent or fraudulently misrepresented. The plaintiffs alleged that Mr. Murnane originally sent Dr. Field marketing materials from a company called Exponential Wealth Inc. ("EWI"). Based on those materials, Dr. Field subsequently made several investments in rare coins through EWI. Each time the plaintiffs made an investment in coins, they received an invoice listing "Krystalynne Murnane" as EWI's "Director of Operations." The plaintiffs alleged that they ultimately attempted to withdraw funds from their account at EWI; the defendants failed to remit those funds and, according to the plaintiffs, instead used those

funds for their own benefit. The defendants denied the claims, insisting, among other things, that Ms. Murnane was not involved with EWI.

After a nearly two-week trial, the jury returned a verdict in favor of the plaintiffs and against each of the defendants. The jury found Mr. Murnane liable on the plaintiffs' claims for fraud, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), conspiracy to violate RICO, 18 U.S.C. § 1962(d), breach of fiduciary duty, unjust enrichment, and violation of New York General Business Law § 349. ECF No. 286. The jury found Ms. Murnane liable on the plaintiffs' claims for violations of RICO and for unjust enrichment. Id.

On November 19, 2025, Ms. Murnane filed a notice of appeal from the Court's judgment, ECF No. 289, and on November 21, 2025, Ms. Murnane moved to stay the Court's judgment pending her appeal.[1] See ECF No. 290. The Court denied Ms. Murnane's motion to the extent it sought a stay but construed her motion as additionally seeking a new trial pursuant to Federal Rule of Civil Procedure 59 and set a briefing schedule. ECF No. 296. For

---

[1] Unless otherwise noted, this Memorandum Opinion omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

the following reasons, Ms. Murnane's motion for a new trial is **denied**.

## I.

Under Rule 59, a "court may, on motion, grant a new trial on all or some of the issues ... for any reason for which a new trial has heretofore been granted in an action at law in federal court," including if the verdict is against the weight of the evidence. Fed. R. Civ. P. 59(a)(1). "A decision is against the weight of the evidence if and only if the verdict is (1) seriously erroneous or (2) a miscarriage of justice." Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 417-18 (2d Cir. 2012). "When considering a motion for a new trial under Rule 59(a) on the ground that the jury's verdict is against the weight of the evidence," the cases in this circuit "teach that a high degree of deference is accorded to the jury's evaluation of witness credibility, and that jury verdicts should be disturbed with great infrequency." ING Global v. United Parcel Serv. Oasis Supply Corp., 757 F.3d 92, 97-98 (2d Cir. 2014). Because Ms. Murnane is acting pro se, her filings must be construed liberally and interpreted "to raise the strongest arguments that [they] suggest[]." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).

3

## II.

The jury found Ms. Murnane liable for one count of violating RICO, 18 U.S.C. § 1962(c), and one count of unjust enrichment. As for the civil RICO claim, the jury was correctly instructed that the plaintiffs were required to prove by a preponderance of the evidence (1) that an enterprise existed; (2) that the enterprise engaged in or had some effect upon interstate commerce; (3) that Ms. Murnane was associated with, or employed by, the enterprise; (4) that Ms. Murnane engaged in a pattern of racketeering activity; and (5) that Ms. Murnane conducted, or participated in, the conduct of the enterprise through that pattern of racketeering activity.

Ms. Murnane does not dispute that there was sufficient evidence to establish that EWI was an enterprise. The evidence was plainly sufficient to show that EWI was an enterprise that engaged in mail and wire fraud; that EWI defrauded the plaintiffs by purporting to sell valuable coins that either did not exist or were not as valuable as represented; and that the plaintiffs were defrauded out of more than $2 million.

Instead, Ms. Murnane principally argues that the jury's verdict was seriously erroneous as to her because the record lacked evidence that she was involved with EWI. But the trial record contained sufficient evidence to support the jury's verdict. For example, the plaintiffs presented several EWI

4

invoices identifying "Krystalynne Murnane" as EWI's "Director of Operations." See Pls.' Exs. 1, 3, 7, 8, 12, 14. The invoices also listed a contact for EWI as "Krista@rarities.biz." Id.

One invoice for over $1 million included an apparently personal note from Ms. Murnane that read: "Dr. Field, Please sign and date this form and send it back to us in the prepaid FEDEX [sic] envelope provided. As well all payments are made payable to 'Exponential Wealth Inc.' If you have any questions please give us a call. Kindest Regards, Krysta-lynne Murnane, Director of Operations." Pls.' Ex. 12. And another invoice for $345,400 also ended with a personal note from Ms. Murnane: "Dr. [a]nd Mrs. Fields, We hope all is well, [sic] Dr. Field please contact us with any questions you may have on the invoice, as usual. This is the remaining balance on the latest purchases in the account. With the credit and assets in the account the total bill comes to $90,400. If you have any questions on the dollar amount please contact your representative. Kindest Regards, Krista-lynne, Director of Operations." Pls.' Ex. 14.

