UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DR. DAVID S. FIELD and HOLLY FIELD,

Plaintiffs,

-v-

EXPONENTIAL WEALTH INC., RYAN MURNANE, RYAN MICHAELS, KRYSTALYNNE MURNANE, NOLAN BENNETT, and CHRISTOPHER PAUL,

Defendants.

CIVIL ACTION NO.: 21 Civ. 1990 (JGK) (SLC)

**REPORT & RECOMMENDATION**

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE JOHN G. KOELTL**, United States District Judge:

## I. INTRODUCTION

Following a jury trial in October and November 2025, Plaintiffs Dr. David S. Field ("Dr. Field") and Holly Field (with Dr. Field, "Plaintiffs") prevailed on their claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 et seq. and state law against Defendants Ryan Murnane a/k/a Ryan Michaels ("Ryan") and Krystalynne Murnane ("Krystalynne," with Ryan, the "Murnanes")).[1] See Field v. Murnane, No. 21 Civ. 1990 (JGK), 2025 WL 3457108 (S.D.N.Y. Nov. 12, 2025) ("Field II") (entering judgment after jury trial). As prevailing plaintiffs on the RICO claims, the Honorable John G. Koeltl found that Plaintiffs are entitled to recover their attorneys' fees against the Murnanes. Id. at *2. Now before the Court is Plaintiffs' motion for attorneys' fees. (Dkt. Nos. 293–294-8; 313 (the "Fee Motion"); 314 (referring Fee

[1] Plaintiffs also name as Defendants Exponential Wealth Inc. ("EWI") and Nolan Bennett a/k/a Christopher Paul ("Paul," with EWI, "Defaulting Defendants"), and with the Murnanes, "Defendants"). (Dkt. No. 138 ¶¶ 9, 13–14). Plaintiffs' claims against the Defaulting Defendants are the subject of an inquest on damages after default. (Dkt. Nos. 126–28; 156–76; 284–85; 288; 295; 298).

Motion)). Only Krystalynne filed an opposition to the Fee Motion. (Dkt. No. 299 (the "Opposition")).

For the reasons set forth below, we respectfully recommend that the Fee Motion be **GRANTED IN PART** and **DENIED IN PART** and Plaintiffs be awarded attorneys' fees in the amount of $223,963.50 and costs in the amount of $9,279.05, plus post-judgment interest consistent with 28 U.S.C. § 1961.

## II. BACKGROUND

We incorporate by reference the factual and procedural background of this action set forth in several prior decisions by the undersigned and by the Honorable John G. Koeltl. See Field v. Murnane, No. 21 Civ. 1990 (JGK), 2026 WL 878466, at *1–3 (S.D.N.Y. Mar. 30, 2026) (denying motion for new trial) ("Field IV"); Field v. Murnane, No. 21 Civ. 1990 (JGK), 2025 WL 3157740, at *1 (S.D.N.Y. Nov. 12, 2025) ("Field III") (declining to award Plaintiffs' pre-judgment interest on RICO damages); Field II, 2025 WL 3457108, at *1–2 (entering judgment against the Murnanes after jury trial); Field v. Exponential Wealth Inc., No. 21 Civ. 1990 (JGK) (SLC), 2023 WL 2263120, at *1–6 (S.D.N.Y. Feb. 27, 2023) ("Field I") (denying without prejudice Plaintiffs' motion for default judgment against the Murnanes). We set forth only the background necessary to analyze the Fee Motion.

### A. Jury Trial and Judgment

Plaintiffs allege that Defendants engaged in a fraudulent scheme to defraud Plaintiffs into investing over $1.4 million with EWI for the purchase of rare and valuable coins, which Defendants never delivered to Plaintiffs and instead "simply stole Plaintiffs' money." (Dkt. No. 138 ¶ 1 (the "SAC")). Plaintiffs asserted the following claims against the Murnanes: (1)

conversion (the "Conversion Claim"); (2) fraud (the "Fraud Claim"); (3) violation of RICO (the "RICO Claim"); (4) RICO conspiracy (the "RICO Conspiracy Claim"); (5) breach of fiduciary duty (the "Fiduciary Duty Claim"); (6) unjust enrichment (the "Unjust Enrichment Claim"); and (7) violation of New York General Business Law § 349 (the "Section 349 Claim"). (Id. ¶¶ 98–118, 159–218, 260–317). Plaintiffs sought damages of $2,885,852 on the Conversion Claim, and $1,420,800 on each of the other state law claims, and treble damages on the RICO and RICO Conspiracy Claims. (Id. at 54–55). See Field II, 2025 WL 3457108, at *1 (listing claims).