Ms. Murnane claims that these invoices are not credible because they spell her name as "Krystalynne" rather than as "Krysta-Lynne." See Def.'s Reply Supp. Mot. ("Reply") ¶ 3, ECF No. 307. Several of the invoices, however, do spell Ms. Murnane's first name as "Krysta-lynne [sic]." See Pls.' Exs. 12, 14. But in any event, Ms. Murnane made this same argument at

5

trial. The jury was entitled to look at the invoices and conclude that they were credible evidence of Ms. Murnane's knowledge of and involvement with EWI's fraud, notwithstanding the minor typo in her name.

The trial record also included bank statements from EWI's business account at Chase Bank. See generally Pls.' Ex. 27. Although Ms. Murnane's name was not on those account statements, the statements list many payments from the account to Ms. Murnane totaling tens of thousands of dollars. Id. Ms. Murnane may disagree with how the jury weighed this evidence, but "such disagreement does not entitle [her] to a new trial under Rule 59." Congilaro v. Crown Equip. Corp., No. 09-cv-1452, 2013 WL 5346714, at *2 (N.D.N.Y. Sept. 23, 2023).

Ms. Murnane also points to countervailing evidence, such as Mr. Murnane's testimony that Ms. Murnane was not involved with EWI. Reply ¶ 2. But the jury was entitled to assess Mr. Murnane's credibility and disbelieve his testimony. "A jury's credibility assessments are entitled to deference, and ... where the resolution of [an] issue[] depended on assessment of the credibility of the witness[], it is proper for the court to refrain from setting aside the verdict and granting a new trial." United States v. Landau, 155 F.3d 93, 104-05 (2d Cir 1998); see also Wong v. Mangone, 450 F. App'x 27, 31 (2d Cir.

6

2011) ("The jury's credibility determinations are entitled to deference.").

As for the unjust-enrichment claim, the jury was correctly instructed that the plaintiffs were required to prove by a preponderance of the evidence (1) that Ms. Murnane was enriched, (2) at the plaintiffs' expense, and (3) that it would be against equity and good conscience to allow Ms. Murnane to retain what the plaintiffs seek to recover. But Ms. Murnane does not seriously dispute that she enjoyed the fruits of the fraud perpetrated by EWI. As explained above, the record evidence shows periodic distributions to Ms. Murnane from EWI's Chase bank account. See generally Pls.' Ex. 27. It was not unreasonable for the jury to find from this evidence that Ms. Murnane was unjustly enriched at the plaintiffs' expense.

Ms. Murnane contends that "had [she] been given the opportunity to testify, [she] would have personally clarified" that she was not involved with EWI. Reply ¶ 4. But Ms. Murnane did have the opportunity to testify; she simply declined to testify or call any witnesses in her defense. In fact, not only did Ms. Murnane decline to testify in her own defense — she absented herself from the final days of the trial without the Court's permission. The Court could have defaulted her for that reason alone but declined to do so. See ECF No. 282. The Court was clear, however, that "Ms. Murnane [wa]s not excused from the

trial" and that "[t]he trial w[ould] continue and may end without Ms. Murnane." Id.

Ms. Murnane insists that the verdict was "a miscarriage of justice" because she was "never informed of [her] opportunity to testify nor any alternatives to do so." Reply ¶ 5. But that is inaccurate. Several months before the trial began, the Court provided all of the parties with a manual for pro se litigants appearing before the United States District Court for the Southern District of New York. See generally ECF No. 278. This manual describes witness examination in depth and explains that pro se parties may testify on their own behalf on direct examination. Id. at 61. Furthermore, the Court explained during its preliminary instructions to the jury that the defendants may present and examine witnesses in their own case-in-chief. Ms. Murnane was present for those instructions. Indeed, Ms. Murnane's co-defendant, Mr. Murnane, examined witnesses in his case-in-chief. Ms. Murnane's argument that the verdict represents a miscarriage of justice because she was unaware that she could testify in her own defense is therefore without merit.

### III.

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit. For the foregoing reasons, Ms.

Murnane's motion is **denied.** The Clerk is instructed to close ECF No. 290.

**SO ORDERED.**

Dated:    New York, New York
          March 30, 2026

                                    _____
                                         John G. Koeltl
                                    United States District Judge