During most of the nearly four years of pretrial proceedings, including discovery and motion practice, see Field I, 2023 WL 2263120, at *1–6, in this action, Plaintiffs were represented by Michael Koblenz, Esq. ("Mr. Koblenz") and Sara Lilling, Esq. ("Ms. Lilling") at the law firm of Mound Cotton Wollan & Greengrass LLC ("Mound Cotton"). (Dkt. Nos. 1; 3). Mr. Koblenz changed firms, and on September 30, 2024, the law firm of Westerman Ball Ederer Miller Zucker and Sharfstein, LLP ("Westerman"), entered an appearance for Plaintiffs. (Dkt. No. 251).

On February 24, 2025, after the close of all discovery and on the eve of the final pretrial conference, Plaintiffs notified the Court that they had "chosen to represent [themselves] [pro se] and will no longer be represented by" Mound Cotton or Westerman. (Dkt. No. 263 (the "Feb. 24 Affidavit")). No motion to withdraw having been filed, the Court ordered Mound Cotton to explain whether they continued to represent Plaintiffs and if not, file "a motion to withdraw as counsel supported by 'satisfactory reasons for withdrawal' on the eve of trial[.]" (Dkt. No. 265 (quoting Local Civil R. 1.4(b)). On March 13, 2025, Mr. Koblenz filed a motion to withdraw as counsel for Plaintiffs, attaching the Feb. 24 Affidavit. (Dkt. Nos. 267; 267-2). Judge Koeltl had to adjourn the final pretrial conference, which had been scheduled for April 2, 2025, while

Mr. Koblenz's motion to withdraw was pending. (Dkt. No. 271). On April 3, 2025, the Court granted the motion to withdraw, since which time, including for trial, Plaintiffs have proceeded pro se. (Dkt. No. 272).

Over seven days in October and November 2025, Plaintiffs' claims against the Murnanes were tried to a verdict before Judge Koeltl and an eight-person jury. See Field II, 2025 WL 3457108, at *1. (See Dkt. minute entries dated Oct. 23, 2025, Oct. 28, 2025, Oct. 29, 2025, Oct. 30, 2025, Oct. 31, 2025, Nov. 3, 2025, Nov. 4, 2025). On November 5, 2025, the jury returned a verdict in favor of Plaintiffs and against Ryan on the Fraud, RICO, RICO Conspiracy, Fiduciary Duty, Unjust Enrichment, and Section 349 Claims. See Field II, 2025 WL 3457108, at *1. The jury also found in favor of Plaintiffs and against Krystalynne on the RICO and Unjust Enrichment Claims only. Id. The jury awarded Plaintiffs the following damages:

1. Fraud Claim against Ryan: $141,100;
2. RICO Claim against Ryan: $141,100;
3. RICO Claim against Krystalynne: $141,100;
4. RICO Conspiracy Claim against Ryan: $141,100;
5. Fiduciary Duty Claim against Ryan: $141,100;
6. Unjust Enrichment Claim against Ryan: $141,100;
7. Unjust Enrichment Claim against Krystalynne: $141,100; and
8. Section 349 Claim against Ryan: $141,100.

Field II, 2025 WL 3457108, at *1. The jury also found that Plaintiffs' claims against the Murnanes accrued as of June 14, 2019. Id. Judge Koeltl found that, as prevailing plaintiffs on the RICO

claims, Plaintiffs were entitled to treble damages and attorneys' fees. Id. at *1–2. Judge Koeltl then entered judgment in favor of Plaintiffs as follows:

1. Against Ryan: $1,737,068.57, consisting of $564,400 for the Fraud, Fiduciary Duty, Unjust Enrichment, and Section 349 Claims plus pre-judgment interest for 2,343 days at 9 percent per annum of $326,068.57, and $282,200 for the RICO and RICO Conspiracy Claims, trebled to $846,600; and

2. Against Krystalynne: $645,917.14, consisting of $141,100 for the Unjust Enrichment Claim plus pre-judgment interest for 2,343 days at 9 percent per annum of $81,517.14, and $141,100 for the RICO Claim, trebled to $423,300.

Field II, 2025 WL 3457108, at *2 (the "Judgment"). The Judgment also provided that Plaintiffs "shall recover any taxable costs that are appropriate under Federal Rule of Civil Procedure 54(d)(1), Local Civil Rule 54.1, and 28 U.S.C. § 1920. Id.

On November 19, 2025, Krystalynne filed a notice of appeal from the Judgment. (Dkt. No. 289). On March 30, 2026, Judge Koeltl denied Krystalynne's motion to stay the Judgment pending appeal and denied her motion for a new trial. (Dkt. No. 311). See Field IV, 2026 WL 878466, at *2–3.

### B. The Fee Motion

On November 24, 2025, Plaintiffs filed the Fee Motion. (Dkt. Nos. 293–294-8). In the Fee Motion, Plaintiffs seek an award of attorneys' fees of $227,188.00 (the "Requested Fees") for five timekeepers at Mound Cotton, which represented Plaintiffs from the commencement of the action until 2024. (Dkt. Nos. 294 ¶¶ 3, 6; 313 at 1). Plaintiffs also seek an award of costs in the amount of $11,253.68. (Dkt. Nos. 293 ¶ 5; 294 at 6–7). On December 8, 2025, Krystalynne filed the Opposition, in which she argues that Plaintiffs' fee request is excessive and unreasonable because, inter alia, Plaintiffs' "own litigation choices" drove up the fees and costs they incurred and imposing an award of fees and costs on her would impose extreme financial hardship.

(Dkt. No. 299). Ryan did not respond to the Fee Motion. On April 11, 2026, Plaintiffs filed a letter referencing the Fee Motion in which they confirm the "fee records [that Plaintiffs submitted in support of the Fee Motion] are accurate[.]" (Dkt. No. 313). On April 21, 2026, Judge Koeltl referred the Fee Motion to the undersigned. (Dkt. No. 314).

## III. DISCUSSION

### A. Legal Standard

Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Section 1962(d) makes it "unlawful for any person to conspire to violate . . . the provisions of [subsection (c)]." 18 U.S.C. § 1962(d).

"When § 1962 is violated, in addition to criminal penalties, the RICO statutes also authorize civil lawsuits, which, if successful, can entitle a plaintiff to treble damages, costs, and attorneys' fees." DLJ Mortg. Cap., Inc. v. Kontogiannis, 726 F. Supp. 2d 225, 236 (E.D.N.Y. 2010) (citing 18 U.S.C. § 1964(c)).[2] RICO defendants are jointly and severally liable for attorneys' fees and costs. See Elsevier Inc. v. Grossmann, No. 12 Civ. 5121 (KPF), 2019 WL 3852484, at *3 (S.D.N.Y. Aug. 16, 2019).

The determination of the appropriate amount of fees in a RICO action under § 1964(c) is "'governed by the same standards which prevail in other types of equally complex Federal litigation.'" Elsevier, 2019 WL 3852484, at *3 (quoting Hensley v. Eckerhart, 461 U.S. 424, 430

[2] Unless otherwise indicated, all internal citations and quotation marks are omitted from case citations.

n.4 (1983)). Pursuant to the Second Circuit's instructions, district courts begin by calculating the "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008). "A district court calculates the presumptively reasonable fee by multiplying the reasonable number of hours that the case requires by the reasonable hourly billing rate." Elsevier, 2019 WL 3852484, at *3. The reasonable rate should reflect "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.

Next, the district court examines the hours expended by counsel "with a view to the value of the work product to the client's case." Elsevier, 2019 WL 3852484, at *3. The district court should exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).

The court then examines the reasonable hourly rate and the reasonable number of hours to determine the presumptively reasonable fee, known as the "lodestar." See Lilly v. City of New York, 934 F.3d 222, 228–30 (2d Cir. 2019). "[T]here is . . . a strong presumption that the lodestar figure represents a reasonable fee." Fleetwood Servs., LLC v. Ram Cap. Funding, No. 20 Civ. 5120 (LJL), 2023 WL 112429, at *4 (S.D.N.Y. Jan. 5, 2023). Finally, "the fee award need not be proportionate to the damages award." Id. at 3 (citing Grant v. Martinez, 973 F.2d 96, 101–02 (2d Cir. 1992)).

## B. Application

### 1. Reasonable Hourly Rate

A reasonable hourly rate represents what "a reasonable, paying client would be willing to pay," and varies by practice area and location. Arbor Hill, 522 F.3d at 184, 192. Determining the reasonable hourly rate "contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel," and "may include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 59 (2d Cir. 2012). In assessing a reasonable hourly rate, district courts also consider the "Johnson"[3] factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Lilly, 934 F.3d at 230 (quoting Arbor Hill, 522 F.3d at 186 n.3). "A district court need not recite and make separate findings as to all twelve Johnson factors, provided that it takes each into account in setting the attorneys' fee award." C.D. v. Minisink Valley Cent. Sch. Dist., No. 17 Civ. 7632 (PAE), 2018 WL 3769972, at *4 (S.D.N.Y. Aug. 9, 2018).

Five timekeepers at Mound Cotton recorded time on Plaintiffs' matter at the following rates:

[3] Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 92–93, 96 (1989).

| Timekeeper Name | Requested Hourly Rate[4] |
|---|---|
| Michael R. Koblenz | $475 |
| Yoni E. Anijar | $200 |
| Sara F. Lilling | $275 |
| Labe C. Feldman | $370 |
| Robert J. Conklin | $165 |

(Dkt. Nos. 293 ¶ 5; 294 ¶ 6).[5] Plaintiffs argue that these hourly rates "are consistent [sic] and approved for experienced federal litigators in this District." (Dkt. No. 294 ¶ 5).

Plaintiffs have not provided us with any biographical information about the timekeepers, which makes it harder for us to determine the reasonableness of the requested hourly rates. See Love & Madness, Inc. v. Claire's Holdings, LLC, No. 21 Civ. 1913 (SLC), 2022 WL 5138806, at *9 (S.D.N.Y. Oct. 5, 2022) (reducing requested fees based on failure to provide biographical information about timekeepers); Top Jet Enters., Ltd. v. Kulowiec, No. 21 MC 789 (RA) (KHP), 2022 WL 1184245, at *3–4 (S.D.N.Y. Apr. 21, 2022) (same). From a review of the websites for Mound Cotton and Westerman,[6] however, we have learned the following:

- Mr. Koblenz received his J.D. from American University Washington College of Law and his LL.M. from George Washington University National Law Center, was admitted to the bar of New Jersey in 1972, District of Columbia in 1973, and New York in 1980. He worked in the United States Department of Justice, served as a Special Assistant United States Attorney for the Northern District of Illinois, and was formerly the Assistant Director of Enforcement for the CFTC. He is described as having over 40 years of experience in litigation involving commodities, securities, administrative proceedings, arbitration, real estate, and entertainment law.

---

[4] For Mr. Koblenz, Plaintiffs indicate an hourly rate of "$450–500," and for Mr. Feldman "$300–440." (Dkt. No. 293 ¶ 5). For simplicity, we use an average for both timekeepers, $475 for Mr. Koblenz and $370 for Mr. Feldman.

[5] Plaintiffs provide no billing records for Westerman, so, accordingly, we do not recommend any fee award with respect to Mr. Koblenz's billings at Westerman.

[6] See https://www.westermanllp.com/attorneys/michael-r-koblenz; https://www.moundcotton.com/attorneys/lfeldman/; and https://www.moundcotton.com/attorneys/sara-f-lilling/.

- Mr. Feldman, a Special Counsel at Mound Cotton, received his J.D. from Benjamin N. Cardozo School of Law in 2000 and was admitted to the bars of New York and New Jersey in 2003.
- Ms. Lilling, a Senior Attorney at Mound Cotton, received her J.D. from Benjamin N. Cardozo School of Law and was admitted to the bar of New York in 2006.

Courts assessing attorneys' fees in RICO actions in this District have assessed reasonable hourly rates of $500 or more for experienced litigators. See Fleetwood Servs., LLC, 2023 WL 112429, at *5 (finding $500 and $625 hourly rates reasonable for experienced litigators in RICO action that "had some complexity"); Elsevier Inc., 2019 WL 3852484, at *4 (finding $350, $525, and $585 hourly rates for experienced litigators in RICO action to "fall comfortably within the range of fees commonly approved in this District for estimable experienced counsel in complex commercial litigation."); see also Carrington v. Graden, No 18 Civ. 4609 (KPF), 2020 WL 5758916, at *13 (S.D.N.Y. Sept. 28, 2020) (in 2020, finding $425 hourly rate reasonable for seventh-year associate at large New York firm). Taking into account the other Johnson factors, we note that while Mound Cotton did not represent Plaintiffs at trial, the firm's representation throughout the pretrial proceedings was important to Plaintiffs' ability to reach trial, which resulted in a seven-figure judgment in Plaintiffs' favor. Mound Cotton was persistent in representing Plaintiffs' interests against "a vexatious individual defendant" — Ryan — who frequently evaded discovery and ultimately abandoned his defenses. Elsevier, 2019 WL 3852484, at *7. On the other hand, the legal issues in this action were not particularly complex, and Mr. Koblenz was likely able to leverage his prosecutorial and commodities litigation experience in advising Plaintiffs. See Fleetwood Servs., LLC, 2023 WL 112429, at *5 (considering, in determining reasonable hourly rate, plaintiffs' attorney's "knowledge he acquired in litigating related cases."). Based on the biographical information we have been able to find, the relevant Johnson factors, and our

supervision of the pretrial proceedings throughout this action, we conclude that Plaintiffs' requested hourly rates of $475 for Mr. Koblenz, $370 for Mr. Feldman, and $275 for Ms. Lilling are appropriate in light of rates other courts in this District have recently deemed reasonable.

From Conklin's hourly rate of $165 and Anijar's hourly rate of $200, they may be junior associates or paralegals (Dkt. No. 293 ¶ 5; 294 ¶ 6), but we have been unable to find any biographical information about them on Mound Cotton's website or elsewhere. (Dkt. Nos. 294-1–294-8). Because we lack sufficient information to evaluate Conklin's and Anijar's hourly rates, we respectfully recommend that no fees be awarded as to them. Elsevier Inc., 2019 WL 3852484, at *5 (disallowing any fees for timekeeper as to whom court "lack[ed] sufficient information").

Accordingly, we respectfully recommend that fees be awarded for Mr. Koblenz at the requested hourly rates of $475, Mr. Feldman at $370, and Ms. Lilling at $275, and that no fees be awarded for Conklin or Anijar.

**2. Hours Reasonably Expended**

"[A]ny attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). The court may exclude from its calculation of the presumptively reasonable fee claimed hours that are "excessive, redundant, or otherwise unnecessary[.]" Fleetwood Servs., LLC, 2023 WL 112429, at *6 (quoting Hensley, 461 U.S. at 434). Because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application[,]" Carey, 711 F.2d at 1146, "the court has discretion simply to deduct a

reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (quoting Carey, 711 F.2d at 1146). The court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). As the Supreme Court has observed, "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." Fox v. Vice, 563 U.S. 826, 838 (2011).

We indicate below the number of hours Plaintiffs request for the timekeepers for whom we have biographical information, and the actual number of hours reflected in Mound Cotton's billing records:

| Timekeeper | Hours Requested | Actual Hours in Billing Records |
|---|---|---|
| Michael R. Koblenz | 195 hours | 195 hours |
| Sara F. Lilling | 452.3 hours | 452.3 hours |
| Labe C. Feldman | 16.6 hours | 16.6 hours |

(Dkt. Nos. 293 ¶ 5; 294 ¶ 6; 294-1; 294-2; 294-3; 294-4; 294-5).[7]

We have reviewed the billing records in this matter and were pleased to see that these three timekeepers, for the most part, did not "block-bill, but rather attributed time to each task[,]" enabling us "to discern precisely how much time was spent on each task[]" and assess whether that amount was reasonable. Elsevier Inc., 2019 WL 3852484, at *6. Contrary to

[7] Plaintiffs also request fees for 13.5 hours for Anijar and 1.4 hours for Conklin, (Dkt. No. 294 ¶ 6), but as noted above, due to the absence of any information about them, we respectfully recommend that no fees be awarded as to them.

Krystalynne's arguments in the Opposition (Dkt. No. 299), the billing records reflect that duplication of efforts was minimal, that the majority of the work was performed by the more junior attorney — Ms. Lilling — in a sign of efficiency, and that time for internal consultations was not improperly recorded, all of which are issues that can sometimes plague law firm billing records. See, e.g., Love & Madness, Inc., 2022 WL 5138806, at *10–12 (reducing hours allowed for time spent on unrelated matters, internal meetings, and combined tasks). To the extent that Krystalynne asserts that Plaintiffs increased costs by adding new defendants, allegations, and claims (Dkt. No. 299 at 2), we note that Plaintiffs did in fact prevail at trial, indicating that their claims were meritorious, not frivolous. See Field II, 2025 WL 3457108, at *1. To the extent that there were delays in the resolution of this action, that was due in no small part to Ryan's behavior and default by EWI and Paul, not any stalling by Plaintiffs, who regularly sought to move this action forward. See Field I, 2023 WL 2263120, at *1–2. Accordingly, we find that the actual hours billed by Mr. Koblenz, Ms. Lilling, and Mr. Feldman are reasonable. See Elsevier Inc., 2019 WL 3852484, at *6–7 (finding that time records "reflect[ed] an appropriate amount of time spent for the task described.").

*    *    *

Based on the analysis above, we respectfully recommend that Plaintiffs be awarded attorneys' fees in the amount of $223,149.50, calculated as follows:

| **Timekeeper** | **Hourly Rate** | **Hours Requested** | **Actual Hours in Billing Rec.** | **Fees Awarded** |
|---|---|---|---|---|
| Michael R. Koblenz | $475 | 195 hours | 195 hours | $92,625.00 |
| Sara F. Lilling | $275 | 452.3 hours | 452.3 hours | $124,382.50 |
| Labe C. Feldman | $370 | 16.6 hours | 16.6 hours | $6,142.00 |
| **TOTAL** | | | | **$223,149.50** |

**3. Costs**

Plaintiffs request an award of costs in the amount of $11,253.68. (Dkt. No. 293 ¶ 5). Fee awards appropriately "include those reasonable out of pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998); see DLJ Mortg. Cap., Inc., 726 F. Supp. 2d at 236 (noting that 18 U.S.C. § 1964(c) contemplates award of reasonable costs). Plaintiffs do not provide a breakdown of the amount of costs, but from the documents Plaintiffs have submitted and docket entries, we discern the following costs:

| Cost Type | Amount |
|---|---|
| Deposition Transcripts | $3,877.05 |
| Investigation Services | $5,000.00 |
| Court Filing Fee | $402.00 |
| **TOTAL REQUESTED** | **$9,279.05** |

(Dkt. Nos. 1; 294-7 at 3–6, 9). To the extent that Plaintiffs seek to rely on entries in Mound Cotton's billing records as to additional costs, this does not provide sufficient information for us to evaluate the nature and reasonableness of the requested costs. See Khotovitskaya v. Shimunov, No. 18 Civ. 7303 (NGG) (CLP), 2021 WL 868781, at *2 (E.D.N.Y. Mar. 9, 2021) (denying costs where party failed to submit documentation substantiating the amounts reflected in attorney billing records); see also J&J Sports Prods., Inc. v. Fantasy Bar & Rest. Corp., No. 17 Civ. 5355 (JGK) (DF), 2018 WL 5018065, at *7 (S.D.N.Y. Sept. 20, 2018) (recommending denial of request for costs that lacked documentary support), adopted by, 2018 WL 5016606, at *1 (S.D.N.Y. Oct. 15, 2018). As to the costs in the chart above, however, we find that these costs were both appropriate and reasonable. See Fleetwood Servs., LLC, 2023 WL 112429, at *11 (awarding costs in RICO action for, inter alia, transcript fees and expert costs); Elsevier Inc., 2019

WL 3852484, at *7 (awarding costs in RICO action for, inter alia, court filing fees and transcript fees).

Accordingly, we respectfully recommend that Plaintiffs be awarded costs in the amount of $9,279.05.

### 4. Post-judgment Interest

Plaintiffs seek post-judgment interest as to the award of attorneys' fees and costs. (Dkt. No. 293 at 3). As Judge Koeltl has indicated, the award of attorneys' fees and costs "shall become part of the final judgment." Field II, 2025 WL 3457108, at *2. The Second Circuit has explained that an award of post-judgment interest on the amount of a judgment is mandatory. See Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008). Given the mandatory nature of post-judgment interest, we respectfully recommend that Plaintiffs be awarded post-judgment interest in an amount consistent with 28 U.S.C. § 1961.

## IV. CONCLUSION

For the reasons set forth above, we respectfully recommend that the Fee Motion be **GRANTED IN PART** and **DENIED IN PART**, and Plaintiffs be awarded:

1. Attorneys' fees in the amount of $223,149.50;
2. Costs in the amount of $9,279.05; and
3. Post-judgment interest consistent with 28 U.S.C. § 1961.

Dated: New York, New York
July 10, 2026

Sarah L. Cave

**SARAH L. CAVE**
**United States Magistrate Judge**

* * *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b). Any request for an extension of time for filing objections must be addressed to Judge Koeltl.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).